1
2
3
4

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| ANTHONY C. HILL, | Case No. 23-cv-06558-PHK |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS WORKDAY, INC., SUSAN DAHM, LISA MCFALL, AND KATIE HAUCK'S MOTIONS TO DISMISS** |
| WORKDAY, INC., et al., | |
| Defendants. | Re: Dkts. 12, 23, 35 |

Now before the Court are the Motions to Dismiss filed by Defendants Workday, Inc. ("Workday"), Susan Dahm, Lisa McFall, and Katie Hauck, each seeking dismissal of Plaintiff Anthony C. Hill's Complaint asserting various causes of action in connection with Plaintiff Hill's employment at Defendant Workday.  [Dkts. 12, 23, 35].  After thorough consideration of the briefs and oral arguments, the Court issues this Order **GRANTING** all the Motions to Dismiss.  *Id.*  The Court incorporates by reference its rulings and directives at the hearing on these motions, including the Court's verbal indication at the hearing that the Court was inclined to grant the motions to dismiss with leave to amend.  As discussed herein, Plaintiff Hill is **GRANTED LEAVE TO AMEND** the Complaint and indeed the Court notes that, in compliance with the Court's rulings at the hearing on these motions, Hill has already filed his Amended Complaint.  [Dkt. 53].

# BACKGROUND

## I.    ALLEGED FACTUAL BACKGROUND

The following background constitutes facts alleged by Plaintiff Hill, as detailed in his Complaint.  [Dkt. 1].

**A.    Factual background of Plaintiff Hill and Defendants**

Plaintiff Hill is a Maryland resident. [Dkt. 1 at 9]. Plaintiff Hill is a black male who worked as in-house counsel for Defendant Workday. *Id.* at 11. Workday is a Delaware corporation organized to do business in the State of California, with its headquarters in Alameda County. *Id.* Specifically, Workday has an office in Pleasanton, California. *Id.* Plaintiff Hill began his employment at Defendant Workday starting at or around early 2021. *Id.* at 58.

Defendant Hauck is a New York resident. *Id.* at 9. Defendant Hauck is a white female and Plaintiff Hill's direct supervisor. *Id.* at 21.

Defendant Dahm is a California resident. *Id.* at 9. Defendant Dahm is a white female and Defendant Hauck reports to Defendant Dahm. *Id.* at 21.

Defendant McFall is a California resident. *Id.* at 9.

**B.    Allegations centered on Plaintiff Hill's employment at Workday**

Plaintiff Hill was hired as an attorney in the Workday legal department. *Id.* at 19. During numerous, weekly one-on-one meetings, Plaintiff Hill sought a promotion from Defendant Hauck. *Id.* at 21. Defendant Hauck suggested that Plaintiff Hill create a "plan" to be promoted. *Id.* at 21. Plaintiff Hill created a "Career Growth and Continued Success Plan" for himself to be promoted from Senior Counsel to Assistant General Counsel. *Id.* at 21. After reviewing the plan, Defendant Hauck complimented Plaintiff Hill on the plan, but indicated that Plaintiff would need "at least one year" as Senior Counsel. *Id.* at 21–22. Defendant Hauck told Plaintiff Hill that she would give the "Career Growth and Continued Success Plan" to one of her other direct reports, a white female. *Id.* at 22. Defendant Workday promoted that white female from Senior Counsel to Assistant General Counsel shortly thereafter. *Id.* at 22.

In or around May 2021, Plaintiff Hill requested that Defendant Hauck hire an individual who would assist Plaintiff Hill with his work. *Id.* at 22. Defendant Hauck responded that she did not have funding for such a role. *Id.* at 22. Christine Fedrow, who leads the Workday Integrity Team, informed Plaintiff Hill that the Integrity Team had funding for the role. *Id.* at 22–23. In June 2021, Christina Strelow, a white female, was hired as the Program Manager for Federal Ethics and Compliance allegedly according to Plaintiff Hill's original recommendation. *Id.* at 23. Plaintiff

2

Hill served as Ms. Strelow's de facto manager/supervisor. *Id.*

In October 2021, Ashley Brown, a black female working in Defendant Workday's Finance Team, was having problems allegedly relating to race with her manager Ann Allen, a white female. *Id.* at 24. Ms. Brown sought help from Plaintiff Hill; additionally, she asked Plaintiff Hill if he thought she would be a suitable candidate for an open, interim, non-attorney role who would report to Defendant Hauck. *Id.* Plaintiff Hill contacted Defendant Hauck and confidentially told her that Ms. Brown believed she was having problems with her manager because of her race and inquired about whether Ms. Brown might be interviewed for the open role. *Id.* Subsequently, Defendant Hauck informed Plaintiff Hill that she had spoken to Ms. Allen about Ms. Brown, and Defendant Hauck determined that Ms. Brown "would not be a good fit." *Id.* Upon information and belief, Ms. Brown's employment with Workday ended shortly thereafter. *Id.* Upon information and belief, Defendant Hauck did not report Plaintiff Hill's race-based discrimination concerns. *Id.* at 25.

During the first week of January 2022, Plaintiff Hill met with Rich Sauer, Defendant Workday's Chief Legal Officer, regarding potentially creating a role titled "Lead or Head Public-Sector Compliance Counsel" to handle Defendant Workday's legal obligations. *Id.* at 20. Plaintiff Hill indicated that he would be the ideal candidate for such a role. *Id.* Mr. Sauer was receptive to the initiative and requested that Plaintiff Hill create a formal written document proposing the role. *Id.* Plaintiff Hill provided the formal proposal to Mr. Sauer on January 7, 2022. *Id.* Mr. Sauer did not respond to Plaintiff Hill. *Id.* Months later, Plaintiff Hill emailed Mr. Sauer regarding Plaintiff Hill's desire to be included in Defendant Workday's Leadership Council on Legal Diversity Fellows Program. *Id.* at 25–26. Mr. Sauer did not respond to Plaintiff Hill. *Id.*

In August of 2022, Defendants were preparing to host the "Rising" marketing event in Orlando, Florida. *Id.* at 26. Defendants' Sales Team wished to invite a former Baltimore City government official to the "Rising" event. *Id.* Plaintiff Hill expressed a potential ethical problem as the former Baltimore City government office was under investigation for alleged criminal conduct that occurred while that the government official worked for the city. *Id.* After Plaintiff Hill informed the Defendant Workday individuals associated with the "Rising" event about the potential ethical issue, Defendant Hauck became angry with Plaintiff Hill for sharing his perspective. *Id.* at

27.  Defendant Hauck ordered Plaintiff Hill to review the Baltimore City contract to determine if Defendants were legally prevented from inviting this individual, a task which Plaintiff Hill had already previously performed.  *Id.*  After his second review of the contract, Plaintiff Hill drafted a full analysis which indicated there was no legal prohibition to the invitation; rather, there was an ethical prohibition.  *Id.*  Defendant Hauck responded only after Plaintiff Hill included all relevant team members in an email requesting a decision from Defendant Hauck.  *Id.* at 28.  Ultimately Defendant Hauck decided that the former official should not receive an invitation. *Id.*

In September 2022, Plaintiff Hill made a presentation to Defendants Dahm, McFall, and Hauck, along with various Workday personnel including Mr. Sauer.  *Id.* at 29.  Plaintiff Hill was assisted by Ms. Strelow.  *Id.*  At the meeting, Plaintiff Hill recommended that Defendant Workday implement an annual compliance training which Plaintiff Hill had developed.  *Id.*  Defendant McFall passionately disagreed with Plaintiff Hill's recommendation.  *Id.*  Mr. Sauer overruled Defendant McFall and requested that Plaintiff Hill work with Defendant McFall and others interested in implementing the annual compliance training.  *Id.* at 29–30.  Defendant McFall was visibly angry during this exchange.  *Id.* at 30.

On September 16, 2022,[1] Defendants Hauck and Dahm demoted Plaintiff allegedly without just cause in retaliation.  *Id.* at 31.  The Complaint alleges that "Defendants arbitrarily and capriciously prohibited Plaintiff from working with, receiving aid from, and/or supervising Ms. Strelow[.]"  *Id.* at 32.  According to Plaintiff Hill, Defendant Hauck indicated that Defendant Dahm made the decision to demote Plaintiff Hill.  *Id.*  Defendants Hauck and Dahm indicated a "desire to ensure that 'the resources we are using feel appropriately used and that we aren't over taxing them.'"  *Id.*

On September 19, 2022, Plaintiff Hill, Defendant McFall, Ms. Fedrow, and Ms. Strelow attended a Zoom conference call regarding the implementation of the annual compliance training.

---

[1] The Court notes that the Complaint states this event occurred in 2023.  [Dkt. 1 at 31].  However, in the context of the Complaint, this appears to be an obvious typographical error and the Court construes the Complaint to allege (or intend to allege) that this event occurred in 2022.  *Est. of Hernandez-Rojas v. United States*, No. 11-CV-0522-L DHB, 2013 WL 5353822, at *2 (S.D. Cal. Sept. 24, 2013) (a court may correct a clear typographical error rather than a substantive error).

*Id.* at 30.  Before Plaintiff Hill had an opportunity to say anything other than "hello," Defendant McFall stated, "everybody knows that you don't want to work, Anthony!"  *Id.*  Plaintiff Hill responded that the characterization was unfair as evidenced by many recommendations from Defendant Workday leaders.  *Id.*  "Defendant McFall then angrily and loudly doubled down by again impugning [Plaintiff Hill's] work ethic and professional reputation in front of everyone[.]"  *Id.*  After that video call, Plaintiff Hill told Defendant Hauck that "the optics look terrible for Workday" and "the incident appeared racist to me[.]"  *Id.* at 31.  Defendant Hauck responded to Plaintiff Hill by saying "OK, I understand."  *Id.*

On or around October 12, 2022, Plaintiff Hill asked Ms. Strelow for her help on the project "in part, because his disabilities prevent him from doing this work completely on his own."  *Id.* Defendants Hauck and Dahm "had been aware of Plaintiff's cognitive and memory challenges since he revealed these issues to them in August 2021, in addition to his other (digestive) disability from chronic diverticulitis, for which Plaintiff has been periodically hospitalized since a 2012 surgery." *Id.* at 32 n.7.

After delivering the final work product, Defendants Hauck and Dahm asked Plaintiff Hill "how" he managed to complete the project.  *Id.* at 33.  After being dissatisfied with Plaintiff Hill's initial response, Defendant Hauck "then clarified her question by explaining that it was 'actually much more tactical than substantive.'"  *Id.*

On October 12, 2022, Plaintiff Hill was hospitalized in a Maryland medical facility "[d]ue to stress, exhaustion, and trauma associated with this and other disparate, discriminatory, retaliatory, harassing and hostile treatment of him by the Defendants[.]"  *Id.* at 35.  Before his hospitalization, Plaintiff Hill sent two emails to Defendant Hauck.  *Id.* at 35.  The two emails stated: "'I'm having a medical emergency and am headed to the hospital' followed by, 'I'm in the hospital waiting room now with my wife[,]' respectively."  *Id.* at 35.  Additionally, Plaintiff Hill sent an email to Defendant Workday with a completed leave request form "wherein plaintiff commented to Defendant Hauck he would be filing the required family and medical leave certification as soon as he could because he would need to take extended medical leave beyond October 12th since he was being hospitalized but did not know for how long."  *Id.*

United States District Court
Northern District of California

On October 13, 2022, Defendant Hauck responded to Plaintiff Hill stating in relevant part:

> I wanted to pass along a bit of information (in case you need/want it) in response to your comment around FMLA in the time off request you submitted last night. If you have any questions regarding FMLA, you can contact Unum (who handles WORKDAY, INC.'s FMLA) at 866-865-9092. Feel free to also reach out to [the Defendants' HR team] P&P via Service Hub and they can provide additional direction. Please don't worry about work and focus on feeling better.

*Id.* (alterations in Complaint).

On October 20, 2022, "Defendants caused police to be sent to Plaintiff's home under the pretense of a so-called 'Workday Wellness Check.'" *Id.* at 36. Plaintiff Hill's wife, Mrs. Hanadi Hill, "arrived after dark at their Silver Spring, Maryland home with their two sons in tow, then ages 13 and 9." *Id.* Mrs. Hill was confronted by three squad cars whose lights were flashing. *Id.* The squad cars were full of armed Montgomery County Police Officers. *Id.* Mrs. Hill informed the police officers that Plaintiff Hill was hospitalized at a Maryland medical facility. *Id.* at 36–37. Then, the police instructed Mrs. Hill to call the Defendants and inform them of Plaintiff Hill's location. *Id.*

The following day Plaintiff Hill was told the news of the police encounter and had a "massive panic attack." *Id.* at 37. Plaintiff Hill drafted an email for his wife to send to Defendants Hauck and Dahm stating in relevant part:

> I want to reassure you that [my husband] Anthony is safe and receiving ongoing medical treatment at a Maryland facility. His medical team has estimated that he will need approximately 3 more weeks before he is able to return to work full-time.

*Id.* Defendant Dahm replied, without Defendant Hauck on the email chain:

> Dear Hanadi: Thank you so much for letting us know. We wish our very best to you and Anthony. We have been in contact with our HR team and I am advised that they are in contact with you to support your request. Please do reach out if there is anything further we can do to support you.

*Id.* at 38.

//

//

At some time following the "Workday Wellness Check," Defendant Workday's Human Resources send the following email to Plaintiff Hill:

> Hope you had a nice weekend! Yes, I can confirm that the Wellness Check was completed on 10/20. We will not be providing any further documentation regarding the decision to conduct a Wellness Check.

*Id.* at 40.

Plaintiff Hill was discharged from the Maryland medical facility on November 10, 2022. *Id.* at 35. Plaintiff Hill returned to work from inpatient treatment on November 22, 2022. *Id.* at 38 n.8. After returning to work, Defendant Workday employees began contacting Plaintiff Hill "expressing their concerns and condolences, and saying that they knew where and why Plaintiff had been hospitalized even though Plaintiff never revealed this confidential medical information to these individuals, the Defendants, or anyone else." *Id.*

Plaintiff Hill's treating physician placed him on a modified work schedule which was communicated to Defendant Workday's Human Resources and Defendant Hauck. *Id.* at 44. The modified work schedule was approved and acknowledged by Defendant Hauck. *Id.* However, when Plaintiff Hill returned to work, he discovered Defendants "had made numerous material additions and alterations to [his] job duties[.]" *Id.* at 42.

On November 28, 2022, Plaintiff Hill had a meeting with Defendant Hauck, Chandler Morse, Vice President and Head of Defendant Workday's Corporate Affairs, and Matt Pincus, Defendant Workday's Senior Public Policy Manager. *Id.* at 26, 42. During the meeting, Defendant Hauck spoke about a situation in which a client's contracting attorney had to take personal leave for about one month during a negotiation which slowed down the contracting cycle. *Id.* Defendant Hauck said at the meeting "I wish I could just take the month off." *Id.* "Mr. Morse reacted to Defendant Hauck's comment by putting both of his hands over his face and saying nothing. Mr. Pinkus laughed nervously." *Id.* Plaintiff Hill was mortified but said nothing and smiled. *Id.* During the following one-on-one meeting with Plaintiff Hill, Defendant Hauck said to Plaintiff Hill that another Workday employee named "Ann" "is always taking leave, I swear!" *Id.*

On January 13, 2023, Defendant Hauck contacted Plaintiff Hill via Slack, a work messaging platform, regarding his attendance at a work meeting. *Id.* at 44. Defendant Hauck's message fell

outside Plaintiff Hill's modified work schedule.  *Id.*  Plaintiff Hill responded an hour later, still outside his modified work schedule, that he would not be attending because of his medical leave. *Id.*  Defendant Hauck did not respond.  *Id.*  Plaintiff Hill reported the incident to Defendant Workday's Human Resources.  *Id.*

On January 25, 2023, Plaintiff Hill attempted to take Paid Time Off to address personal issues.  *Id.* at 46.  Defendant Workday requires employees to obtain managerial approval for their Paid Time Off.  *Id.*  Defendant Hauck demanded that Plaintiff Hill justify why he needed to take Paid Time Off.  *Id.*  Plaintiff Hill responded to Defendant Hauck that the demand made him "very uncomfortable[,]" that he made contingency plans for his work schedule, and that he offered to provide information from his doctors to "Unum" regarding the need to take Paid Time Off.  *Id.* Plaintiff Hill also gave context regarding his work schedule by indicating that he had been working on various Defendant Workday projects starting earlier than 5:30 AM.  *Id.* at 47.  Plaintiff Hill stated to Defendant Hauck that he had been working on these early morning projects with Vice President Juliana Capata.  *Id.*  Plaintiff Hill had not informed any other Workday employee about his working relationship with Ms. Capata and her team.  *Id.*  Defendant Hauck did not respond to Plaintiff Hill. *Id.*  Plaintiff Hill sent Ms. Capata information which she and her team requested that same day.  *Id.*

The following day, Plaintiff Hill followed up with Ms. Capata after not receiving a response. *Id.*  The follow up did not receive a response.  *Id.*  A day or two later, Plaintiff Hill followed up with Ms. Capata and/or her team.  *Id.* at 48.  The second follow up did not receive a response.  *Id.*  The same week this incident was occurring, Plaintiff Hill visited Defendant Workday's Pleasanton, California, headquarters for a Summit.  *Id.*  At the Summit, Ms. Capata frowned and glared at Plaintiff Hill during an in-person, small group, breakout meeting.  *Id.*  Ms. Capata had previously always been friendly, kind, and talkative to Plaintiff Hill both when meeting in-person and remotely. *Id.*

On January 27, 2023, Plaintiff Hill sent an email to Defendant Workday's Senior Human Resource representative, Lauren Eyler, requesting "immediate reassignment to the Workday Integrity Team[.]"  *Id.* at 49.  "Defendants denied Plaintiff's written reasonable accommodation request on March 7, 2023."  *Id.*  Plaintiff Hill states that he worked almost exclusively with the

Workday Integrity Team. *Id.* Plaintiff Hill states that his disabilities, which include "but [are] not limited to, acute anxiety, panic disorder, depression, and Post-Traumatic Stress Disorder[,]" prevented him from working within his current management reporting structure. *Id.*

Plaintiff Hill spoke to Ms. Eyler in March 2023. *Id.* at 42. During this meeting, Ms. Eyler stated that "she attributed the changing of the essential job functions for Plaintiff's position without having engaged in the interactive process as a 'simple mistake' and dismissed it as 'not a big deal.'" *Id.* Further regarding the communications from Defendant Hauck outside of Plaintiff Hill's modified schedule, Ms. Eyler "dismissed the significance" stating that "you have so many schedules that [Defendant Hauck] probably just got confused." *Id.* at 44–45. Further, Plaintiff Hill asked Ms. Eyler why Defendant Hauck "had chosen not to acknowledge or indicate in any way to him that she had asked Plaintiff to attend the work meeting while he was on medical leave by mistake or 'just got confused' if that is in fact what happened, Ms. Eyler asked Plaintiff, 'how do I know that you didn't do anything to [alter] the Slack message?'" *Id.* at 45 (alteration in Complaint). Plaintiff responded that he had not altered the conversation, to which Ms. Eyler responded that "well then [Defendant Hauck] was probably just busy." *Id.* at 45 (alteration in Complaint).

During March 2023, Ms. Eyler stated to Plaintiff Hill that Jazsmine Gordon, a Defendant Workday Human Resource employee, was the sole Defendant Workday employee responsible for the "Workday Wellness Check" "before suddenly stopping herself, apologizing, attempting to retract her statement, and explaining that her Workday, Inc. superiors, who include the Defendants, would not permit her to discuss the matter with Plaintiff[.]" *Id.* at 40–41. Additionally, Ms. Eyler stated that Defendant Workday's "anonymous" mandatory weekly surveys regarding "employment experience" acted as both a "sword and a shield" "in retaliating against Plaintiff and other similarly situated members of their workforce for engaging in protected activity." *Id.* 50–51. Ms. Eyler explained the surveys act as a "shield" when she and other Defendant Workday Human Resource professionals review individuals' past positive survey responses to "shield" Defendants and their management from negative complaints. *Id.* at 51. In doing so, Ms. Eyler explained that this practice allows Defendant Workday Human Resources to "attack the veracity of the employee complaint and/or complainant." *Id.* Ms. Eyler also revealed that Defendant Workday's Human Resource

department does not afford "any added credibility or 'weight' to complaints made by Workday, Inc., employees, including Plaintiff, who in the past have refused to answer" the weekly surveys or who in the past have answered the surveys with negative response. *Id.* at 51–52. Ms. Eyler informed Plaintiff Hill that Defendant Workday's Human Resources "had fully and fairly investigated his claims and concluded that they all lacked merit." *Id.* at 55.

On March 16, 2023, "Defendants (through Ms. Gordon) invited Plaintiff to an unplanned meeting with Defendant Hauck to occur that afternoon for Plaintiff 'to get reset and aligned with [his] manager moving forward.'" *Id.* at 55 (alterations in Complaint). "Plaintiff politely replied to the Defendants' meeting request, asking Ms. Gordon to 'please invite Chris Fedrow' because Plaintiff did not 'feel comfortable' or safe 'meeting with just' Defendant Hauck 'alone' considering his persistent 'medical limitations' and 'given the circumstances.'" *Id.* Plaintiff Hill's request was rejected, and Ms. Gordon stated that "Chris Fedrow is not your People Leader and it would be inappropriate for her to join, however I will be joining the call with you." *Id.* at 56. Plaintiff Hill requested that the meeting be postponed so he could retain legal counsel. *Id.* Ms. Gordon responded by stating that: "(a.) 'cooperating in being managed is an essential function of [his] role[;]' (b.) his request to delay the meeting until he could retain legal counsel was actually a 'refus[al] to attend the meeting[;]' and consequently (c.) Plaintiff would 'be placed on paid administrative leave effective immediately' until Plaintiff stopped his 'unacceptable' 'refusal to be managed by [Defendant HAUCK].'" *Id.* at 57 (alterations in Complaint).

On March 21, 2023, Ms. Gordon informed Plaintiff about his paid administrative suspension. *Id.* Five weeks later, Plaintiff Hill's paid administrative leave stopped without explanation from Defendants. *Id.* at 58. At some point prior to Plaintiff Hill's paid administrative leave, Defendant Hauck sent an email to her entire team thanking individuals by name for their hard work over the previous year. *Id.* at 45. Plaintiff Hill was not included in the list of individuals thanked in Defendant Hauck's email. *Id.*

On May 1, 2023, Plaintiff Hill went on approved disability and medical leave. *Id.* at 58.

At the beginning of his employment, Plaintiff Hill negotiated a compensation package which included $200,000 in Restricted Stock Units ("RSUs") over four years as a bonus, with a 40% to

60% refresher of Plaintiff's initial stock grant annually.  *Id.* at 52.  Plaintiff Hill received an RSU refresher grant of approximately 23% of his initial stock grant in 2022.  *Id.*  Plaintiff Hill raised the discrepancy with Defendant Hauck, who said she would speak to her superiors regarding the issue. *Id.*  Defendant Hauck later told Plaintiff Hill that, based on the conversation she had with her superiors, Plaintiff Hill needed to accept the RSU refresher grant he had received.  *Id.*  Plaintiff Hill was awarded only approximately half of the annual bonus payment "which medium to high-performing Workday, Inc. employees like Plaintiff were promised by the company[.]"  *Id.*  Plaintiff Hill's counsel "asked the Defendants on his behalf twice to explain his unjustifiably low 2022 bonus award, the Defendants initially stated that Plaintiff 'needs to speak with [Defendant Hauck]' to get an answer."  *Id.* at 53.  Afterwards, "Defendants refused to answer the question at all."  *Id.*  Plaintiff received no RSU refresher from Defendants in 2023.  *Id.* at 52.

Plaintiff Hill never received a single, formal negative performance review or evaluation since he was hired.  *Id.* at 53.  Plaintiff Hill received numerous positive written acknowledgments celebrating his work.  *Id.*

## II.    PROCEDURAL HISTORY

On December 11, 2023, Plaintiff Hill filed the instant action in the Superior Court for the County of Alameda.  *Id.* at 2.  Plaintiff Hill alleges various causes of actions against Defendants Workday, Dahm, McFall, and Hauck in connection with Plaintiff Hill's employment at Defendant Workday.  [Dkt. 1].  The causes of action are as follows:

(1) race discrimination pursuant to the Fair Employment and Housing Act ("FEHA");

(2) disability discrimination pursuant to the FEHA; (3) retaliation pursuant to the FEHA;

(4) harassment pursuant to the FEHA;

(5) failure to maintain discrimination and harassment free work environment pursuant to the FEHA;

(6) failure to engage in the interactive process and provide reasonable accommodations in violation of FEHA and California Family Rights Act ("CFRA");

(7)  CFRA interference and retaliation in violation;

(8) retaliation in violation of the California Labor Code;

1   (9) promissory fraud under the California Civil Code;

2   (10) intentional infliction of emotional distress;

3   (11) violations of the Confidentiality of Medical Information Act ("CMIA"); and

4   (12)[2] violations of the right to privacy pursuant to the California Constitution.  *Id.*

5   Plaintiff Hill asserts all twelve causes of action against Defendant Workday.   Dkt. 1.

6   Plaintiff Hill asserts the fourth, tenth, eleventh, and twelfth causes of actions against Defendants

7   Dahm, McFall, and Hauck.  *Id.*  Plaintiff Hill seeks relief in various forms of money damages and

8   equitable relief.  *Id.* at 81–82.

9   On January 11, 2024, Defendant Workday moved to dismiss the Complaint.  [Dkt. 12].  On

10   January 26, 2024, Defendant Dahm moved to dismiss the Complaint.  [Dkt. 23].  On March 5, 2024,

11   Defendants Hauck and McFall moved to dismiss the Complaint.  [Dkt. 35].  Plaintiff Hill properly

12   and timely responded to all the motions to dismiss, and the Defendants properly and timely replied

13   to all of Plaintiff Hill's responses.  [Dkts. 16 (Plaintiff Hill's Opp. to Defendant Workday), 26

14   (Defendant Workday's reply), 32 (Plaintiff Hill's Opp. to Defendant Dahm), 34 (Defendant Dahm's

15   reply), 36 (Plaintiff Hill's Opp. to Defendants Hauck and McFall), 39 (Defendants Hauck and

16   McFall's reply)].  On May 3, 2024, the Court heard oral argument from all Parties on all the motions

17   to dismiss.  [Dkt. 49].  For the foregoing reasons, the Court **GRANTS** all the motions to dismiss

18   **WITH LEAVE TO AMEND**.

19   ## LEGAL STANDARD

20   The familiar standards on a motion to dismiss are well-known and not subject to dispute for

21   the instant motions.  "The Rule 12(b)(6) standard requires a complaint to 'contain sufficient factual

22   matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Wilhelm v. Rotman*,

23   680 F.3d 1113, 1121 (9th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2000)).

24   Determining whether a complaint states a plausible claim is "a context-specific task that requires

25   the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679

---

[2] Plaintiff Hill denotes this cause of action as a duplicate "tenth cause of action" which the Court assumes is a typographical error.  [Dkt. 1].  The Court will assume there is a twelfth cause of action. *Est. of Hernandez-Rojas*, No. 11-CV-0522-L DHB, 2013 WL 5353822, at *2 (a court correcting a clear typographical error rather than a substantive error)

United States District Court
Northern District of California

1   (citing *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).  Detailed factual allegations are not

2   required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

3   conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*,

4   550 U.S. 544, 555 (2007)). A pleading must "contain either direct or inferential allegations

5   respecting all the material elements necessary to sustain recovery under some viable legal theory."

6   *Twombly*, 550 U.S. at 562 (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th

7   Cir. 1984)).  In other words, the allegations must "give the defendant fair notice of what the . . .

8   claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555.

United States District Court
Northern District of California

## DISCUSSION

### I.   ORAL ARGUMENT CONCESSIONS

At oral argument, the Court questioned both Parties on various issues that were raised in the motions before the Court.  Audio Recording: Hearing on Joint Discovery Dispute in *Anthony Hill v. Workday, Inc.*, No.  23-cv-06558-PHK, at 1:55 (May 3, 2024) (in the U.S. District Court in the Northern District of California's Clerk's Office filed for this case) (hereinafter "Hearing").  Plaintiff Hill and Defendants all agree that California law provides for a legal presumption against the extraterritorial application of California law.  *Id.*  Plaintiff Hill concedes that he has only spent a week in California for work and he spends most of his work time outside of California.  *Id.*

Most significantly, counsel for Plaintiff Hill conceded that the recitation and interjection of facts in the opposition briefs, where such factual assertions are not in the original Complaint, amount to a tacet admission of the need for Plaintiff Hill to amend his Compliant.  *Id.* at 1:56.  As such, at the hearing on these motions the Court **GRANTED** all four Motions to Dismiss and **GRANTED** Plaintiff Hill **LEAVE TO AMEND** the Complaint.  [Dkt. 49].  For the sake of brevity, the Court addresses the major deficiencies found in the Complaint.

### II.   THE EXTRATERRITORIAL APPLICATION OF CALIFORNIA LAW

Despite being a resident of Maryland, Plaintiff Hill asserts various causes of action pursuant to California law.  [Dkt. 1].  The Parties both agree that there exists a legal presumption against the extraterritorial application of California law.  Hearing at 1:55.  However, the Parties disagree on the *application* of which standard to apply and disagree, to varying degrees, on *which standard* to apply

1   for each cause of action.  *Id.* at 1:55–2:05.  As such, the Court addresses the presumption against

2   the extraterritorial application of California law for each cause of action.

3       **A.    Claims pursuant to FEHA and the CRFA - First to Seventh Causes of Action**

4       The FEHA and CRFA both provide legal protections for employees under California law.

5   The question in this case is whether Plaintiff Hill, admittedly a resident of Maryland, is entitled to

6   the extraterritorial application of both the FEHA and CFRA to him and his employment.  All Parties

7   agree on the legal standard for determining whether or not there is proper extraterritorial application

8   of California state law pursuant to FEHA and CRFA claims.  Hearing at 2:02.  The analysis for the

9   extraterritorial application of California law for the purposes of the CFRA is identical to the analysis

10  for the FEHA.  *Sexton v. Spirit Airlines, Inc.*, No. 21-cv-00898-TLN (AC), 2023 WL 1823487, at

11  *3 (E.D. Cal. Feb. 8, 2023); *accord* Hearing at 2:02.

12      California courts "presume the Legislature did not intend a statute to be 'operative, with

13  respect to occurrences outside the state, . . . unless such intention is clearly expressed or reasonably

14  to be inferred from the language of the act or from its purpose, subject matter or history.'"  *Sullivan*

15  *v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) (quoting *Diamond Multimedia Systems, Inc. v.*

16  *Superior Court*, 19 Cal. 4th 1036, 1059 (1999); *N. Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4

17  (1916)).  As discussed in detail below, the Court finds that Plaintiff Hill's Complaint is facially

18  deficient to overcome the presumption against the extraterritorial application of California law as

19  outlined in *Sullivan*, 51 Cal. 4th at 1207, and its progeny.  *See Sexton*, No. 21-cv-00898-TLN (AC),

20  2023 WL 1823487, at *4.

21      While "the FEHA imposes no residency requirement on either the employer or the person

22  aggrieved and no limitation based on where the conduct occurred[,]" "the majority of courts in

23  California and other jurisdictions have found that the extraterritorial application of FEHA is

24  determined by the situs of both  [(1)] employment and [(2)] the material elements of the cause of

25  action, as opposed to residence of the employee or the employer."  *Russo v. APL Marine Servs.,*

26  *Ltd.*, 135 F. Supp. 3d 1089, 1094 (C.D. Cal. 2015), *aff'd*, 694 F. App'x 585 (9th Cir. 2017)

27  (collecting cases); Cal. Gov. Code § 12940, (h)(1).  Here, the Parties disagree on the *application* of

28  the facts of this case to the standard.  Hearing at 2:02.  Accordingly, the Court analyzes each "situs"

United States District Court
Northern District of California

factor in turn.

### 1. Situs of Employment

The first factor for evaluating extraterritorial application of the FEHA and CFRA is the situs of employment.  Situs of employment consists of the employee's "principal place of work," the employee's "definite base of operations," or the "location where the employee's work holds a substantial connection to." *Sexton*, No. 21-cv-00898-TLN (AC), 2023 WL 1823487, at *3 (quoting *Elzeftawy v. Pernix Grp., Inc.*, 477 F. Supp. 3d 734, 777 (N.D. Ill. 2020)).

Plaintiff Hill's Complaint is factually deficient as to situs of employment.  Plaintiff Hill is a resident of Maryland and owns a Maryland home – and when he was in need of extended medical hospitalization, he went to a hospital in Maryland.  [Dkt. 1 at 9, 35–36].  Even viewing the Complaint in the light most favorable to Plaintiff, it is clear on the face of the pleading that he was a remote employee of Workday, living and working out of Maryland rather than California.  Additionally, Plaintiff Hill concedes that he has only spent a week in California for work and he spends most of his work time outside of California.  Hearing at 1:55.

### 2. Situs of the Material Elements of the Claims

The second factor for evaluating extraterritorial application of the FEHA and CFRA is the situs of the material elements of the cause of action.  In order to establish the situs of the material elements of the cause of action, a plaintiff is required to establish a substantial connection of the situs of legally relevant events to California.  *Sexton*, No. 21-cv-00898-TLN (AC), 2023 WL 1823487, at *4 (citing *Elzeftawy*, 477 F. Supp. 3d 777).  The case law requires that a significant *aggregation* of alleged events must occur within California.  *Drolla v. ChevronTexaco Corp.*, No. A104161, 2004 WL 2750328, at *4 (Cal. Ct. App. Dec. 2, 2004) (unpublished).

To determine whether a party has established a substantial connection to California, courts look to the "location of where the core of the alleged wrongful conduct occurred." *Id*.  "The Ninth Circuit has analyzed this factor by evaluating whether the core of the claim, such as a termination decision, occurred within California." *Sexton*, No. 21-cv-00898-TLN (AC), 2023 WL 1823487, at *4 (citing *English v. Gen. Dynamics Mission Sys., Inc.*, 808 F. App'x 529, 530 (9th Cir. 2020)).  "In evaluating similar wrongful termination cases, California courts have emphasized the location of

1   where the termination decision was made as a crucial element of the claim because this decision

2   gives rise to the liability of the conduct." *Sexton*, No. 21-cv-00898-TLN (AC), 2023 WL 1823487,

3   at *4 (citing *English*, 808 F. App'x at 530; *accord Guillory v. Princess Cruise Lines, Ltd.*, 2007 WL

4   102851, at *4 (Cal. App. 2 Dist. Jan. 17, 2007) (unpublished).

5        The Complaint does not establish a substantial connection to California as the situs of the

6   material elements of the cause of action.  Defendant Hauck, Plaintiff's supervisor, resides and works

7   remotely from New York. [Dkt. 1 at 9].  Plaintiff only cites to the one-week Summit in California

8   where Defendant Hauck allegedly colluded with Ms. Capata to further ostracize Plaintiff Hill, ruin

9   his reputation, and prevent him from working with colleagues.  [Dkt. 1 at 48].  There is insufficient

10  allegations as to the location where the termination decision was made, and the fact that Plaintiff's

11  direct supervisor worked and lived in New York is particularly significant in this regard.  The

12  allegations in the Complaint regarding the one-week business trip to California are not enough to

13  establish a substantial connection to California, especially compared to the amount of time Plaintiff

14  worked and interacted with his supervisor and others while he was working from Maryland.

15  Plaintiff Hill does not allege facts, other than a purported sneer while in California, to establish

16  material or relevant events occurring in California, much less a significant aggregation of alleged

17  events occurring in California.  *Drolla*, 2004 WL 2750328, at *4.  Plaintiff Hill's Complaint does

18  not allege, for example, that any significant aggregation of material elements of his claims occurred

19  or were even ratified in California.

20       Accordingly, the Court **GRANTS** the Defendants' Motions to Dismiss with respect to all

21  causes of action against all Defendants predicated on the FEHA and the CFRA without prejudice.

22  Plaintiff Hill is granted leave to amend the Complaint by May 24, 2024 (and, as noted, Plaintiff Hill

23  has already filed his Amended Complaint, *see* dkt. 53).

24       **B.    Claim pursuant to California Labor Code § 1102.5 – Eighth Cause of Action**

25       As with the FEHA and CFRA, the issue for this cause of action is whether Plaintiff Hill (a

26  resident of Maryland who works remotely from Maryland for a California-based company) is

27  entitled to the protections of California Labor Code § 1102.5.  Several courts have analyzed the

28  level of California contacts needed to support and properly assert a cause of action under the

United States District Court
Northern District of California

16

California Labor Code for an extraterritorial plaintiff.  *Vidrio v. United Airlines, Inc.*, No. CV15-7985 PSG (MRWX), 2017 WL 1034200 (C.D. Cal. Mar. 15, 2017), *rev'd and remanded sub nom. Ward v. United Airlines, Inc.*, 986 F.3d 1234 (9th Cir. 2021) (discussing multiple flight attendant cases and determining that the factors relevant to analyzing the Labor Code's applicability are (1) the employer's citizenship, and (2) the employee's state of residence and (3) whether/how much the employee worked in California) (reversed and remanded on other grounds); *Shook v. Indian River Transp. Co.*, 236 F. Supp. 3d 1165 (E.D. Cal. 2017), *aff'd*, 716 F. App'x 589 (9th Cir. 2018) (California's wage and rest break laws do not apply to work performed outside California by Plaintiffs who were California residents and who worked for a Florida-based trucking company); *Campagna v. Language Line Servs., Inc.*, No. 08-cv-02488-EJD, 2012 WL 1565229 (N.D. Cal. May 2, 2012) (holding plaintiff did not have a claim under Labor Code section 2802 against her California employer for failing to pay job-related "necessary expenses" of a home phone line and Internet access where plaintiff worked remotely from her home in Iowa); *Weinberg v. Valeant Pharms. Int'l*, No. 8:15-CV-01260-KES, 2017 WL 6543822 (C.D. Cal. Aug. 10, 2017), *aff'd sub nom. Weinberg v. Valeant Pharms. N. Am., LLC*, 765 F. App'x 328 (9th Cir. 2019) (denying summary judgment because the only evidence of Plaintiff's connection to California was that Plaintiff "worked on a number of financial and infrastructure systems based in California, New Jersey, and Canada.").

Unlike the FEHA, the test for extraterritorial application of the California Labor Code is not explicitly framed as a two-element (or multi-factor) test.  Thus, as with many areas of the law, the Court examines the issue here based on application of analogous precedent (discussed above) as guidance for the contours of the test for the extraterritorial application of the California Labor Code. In light of the case law cited and discussed above, Plaintiff Hill's Complaint does not sufficiently allege facts to overcome the presumption against the extraterritorial application of the California Labor Code.  Plaintiff Hill's allegations are much more analogous to those cases which have rejected extraterritorial application of California's Labor Code.  Like the Plaintiffs in *Shook*, 236 F. Supp. 3d 1165, and *Campagna*, No. 08-cv-02488-EJD, 2012 WL 1565229, Plaintiff Hill does not allege that he primarily works in California (and indeed he admits that he lives in Maryland and worked remotely from his home office in Maryland).  [Dkt. 1 at 3].  Indeed, Plaintiff Hill only alleges one

United States District Court
Northern District of California

1    instance when he travelled to California for work, and that was for a short period of time for a

2    company Summit.  *Id.* at 48.

3          Defendant Workday proposed that the Court utilize the FEHA extraterritorial analysis

4    (including the general presumption against extraterritorial application of California law) for

5    evaluating the extraterritorial application of California Labor Code § 1102.5.  Hearing at 2:05.

6    Plaintiff Hill had no objections to the Court applying the FEHA's extraterritoriality legal standard

7    to this issue.  Hearing at 2:06.  Because California courts have neither rejected nor expressly adopted

8    the FEHA extraterritoriality test for purposes of the California Labor Code, out of an excess of

9    caution and in addition to the analysis of case law under the California Labor Code itself (discussed

10   above), the Court incorporates by reference its analysis of the extraterritoriality issue under the

11   FEHA.  And as discussed above and for the same reasons, the Court finds that the Plaintiff has not

12   overcome the presumption against extraterritorial application of California law and has not satisfied

13   this FEHA-based two-element situs test for extraterritorial application of the California Labor Code.

14   Thus, even under this alternative legal standards framework for extraterritoriality agreed to by the

15   Parties, the Court finds insufficient basis for the extraterritorial application of the California Labor

16   Code.

17         Accordingly, the Court **GRANTS** Defendant Workday's Motion to Dismiss with respect to

18   the eighth cause of action under the California Labor Code without prejudice.  Plaintiff Hill is

19   granted leave to amend the Complaint by May 24, 2024 (and, as noted, Plaintiff has already filed

20   his Amended Complaint, *see* dkt. 53).

21         **C.    Claim of promissory fraud pursuant to California Civil Code §§ 1572, 1709, &**
             **1710 - Ninth Cause of Action**

22

23         As with the preceding causes of action, the issue for this cause of action is whether Plaintiff

24   Hill (a resident of Maryland who works remotely from Maryland for a California-based company)

25   is entitled to assert promissory fraud under the California Civil Code.  The general presumption

26   against extraterritorial application of California law applies here, as with other causes of action.

27   *Sullivan*, 51 Cal. 4th at 1207.

28         While courts have not directly analyzed the extraterritorial application of California

1   substantive law for promissory fraud, courts have analogously analyzed the extraterritorial

2   application of causes of action for fraud pursuant to California's Unfair Competition Law ("UCL")

3   and Consumers Legal Remedies Act ("CLRA").  *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121,

4   1127–32 (N.D. Cal. 2014) (analyzing the extraterritorial application of California Law of UCL

5   claims in connection with purported violations of California Civil Code §§ 1572, 1709, 1710, 1750

6   and California Business and Professions Code § 17500).

7        "Under California law, the relevant inquiry for whether a state law is being applied

8   extraterritorially is not the location of employment or where the contract was formed, but rather

9   whether 'the conduct which gives rise to liability . . . occurs in California.'"  *Leibman v. Prupes*,

10  No. 14-cv-09003-CAS, 2015 WL 3823954, at *7 (C.D. Cal. June 18, 2015) (collecting cases).

11  Plaintiff Hill's promissory fraud cause of action does not allege that the conduct which gives rise to

12  liability occurred in California.  Instead, Plaintiff Hill only alleges, in the light most favorable to

13  him, that his employment contract was *formed* under California law.  [Dkt. 1 at 73].  As with the

14  preceding causes of action, the Complaint fails to adequately allege sufficient facts regarding any

15  conduct which would give rise to liability occurring in California.  As noted, Defendant Hauck

16  (Plaintiff's direct supervisor) works in New York. [Dkt. 1 at 9].  The only allegations linking alleged

17  liability to California center on the one-week trip to California, which is inadequate because nothing

18  that happened during that trip is directly relied upon in the Complaint as conduct giving rise to

19  liability for promissory fraud.  There is no allegation that Ms. Capata's "sneering" conduct is in any

20  way related to promissory fraud and Plaintiff Hill's stock options.

21        Defendant Workday proposed that the Court use the FEHA's test for extraterritorial analysis

22  for analyzing whether or not there should be extraterritorial application of California law of

23  promissory fraud including California Civil Code §§ 1572, 1709, & 1710.  Hearing at 2:06.  Plaintiff

24  Hill requested additional briefing to address this specific issue.  *Id.*  Because the Court is granting

25  Defendants' motion to dismiss with leave to amend, the Court denies Plaintiff Hill's request for

26  additional briefing as moot.  *Id.* at 2:18 (Plaintiff Hill does not object to the denial of request for

27  additional briefing).

28        Accordingly, the Court **GRANTS** Defendant Workday's Motion to Dismiss with respect to

United States District Court
Northern District of California

19

1   the ninth cause of action for promissory fraud under California Civil Code §§ 1572, 1709, & 1710

2   without prejudice.  Plaintiff Hill is granted leave to amend the Complaint by May 24, 2024 (and, as

3   noted, Plaintiff has already filed his Amended Complaint, *see* dkt. 53).

### D.   Claims of intentional infliction of emotional distress - Tenth Cause of Action

5       Plaintiff Hill asserts a cause of action for intentional infliction of emotional distress under

6   California tort law against all named Defendants.  [Dkt. 1 at 76].  Again, the central issue is whether

7   Plaintiff (a Maryland resident who worked from Maryland) can assert a claim under California tort

8   law.  The general presumption against extraterritorial application of California law applies here, as

9   with other causes of action.  *Sullivan*, 51 Cal. 4th at 1207.

10      As with the California Labor Code, the California courts have not expressly reduced the test

11  for extraterritorial application of California tort law to a specified set of factors (unlike for

12  extraterritoriality inquiries under the FEHA).  Here, the Parties propose different legal standards.

13  Defendants propose that the Court use the FEHA's extraterritoriality analysis for evaluating whether

14  Plaintiff has overcome the presumption against extraterritorial application of California law and thus

15  whether Plaintiff is properly entitled to assert intentional infliction of emotional distress claims here

16  under California substantive tort law.  Hearing at 2:07.  By contrast, Plaintiff Hill proposes that the

17  Court use the legal test discussed in *Urban v. Tesla, Inc.*, No. 22-cv-07703-PCP, 2023 WL 6796021,

18  at *3 (N.D. Cal. Oct. 13, 2023).  *Id.* at 2:09.

19      The Court rejects Defendant's proposed legal test for extraterritoriality here.  The test

20  outlined in *Urban v. Tesla, Inc.*, No. 22-cv-07703-PCP, 2023 WL 6796021, at *3, does not relate to

21  the extraterritorial application of California law; rather, the test in that case centers on the

22  applicability of choice of law to claims, specifically whether the court should apply California's

23  choice of law provisions or the choice of law provisions of the state of residence of the out-of-state

24  plaintiff.  *Id.*  The *Urban* court found that the out-of-state plaintiff, who was a "Florida citizen and

25  resident 'at all times relevant to this action[,]'" could *potentially* assert a cause of action under

26  California law based on California choice of law provisions.  *Id.*  However, the Court acknowledged

27  there exists a factual scenario where the out-of-state plaintiff could not bring a cause of action under

28  California law.  *Id.*

United States District Court
Northern District of California

1    The issue and the legal test outlined in *Urban v. Tesla, Inc.*, No. 22-cv-07703-PCP, 2023

2    WL 6796021, at *3–4, are inapplicable to this case.  The Parties are not disputing choice of law

3    issues here; rather, the Parties concede in their briefing that California substantive law is applicable.

4    [Dkts. 16 (Plaintiff Hill's Opp. to Defendant Workday), 26 (Defendant Workday's reply), 32

5    (Plaintiff Hill's Opp. to Defendant Dahm), 34 (Defendant Dahm's reply), 36 (Plaintiff Hill's Opp.

6    to Defendants Hauck and McFall), 39 (Defendants Hauck and McFall's reply)].  By contrast, here

7    the Parties dispute whether California law applies extraterritorially to an out-of-state plaintiff.  The

8    Court finds the *Urban v. Tesla* legal test and analysis to be unhelpful to the issue before the Court

9    on the instant motion.

10    Even though California state courts have not defined the explicit contours of the standard

11    for extraterritorial application of intentional infliction of emotional distress under California

12    substantive law, precedent is instructive that there must exist a recognizable nexus between the

13    alleged harm and the State of California.  *Sullivan*, 51 Cal. 4th at 1207.

14    Here, Plaintiff does not sufficiently allege a nexus between the alleged harms that constitute

15    intentional infliction of emotional distress and the state of California.  The gravamen of allegations

16    constitute: (1) the alleged discriminatory remarks made during a September 19, 2022, virtual

17    videoconference which Plaintiff attend from his Maryland workspace, *see* dkt. 1 at 30; (2) Defendant

18    Workday allegedly conducting a wellness check which caused *Maryland* police officers to appear

19    at Plaintiff Hill's *Maryland* home, *id.* at 80, and (3) Ms. Capata frowning and glaring at Plaintiff

20    Hill in an in-person, small group, breakout meeting at the Defendant Workday California Summit,

21    *id.* at 48.  The Court finds that these facts, as alleged, do rise to the level of overcoming the

22    presumption against the extraterritorial application of California law.  *Sullivan*, 51 Cal. 4th at 1207.

23    Because California courts have neither rejected nor expressly adopted the FEHA

24    extraterritoriality test for purposes of California tort law (particularly for intentional infliction of

25    emotional distress), out of an excess of caution and in addition to the analysis under *Sullivan* and

26    California's general presumption against extraterritorial application (discussed above), the Court

27    incorporates by reference its analysis of the extraterritoriality issue under the FEHA.  And as

28    discussed above and for the same reasons, the Court finds that the Plaintiff has not overcome the

United States District Court
Northern District of California

1  presumption against extraterritorial application of California law and has not satisfied this FEHA-

2  based two-element test for extraterritorial application of California substantive law for intentional

3  infliction of emotional distress.  Thus, even assuming the Court were to adopt this alternative legal

4  standards framework for extraterritoriality proposed by Defendants, the Court finds insufficient

5  basis for the extraterritorial application of California substantive law for intentional infliction of

6  emotional distress.

7       Accordingly, the Court **GRANTS** the Defendants' Motions to Dismiss with respect to the

8  tenth cause of action for intentional infliction of emotional distress without prejudice.  Plaintiff Hill

9  is granted leave to amend the Complaint by May 24, 2024 (and, as noted, Plaintiff has already filed

10  his Amended Complaint, *see* dkt. 53).

11      **E.    Claims for violations of CMIA pursuant to California Civil Code § 56 *et seq*. -**
               **Eleventh Cause of Action**

12

13      Plaintiff Hill brings a cause of action for purported violations of the California

14  Confidentiality of Medical Information Act ("CMIA") pursuant to California Civil Code § 56 *et seq*.

15  against all named Defendants.  [Dkt. 1 at 77].  As with the previous causes of action, the central

16  issue is whether Plaintiff (a Maryland resident who worked from Maryland) can assert a claim under

17  California's CMIA.  The general presumption against extraterritorial application of California law

18  applies here, as with other causes of action.  *Sullivan*, 51 Cal. 4th at 1207.

19      As with the California Labor Code, the California courts have not expressly reduced the test

20  for extraterritorial application of the CMIA claims to a specific set of factors, such as are applied

21  for extraterritoriality inquiries under the FEHA.  Here, the Parties propose different legal standards.

22  Defendants propose that the Court use the FEHA's extraterritoriality analysis for evaluating whether

23  Plaintiff has overcome the presumption against extraterritorial application of California law and thus

24  whether Plaintiff is properly entitled to assert intentional infliction of emotional distress claims here

25  under California substantive tort law.  Hearing at 2:13.

26      By contrast and as with the preceding cause of action, Plaintiff Hill proposes that the Court

27  use the legal test discussed in *Urban v. Tesla, Inc.*, No. 22-cv-07703-PCP, 2023 WL 6796021, at *3

28  (N.D. Cal. Oct. 13, 2023).  *Id.*  The Court rejects Defendant's proposed legal test for

United States District Court
Northern District of California

22

extraterritoriality for the same reasons as explained above with regard to the tenth cause of action. The *Urban* test relates to analyzing choice of law provisions, and is inapplicable to analyzing whether an out-of-state plaintiff can assert a claim under California's CMIA.

Even though California state courts have not defined the explicit contours of the standard for extraterritorial application of the CMIA, precedent is instructive that there must exist a recognizable nexus between the alleged harm and the State of California. *Sullivan*, 51 Cal. 4th at 1207. Here, Plaintiff does not sufficiently allege a nexus between the alleged conduct which is asserted to violate the CMIA and the state of California. The gravamen of allegations constitute: (1) Defendant Workday allegedly conducting a wellness check which caused *Maryland* police officers to appear at Plaintiff Hill's *Maryland* home, dkt. 1 at 80, (2) emails between Defendants and Plaintiff Hill's wife concerning his medical issues, dkt. 1 at 35–38, and (3) comments from other unidentified Workday employees to Plaintiff indicating that they knew about his medical issues and hospitalization, dkt. 1 at 38 n.8. The Court finds that these facts, as alleged, do rise to the level of overcoming the presumption against the extraterritorial application of California law. *Sullivan*, 51 Cal. 4th at 1207.

Even though California state courts have not defined the explicit contours of the standard for the extraterritorial application of California law (particularly for CMIA claims), out of an excess of caution and in addition to the analysis under *Sullivan* and California's general presumption against extraterritorial application (discussed above), the Court incorporates by reference its analysis of the extraterritoriality issue under the FEHA. And, as discussed above, for the same reasons, the Court finds that the Plaintiff has not over come the presumption against extraterritorial application of California law and has not satisfied this FEHA-based test for extraterritorial application of California substantive law for CMIA claims. Thus, even under this alternative legal standards framework for extraterritoriality agreed to by the Parties, the Court finds insufficient basis for the extraterritorial application of California law for CMIA claims.

Accordingly, the Court **GRANTS** the Defendants' Motions to Dismiss with respect to the eleventh cause of action asserting CMIA claims without prejudice. Plaintiff Hill is granted leave to amend the Complaint by May 24, 2024 (and, as noted, Plaintiff has already filed his Amended

1    Complaint, *see* dkt. 53).

2    **F.    Claims pursuant to the California Constitution - Twelfth Cause of Action**

3    Plaintiff Hill brings this cause of action against all named Defendants. *Id.* at 79.  As with

4    the previous causes of action, the central issue is whether Plaintiff (a Maryland resident who worked

5    from Maryland) can assert a claim under the California Constitution, that is whether he can properly

6    assert rights under the California Constitution extraterritorially.  The general presumption against

7    extraterritorial application of California law applies here, as with other causes of action. *Sullivan*,

8    51 Cal. 4th at 1207.

9    Defendants proposed that the Court utilize the FEHA extraterritoriality analysis for the

10   purpose of analyzing whether Plaintiff can overcome the presumption against extraterritorial

11   application of the claims under the California Constitution.  Hearing at 2:16.

12   Plaintiff Hill requests the Court utilize the test outlined in *Urban v. Tesla, Inc.*, No. 22-cv-

13   07703-PCP, 2023 WL 6796021, at *3.  Hearing at 2:16.  For the same reasons explained above, the

14   Court rejects utilizing the test outlined in *Urban* because it is inapposite here.

15   Even though California state courts have not defined the explicit contours of the standard

16   for extraterritorial application of the California Constitution, precedent is instructive that there must

17   exist a recognizable nexus between the alleged harm and the State of California. *Sullivan*, 51 Cal.

18   4th at 1207.  Here, the asserted California Constitution violations are predicated on the same alleged

19   facts as the alleged CMIA violations.  [Dkt. 1 at 31–42, 77–82].  Plaintiff Hill does not sufficiently

20   allege a nexus between the alleged conduct which is asserted to violate the California Constitution,

21   on the one hand, and the State of California, on the other hand.  The gravamen of allegations are

22   that: (1) Defendant Workday allegedly contacted local police in Maryland regarding a wellness

23   check on Plaintiff which caused *Maryland* police officers to appear at Plaintiff Hill's *Maryland*

24   home, dkt. 1 at 80, (2) emails between Defendants and Plaintiff Hill's wife concerning his medical

25   issues, dkt. 1 at 35–38, and (3) comments from other unidentified Workday employees to Plaintiff

26   indicating that they knew about his medical issues and hospitalization, dkt. 1 at 38 n.8.  The Court

27   finds that these facts, as alleged, do rise to the level of overcoming the presumption against the

28   extraterritorial application of the California Constitution, particularly by a Plaintiff who is neither a

resident nor a citizen of the State of California.  *Sullivan*, 51 Cal. 4th at 1207.

Furthermore, Defendants argue that a claim under the California Constitution entitles Plaintiff Hill only to injunctive or equitable relief, and not compensatory or other damages.   Dkt. 12 at 33 (citing *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1128 (S.D. Cal. 2023); Dkt 23 at 20 (citing *Cousin*, 681 F. Supp. 3d at 1128); Dkt. 35 at 29 (citing *Cousin*, 681 F. Supp. 3d at 1128).  Defendants argue that the failure to seek any cognizable relief for this cause of action renders the assertion of this cause of action to be legally deficient.  [Dkt. 12 at 33; Dkt. 23 at 20; Dkt. 35 at 29].  Plaintiff Hill does not argue otherwise.  [Dkts. 16, 32, 36].

Here, Plaintiff Hill's Complaint seeks no injunctive or equitable relief directed to this twelfth cause of action asserting violations under the California Constitution.  [Dkt. 1 at 79–82].  To the extent the Complaint seeks injunctive relief, that prayer for relief is directed to other causes of action and is not directed to the California Constitution's privacy issues raised by the twelfth cause of action.  Specifically, the Complaint only seeks equitable relief in the form of "an injunction against age, gender, disability and race-based harassment, discrimination, and retaliation in the future[.]" *Id.* at 81.  The twelfth cause of action (under the California Constitution) is not directed to age, gender, disability, or race based-harassment, discrimination, or retaliation.  Rather, the twelfth cause of action is sub-titled "Violations of the Right to Privacy in Violation of the California Constitution, Art. 1, § 1" and asserts that the defendants violated his right to privacy for the same reasons recited with regard to the CMIA cause of action.  [Dkt. 1 at 79-82].

Under California law, a constitutional claim is legally insufficient where it fails to seek the proper relief.  *Moore v. Rodriguez*, No. 20-cv-01481-BAS-BGS, 2021 WL 2222590, 2021 U.S. Dist. LEXIS 103725 (S.D. Cal. June 2, 2021) ("California's 'constitutional provision protecting the right of privacy . . . supports a cause of action for an injunction' but it does not confer on a litigant a private right of action for damages.") (internal citation omitted); *Cousin*, 681 F. Supp. 3d at 1128 (dismissing a constitutional right of privacy claim under Rule 12(b)(6) on the grounds that the plaintiff sought monetary damages rather than injunctive relief).  Here, Plaintiff fails to seek proper relief for his asserted cause of action under the California Constitution.  Thus, for this additional reason separate from the extraterritoriality defect, the Court further finds that the pleading of this

United States District Court
Northern District of California

1    twelfth cause of action is legally insufficient and thus this claim should be dismissed.

2         Accordingly, the Court **GRANTS** the Defendants' Motions to Dismiss with respect to the

3    twelfth cause of action pursuant to the California Constitution.  As noted, Plaintiff has already filed

4    his Amended Complaint. *See* Dkt. 53.  The Court further notes that Plaintiff no longer asserts a

5    cause of action under the California Constitution.  *Id*.

6    **III.    CLAIMS ASSERTED AGAINST DEFENDANT HAUCK**

7         Plaintiff Hill has asserted four causes of action against Defendant Hauck.  [Dkt. 1 at 66

8    (Harassment in violation of the FEHA), 76 (Intentional infliction of emotional distress), 77 (CMIA

9    violations), 79 (Violations of the California constitution)].   Plaintiff Hill alleges that Defendant

10   Hauck is a resident of New York.  *Id.* at 9.  Separate from the other Defendants, Defendant Hauck

11   has moved to dismiss for lack of personal jurisdiction.  [Dkt. 35 at 12].

12        "California's long-arm statute allows courts to exercise personal jurisdiction over defendants

13   to the extent permitted by the Due Process Clause of the United States Constitution." *Core-Vent*

14   *Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993); Cal. Code Civ. Proc. § 410.10.

15   "Because California's long-arm jurisdictional statute is coextensive with federal due process

16   requirements, the jurisdictional analyses under state law and federal due process are the same."

17   *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004).

18        The Ninth Circuit has "established a three-prong test for analyzing a claim of specific

19   personal jurisdiction: (1) The non-resident defendant must purposefully direct his activities or

20   consummate some transaction with the forum or resident thereof; or perform some act by which he

21   purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking

22   the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to

23   the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair

24   play and substantial justice, i.e. it must be reasonable."  *Schwarzenegger*, 374 F.3d at 802 (citing

25   *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).  "The plaintiff bears the burden of satisfying

26   the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802 (citing *Sher v. Johnson*, 911 F.2d

27   1357, 1362 (9th Cir. 1990)).

28        Here, the Court finds that Plaintiff Hill has not satisfied his burden to show that the Court

United States District Court
Northern District of California

26

has personal jurisdiction over Defendant Hauck.  The Complaint has insufficient allegations to support such a finding.  The Complaint relies on the fact that Defendant Hauck is an employee of Defendant Workday, which has its headquarters in California.  [Dkt. 1 at 11].  Plaintiff Hill does not adequately allege that Defendant Hauck's actions occurred in California or were directed towards California.  [Dkt. 1 at 24–26 (Ms. Brown related allegations), 27–29 ("Rising" event allegations), 31–33 (alleged demotion), 35–37 (wellness check in Maryland), 44 (work schedule related allegations)].  Even taking the Complaint in the light most favorable to Plaintiff, all of the material acts taken by (or failed to be taken by) Defendant Hauck took place remotely.  And, because Plaintiff Hill admits that Defendant Hauck resides in New York, even construing the Complaint in the light most favorable to Plaintiff, any remote actions taken by or involving Hauck occurred where she resides and from where she works (New York).  *Id.* at 11.  Thus, the causes of action against Defendant Hauck do not arise out of or relate to forum-related activities.  *Schwarzenegger*, 374 F.3d at 802.

The original Complaint fails to allege that Defendant Hauck purposefully directed her activities to California.  *Id.*  By definition, because Plaintiff Hill is a resident of Maryland, any activities Defendant Hauck undertook to supervise or communicate with him were at best directed to him in Maryland.  The Complaint contains no allegations that Defendant Hauck purposefully availed herself of the privilege of conducting activities in California, and no allegations that she invoked the benefits and protections of California laws.  *Id.*

Finally, the Court finds that, because Defendant Hauck is a resident of New York who supervised Plaintiff (a Maryland resident), asserting personal jurisdiction is not reasonable and does not comport with fair play and substantial justice.  *Id.*  The Complaint has insufficient allegations against Defendant Hauck's actions which would reasonably lead her to believe she may be hauled into court in California with regard to this matter.

In briefing and at oral argument, Plaintiff offered no evidence, averments of new facts, or exhibits which would in any way supplement or support a finding of personal jurisdiction over Defendant Hauck.  *See* Hearing, *passim*.  Plaintiff never sought jurisdictional discovery and, based on the pleading, it appears that any such discovery would have been futile.

United States District Court
Northern District of California

Accordingly, the Court **GRANTS** Defendant Hauck's Motion to Dismiss with respect to all causes of action asserted against her as an individually named Defendant.  The Court notes that Plaintiff has already filed his Amended Complaint [Dkt. 53] which no longer names Defendant Hauck as a named individual Defendant.

## CONCLUSION

For the reasons stated above and for the reasons discussed on the record at the Motion to Dismiss hearing, Defendants' Motions to Dismiss are **GRANTED WITHOUT PREJUDICE**. Dkts. 12, 23, 35; Hearing at 1:55.  Plaintiff Hill was and is granted leave to amend the Complaint by May 24, 2024 (and, as noted, Plaintiff has already taken advantage of this leave to amend and he has already filed his Amended Complaint, *see* dkt. 53).

**IT IS SO ORDERED.**

Dated:  June 14, 2024

_____
PETER H. KANG
United States Magistrate Judge