JULIE A. TOTTEN (STATE BAR NO. 166470)
jatotten@orrick.com
KAYLA D. GRUNDY (STATE BAR NO. 300513)
kgrundy@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    (415) 773-5700
Facsimile:    (415) 773-5759

Attorneys for Defendant
WORKDAY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY C. HILL, an individual,<br><br>              Plaintiff,<br><br>    v.<br><br>WORKDAY, INC., a Delaware Corporation, and DOES 1 through 10, inclusive,<br><br>              Defendants. | Case No. 3:23-cv-06558<br><br>**DEFENDANT WORKDAY, INC.'S NOTICE OF MOTION AND MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL AND FOR SANCTIONS**<br><br>Date: September 4, 2025<br>Time: 1:30 PM<br>Dept.: F<br>Judge: Hon. Peter H. Kang |

**NOTICE OF MOTION**
**AND MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL AND FOR SANCTIONS**

PLEASE TAKE NOTICE THAT on September 4, 2025 at 1:30 PM before the Honorable Peter H. Kang, located at the United States District Court, San Francisco Division, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Workday, Inc. ("Workday") shall and hereby does move pursuant to Local Rule 7-8 and the Court's inherent authority to disqualify Plaintiff's counsel for their disclosure of Workday's privileged and confidential information in Exhibit 1 to the Declaration of Lenden F. Webb In Support of Plaintiff's Motion for Leave to File Second Amended Complaint (the "SAC"). Workday also asks the Court to impose monetary sanctions against Plaintiff's counsel for Workday's costs, expenses, and attorneys' fees for seeking to seal confidential and privileged portions of the SAC and for filing this Motion.

Disqualification and sanctions are necessary and appropriate because Plaintiff and his counsel knowingly and intentionally disclosed Workday's privileged and confidential information in the SAC, *see* ECF No. 118-1, despite Workday notifying Plaintiff that a draft version of the SAC contained such information and Workday's efforts to cooperate with Plaintiff's counsel to remove or redact the information. Plaintiff's counsel ignored these efforts and publicly filed the SAC on July 23, 2025, without removing or redacting Workday's confidential and privileged information or filing the Complaint provisionally under seal pursuant to Local Rule 79-5. Workday moved for an Administrative Motion to Seal on July 24, 2025.  ECF No. 119.

This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Kayla D. Grundy and the exhibits attached thereto; the pleadings and other records of the Court's file; materials of which this Court may take judicial notice; and other such written and oral argument as may be presented to the Court.

Dated: July 29, 2025

Orrick, Herrington & Sutcliffe LLP

By: _____
KAYLA D. GRUNDY
Attorneys for Defendant
WORKDAY, INC.

DEFENDANT'S MOTION FOR
DISQUALIFICATION & SANCTIONS
[CASE NO. 3:23-cv-06558]

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION  AND MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL AND FOR SANCTIONS ................................................................................. I

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

I.       INTRODUCTION ............................................................................................... 1

II.      RELEVANT BACKGROUND ........................................................................... 2

III.     DISQUALIFICATION AND SANCTIONS ARE SUPPORTED UNDER THE COURT'S INHERENT POWER ........................................................................ 4

         A.       WEBB LAW SHOULD BE DISQUALIFIED FROM THIS CASE .................... 5

         B.       SANCTIONS AGAINST PLAINTIFF AND WEBB LAW ARE WARRANTED ............................................................................................ 7

                  1.       Plaintiff's Failure to Meet and Confer Despite Notice of Workday's Privilege Assertions Justifies Sanctions ......................................... 7

                  2.       Plaintiff's Unilateral Decision To Publicly File Privileged Information In Violation of Local Rules Warrants Sanctions ................... 8

                  3.       Plaintiff's Attempts to Circumvent the Court's Emergency Procedures to Handle Public Filing of Privileged Information Warrants Sanctions ........................................................................ 11

IV.      AN AWARD OF ATTORNEY'S FEES IS APPROPRIATE ......................................... 12

V.       CONCLUSION ................................................................................................ 12

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*,
     175 F.R.D. 646 (C.D. Cal. 1997) ................................................................................................ 8

*Chambers v. NASCO, Inc.*,
     501 U.S. 32 (1991) ................................................................................................ 4, 12

*In re County of Los Angeles*,
     223 F.3d 990 (9th Cir. 2000) ................................................................................................ 4

*In re Dyer*,
     322 F.3d 1178 (9th Cir. 2003) ................................................................................................ 12

*Fink v. Gomez*,
     239 F.3d 989 (9th Cir. 2001) ................................................................................................ 4

*Gomez v. Vernon*,
     255 F.3d 1118 (9th Cir. 2001) ................................................................................................ 5

*Goodyear Tire & Rubber Co. v. Haeger*,
     581 U.S. 101 (2017) ................................................................................................ 12

*U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*,
     2013 WL 2278122 (C.D. Cal. May 20, 2013) ................................................................ 5, 11

*Hi-Tek Bags Ltd. v. Bobtron Int'l Inc.*,
     144 F.R.D. 379 (C.D. Cal. 1992) ................................................................................................ 7

*In re Kramer*,
     193 F.3d 1131 (9th Cir. 1999) ................................................................................................ 4

*Primus Auto. Fin. Servs., Inc. v. Batarse*,
     115 F.3d 644 (9th Cir. 1997) ................................................................................................ 4

*Reed v. AMCO Ins. Co.*,
     2012 WL 846475 (D. Nev. Mar. 9, 2012) ................................................................ 7, 12

*In re Snyder*,
     472 U.S. 634 (1985) ................................................................................................ 4

*Van Asdale v. International Game Technology*,
     577 F.3d 989 (9th Cir. 2009) ................................................................................................ 10

DEFENDANT'S MOTION FOR
DISQUALIFICATION & SANCTIONS
[CASE NO. 3:23-CV-06558]

*Visa U.S.A., Inc. v. First Data Corp.*,
  241 F.Supp.2d 1100 (N.D. Cal. 2003) .................................................................................... 4

*Wadler v. Bio-Rad Labs., Inc.*,
  212 F. Supp. 3d 829 (N.D. Cal. 2016) ................................................................................. 10

**State Cases**

*Chubb & Son v. Superior Ct.*,
  228 Cal.App. 4th 1094 (2014).......................................................................................... 9, 10

*Clark v. Superior Ct.*,
  196 Cal. App. 4th 37 (2011)........................................................................................... 5, 6, 7

*Fox Searchlight Pictures Inc. v. Paladino*,
  89 Cal. App. 4th 294 (2001)................................................................................................. 9

*Gregori v. Bank of Am.*,
  207 Cal. App. 3d 291 (Ct. App. 1989) .................................................................................. 4

*Rico v. Mitsubishi Motors Corp.*,
  42 Cal.4th 807 (2007) ........................................................................................................... 5

**Rules**

N.D. Cal. Civ. L.R. 11-4(a)(1) ................................................................................................. 4

N.D. Cal. Civ. L.R. 11-4(a)(4) ................................................................................................. 4

N.D. Cal. Civ. L.R. 7-8 ............................................................................................................. i

N.D. Cal. Civ. L.R. 79-5 ................................................................................................. *passim*

N.D. Cal. Civ. L.R. 79-5(f) ...................................................................................................... 4

N.D. Cal. Civ. L.R. 79-5(f)(3)............................................................................................... 8, 9

DEFENDANT'S MOTION FOR
DISQUALIFICATION & SANCTIONS
[CASE NO.: 3:23-cv-06558]

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In a last-ditch effort to resurrect claims the Court dismissed with prejudice months ago, Plaintiff Anthony Hill, through his attorneys at Webb Law Group, APC ("Webb Law"), publicly filed a proposed amended complaint that disclosed privileged and confidential information that Plaintiff only learned in the course of providing legal advice to Workday in his role as Senior Counsel. ECF No. 118-1, Ex. 1. Plaintiff and his counsel's actions were not inadvertent. Rather, after reviewing a draft proposed Second Amended Complaint ("SAC"), Workday informed Plaintiff that the draft contained Workday's confidential and privileged information. Declaration of Kayla Grundy in Support of Workday's Motion for Disqualification and Sanctions, ¶ 4. Workday specified the paragraphs in the draft SAC that caused concern and explained that it was willing to work with Webb Law to remove or redact the privileged or confidential portions which, in any case, are not crucial to Plaintiff's claims. *Id.*

Over a week lapsed between Workday's notice to Plaintiff about the privileged nature of certain allegations and Plaintiff's filing of the proposed SAC. Prior to filing Plaintiff did not dispute Workday's privilege assertions. *Id.*, ¶¶ 4-5. And while Plaintiff indeed revised his proposed SAC after providing Workday a copy, he did not revise the paragraphs Workday flagged at all. *Id.*, ¶ 5. Nor did he inform Workday in advance of his intention to file his draft as-is without complying with Local Rule 79-5 which requires a party to provisionally file under seal any document that contains confidential information, even where that designation is disputed. *Id.*

Once Plaintiff filed his proposed SAC in violation of Workday's privilege and this Court's Local Rules, Workday promptly acted to protect its information. *Id.* Workday requested Plaintiff seek to have the document locked and withdraw it subject to re-filing a redacted or revised version. *Id.* Plaintiff did not respond. *Id.* The following day, still without responding to Workday's multiple requests for action to remedy the grave error, Plaintiff's counsel sought to *undo* the procedural protections Workday availed itself of in locking access to the proposed SAC, insisting that the document be made public immediately, doubling down on their ethical and procedural violations. *Id.*, ¶ 7.

DEFENDANT'S MOTION FOR
DISQUALIFICATION & SANCTIONS
[CASE NO. 3:23-CV-06558]

Webb Law's intentional and unethical actions warrant disqualification from this case. Workday requests this Court disqualify Webb Law and levy sanctions against Plaintiff and Webb Law for Workday's costs, expenses, and attorneys' fees for preparing this Motion as well as Workday's Administrative Motion to Seal. ECF No. 119.

## II.    RELEVANT BACKGROUND

On June 13, 2025, Plaintiff informed Workday that Plaintiff intended to file a SAC. Grundy Decl., ¶ 2. Several weeks later, on July 8, 2025, Plaintiff provided Workday with a draft of the proposed SAC. *Id.*, ¶ 3. On July 14, 2025, Workday sent Plaintiff a letter advising him of his ethical obligations to maintain attorney-client privilege given his in-house counsel role at Workday. *Id.*, ¶ 4. While acknowledging Plaintiff's right to raise good faith claims against his employer, Workday told Plaintiff that sections of Plaintiff's draft SAC disclosed Workday's privileged information and filing the draft as-is would violate Plaintiff's duty of confidentiality to Workday. *Id.* Workday pointed to fourteen specific paragraphs of the SAC as containing privileged and confidential information and asked Plaintiff to remove or redact this information. *Id.* Plaintiff did not respond to Workday's July 14, 2025 letter. *Id.*

On July 23, 2025, Plaintiff filed his motion for leave to file his SAC and included a proposed SAC as an exhibit to the Webb Declaration. *Id.* ¶ 5. The proposed SAC as filed contained the exact same fourteen paragraphs Workday previously identified as containing Workday's privileged and confidential information. ECF No. 118, Ex. 1. Yet, despite Plaintiff's knowledge that this information was deemed privileged and confidential by Workday, Plaintiff did not submit the proposed SAC consistent with Local Rule 79-5 which articulates the specific procedures required for filing a document the filing party does not believe to warrant sealing, but which has been designated confidential by another party.

While Plaintiff has since taken the position that there is no privileged information disclosed in the proposed SAC in correspondence to the Court, *see* Grundy Decl., ¶ 7, Plaintiff's own motion for leave to file a second amended complaint and later correspondence to Workday confirms the privileged nature of the material is conceded. *See* ECF No. 118 at 11 (arguing Plaintiff is entitled to rely on privileged information to support his claims). Upon learning that

DEFENDANT'S MOTION FOR
DISQUALIFICATION & SANCTIONS
[CASE NO.: 3:23-CV-06558]

Plaintiff had ignored Workday's privilege and confidentiality concerns, Workday asked Plaintiff to file a motion to remove an incorrectly filed document on July 23, 2025. Grundy Decl., ¶ 5. Plaintiff did not respond. *Id*. Workday contacted the ECF Helpdesk to request the document containing privileged information be locked pending a motion by either Plaintiff or Defendant, which the Helpdesk promptly completed. *Id*., ¶ 6. Workday informed Plaintiff it had taken this step and again requested they filed a motion to remove an incorrectly filed document to obviate the need for Workday to prepare a motion to seal on an emergency basis. Plaintiff again did not respond. *Id*., ¶ 7.

On the morning of July 24, 2025, Plaintiff responded only to request a copy of the email to the ECF Helpdesk, without substantively addressing any of Workday's concerns. *Id*. Workday provided the requested email and again asked that Plaintiff file a motion to withdraw an improperly filed document. *Id*. Rather than engage with Workday on this important and time-sensitive issue, Plaintiff instead emailed the ECF Helpdesk himself to demand that Workday's emergency efforts to protect its confidential information be undone and the proposed SAC be made publicly available immediately as he intended, despite the fact that Plaintiff knew Workday was preparing a motion to seal and knew the information contained in the proposed SAC is privileged. *Id*. Workday moved to seal portions of the SAC and provided the Court with a version of the SAC with all the confidential and privileged information redacted the same day. ECF No. 119.

On July 28, 2025, Plaintiff filed an opposition to Workday's motion to seal. ECF No. 125. Plaintiff argues that "many of these same paragraphs [that Workday now seeks to seal] had already been disclosed in the publicly filed December 11, 2023 complaint," although Plaintiff's own redline comparing the proposed SAC to Plaintiff's former complaint demonstrates that the language to which Workday objects did not previously exist. ECF No. 125 at 4; ECF No. 118, Ex. 1. Plaintiff argues that Workday seeks to seal "a different and broader set of paragraphs" than the ones Workday identified to Plaintiff in a meet and confer letter, but fails to acknowledge the substance of the paragraphs across Plaintiff's original draft and as-filed proposed SAC is the same. ECF No. 125 at 2. Plaintiff also continues to rely on inapposite authority regarding whether

- 3 -

Plaintiff's claims can properly be *dismissed* for relying on privileged information, although Workday is not seeking to dismiss his claims on that basis and disclaims any responsibility under Local Rule 79-5 to "file an Administrative Motion to Consider Whether Another Party's Material Should Be Sealed" despite the plain language of the Rule. ECF No. 125 at 3, 5; *see also* Local Rule 79-5(f).

**III.    DISQUALIFICATION AND SANCTIONS ARE SUPPORTED UNDER THE COURT'S INHERENT POWER**

"[D]istrict courts have the authority to supervise and discipline the conduct of attorneys who appear before them," and this includes the inherent authority to suspend or disqualify lawyers. *In re Kramer*, 193 F.3d 1131, 1132 (9th Cir. 1999); *see also In re Snyder*, 472 U.S. 634, 643 (1985). The court's "inherent power" can also be levied to impose sanctions that "extends to a full range of litigation abuses." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46–47 (1991).

Federal courts in California apply California state law in determining whether to disqualify an attorney. *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). The California Rules of Professional Conduct expressly apply to lawyers practicing in the Northern District of California. *See* N.D. Cal. Civ. L.R. 11-4(a)(1) (requiring compliance with California state law standards). Lawyers practicing in this Court are similarly required to practice with "the honestly, care, and decorum required for the fair and efficient administration of justice." *Id.* at 11-4(a)(4). "In reviewing a motion to disqualify counsel, the district court must make 'a reasoned judgment and comply with the legal principles and policies appropriate to the particular matter at issue.'" *Visa U.S.A., Inc. v. First Data Corp.*, 241 F.Supp.2d 1100, 1104 (N.D. Cal. 2003) (citing *Gregori v. Bank of Am.*, 207 Cal. App. 3d 291, 300 (Ct. App. 1989)).

District courts' "inherent power" to impose sanctions extends to instances "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 33. The standard may be met "when a party acts for an improper purpose—even if the act consists of making a truthful statement or a non-frivolous argument or objection," *see Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001), or for "delaying or disrupting the litigation." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997).

DEFENDANT'S MOTION FOR
DISQUALIFICATION & SANCTIONS
[CASE NO.: 3:23-cv-06558]

### A.    WEBB LAW SHOULD BE DISQUALIFIED FROM THIS CASE

The law is clear that where, as here, an attorney who comes into possession of an adversary's privileged or other confidential materials uses such materials to gain advantage, including to prepare pleadings, the attorney is subject to disqualification.

The Central District addressed this question in *U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*, 2013 WL 2278122, at *2 (C.D. Cal. May 20, 2013). In the *qui tam* action, the Court granted defendant's motion to disqualify where counsel was on notice that documents they relied upon were privileged yet decided to "continue[] to quote in the pleadings portions of the privileged documents" without "seeking direction from the Court." *Id*. The *Hartpence* court admonished that, when faced with an ethical dilemma involving an adversary's privileged information, "the Ninth Circuit has explained, '[t]he path to [an] ethical resolution is simple: when in doubt, ask the court.'" *Id*. (citing *Gomez v. Vernon*, 255 F.3d 1118, 1135 (9th Cir. 2001)) (disqualifying counsel that "breach[ed] an ethical duty to seek a ruling from the Court about the privileged documents and breached their duty to contact [the defendant] about the documents after the complaint was unsealed"). Plaintiff failed to seek a proper court-sanctioned resolution to the question of whether Plaintiff could rely on Workday's privileged information to state his allegations; instead taking it in his own hands and jeopardizing Workday's privilege and requiring counsel's disqualification. *See id.* at *3 (rejecting Plaintiff's arguments against disqualification because "[a]ttorneys are not free, under the standards for proper ethical conduct discussed above, to do whatever they want with the privileged documents they obtain from their clients" and noting the importance of "what [counsel] did and did not do after such exposure" to the privileged materials").

Just like Plaintiff's attorneys, the attorneys in *Hartpence* used privileged information in their pleadings despite being on notice the information was privileged and instead of seeking direction from the court. *See also Rico v. Mitsubishi Motors Corp.*, 42 Cal.4th 807, 818 (2007) ("[a]n attorney has an obligation not only to protect his client's interests but also to respect the legitimate interests of fellow members of the bar, the judiciary, and the administration of justice"). And just like in *Hartpence*, the Court should disqualify them from continuing in this case. *See also Clark v. Superior Ct.*, 196 Cal. App. 4th 37, 45 (2011) (disqualifying counsel for

relying on privileged documents to "craft a claim" and holding the "right to counsel of [plaintiff's] choice 'does not trump the policy behind protecting the attorney-client privilege from being undermined.'").

Although here the question is not Webb Law's reliance on inadvertently produced privileged documents, the reasoning of *Harptence* and *Clark* apply equally and demonstrate that Webb Law's actions rise to the level of unethical conduct that warrants disqualification. *See supra*, § B. Plaintiff's attorneys were on notice that information contained in the SAC was privileged information Plaintiff himself could only be aware of in the course of providing legal advice to Workday, they were given the opportunity to rectify the issue prior to filing, and instead of engaging with Workday on a matter as important as the attorney-client privilege, they intentionally filed the privileged and confidential information on the public docket while unilaterally deeming those actions justified by inapposite case law. Plaintiff had several alternative, proper measures he could have taken including, for example, engaging with Workday directly to attempt to reach resolution (which undoubtedly was possible here), seeking guidance from the Court on the bounds of disclosure for an in-house counsel plaintiff (with his own independent ethical obligations to the Company), or simply provisionally filing their proposed SAC under seal and giving Workday the opportunity to respond in due course.

Instead of any of these reasonable, efficient, and burden-free options, Webb Law relied on *and disclosed* privileged and confidential information in the pleadings, actively refused to take any "reasonable remedial action" upon Workday's objection, *and also* actively sought to intervene and reverse the remedial actions Workday took to protect its confidences. They should be disqualified from this action. "The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar," which cannot be achieved if Plaintiff's counsel is allowed to undermine confidentiality and attorney-client privilege.  *Clark*, 196 Cal. App. 4th at 54.

Finally, disqualification is appropriate for the additional reason that Plaintiff's counsel's conduct continues. In addition to publicly filing information Plaintiff knew Workday contended was privileged and interfering with Workday's steps to intervene and prevent public disclosure,

DEFENDANT'S MOTION FOR
DISQUALIFICATION & SANCTIONS
[CASE NO.: 3:23-cv-06558]

on July 28, 2025, Plaintiff filed an opposition to Workday's motion to seal that mischaracterizes events and seeks to mislead the Court. *See* ECF No. 125. Indeed, while Plaintiff argues Workday "identified a different and broader set of paragraphs" in its motion, Plaintiff ignores that the draft SAC Plaintiff provided to Workday is different from what Plaintiff ultimately filed. Had Plaintiff reviewed the paragraphs at issue in Workday's meet and confer letter and its motion to seal, it could readily identify that the paragraphs are identical. Plaintiff also argues waiver because the "same paragraphs" were already disclosed in a previous filing. While some of the subject matter may be similar, Plaintiff forgets that he submitted a redlined version of his proposed SAC from his prior complaint which itself demonstrates that hardly any of the text of Plaintiff's proposed SAC remains the same—including the paragraphs Workday identified as containing privileged information. Accordingly, it could not be true that Workday now objects to the "same paragraphs" that were previously disclosed. Deterring this kind of continuous conduct by counsel through disqualification is exactly the kind of "prophylactic, not punitive" measure courts have found necessary to "not only protect the rights of [defendant] but also to preserve the integrity of the judicial proceedings." *See Clark*, 196 Cal. App. 4th at 54.

### B.     SANCTIONS AGAINST PLAINTIFF AND WEBB LAW ARE WARRANTED

The public filing of privileged and confidential information that Plaintiff attained in his role as in-house counsel at Workday justifies imposing sanctions. *See Hi-Tek Bags Ltd. v. Bobtron Int'l Inc.*, 144 F.R.D. 379 (C.D. Cal. 1992) (levying sanctions on a party who made a court filing where it disclosed confidential information of the opposing party); *see also Reed v. AMCO Ins. Co.*, 2012 WL 846475, at *3 (D. Nev. Mar. 9, 2012).

#### 1.     Plaintiff's Failure to Meet and Confer Despite Notice of Workday's Privilege Assertions Justifies Sanctions

Plaintiff's conduct is not a matter of inadvertence. Despite Workday's July 14, 2025 letter that informed Plaintiff of Workday's position that certain information contained in the draft SAC is privileged, Plaintiff chose not to meet and confer with Workday on the matter. When confronted with this fact, Plaintiff responded that "he could not further delay by engaging in extended meet-and-confer discussions regarding the SAC." Grundy Decl, ¶ 7. But Plaintiff did

not file the proposed SAC until July 23, 2025—more than one week after Workday identified its privilege concerns. *Id.*, ¶¶ 4-5. In the intervening nine days, Plaintiff did not attempt to confer with Workday and accordingly, both Plaintiff's insinuation of urgency and that any discussions would be protracted are unfounded and entirely speculative. To the contrary, had Plaintiff engaged in any form of discussion with Workday on this important matter, there is no reason the parties could not have reached a reasonable resolution. And even if Plaintiff could articulate some reason that his six-week delay in filing a proposed SAC was Workday's doing (which he cannot), Plaintiff's conduct—filing Workday's privileged information on the public docket—is still unjustified.

Plaintiff's decision to proceed despite Workday's protests, without engaging in a meet and confer process, and without even informing Workday in advance of its intention to proceed indicates that Plaintiff is likely to repeat such unethical behavior in the future.

### 2. Plaintiff's Unilateral Decision To Publicly File Privileged Information In Violation of Local Rules Warrants Sanctions

Plaintiff had no legitimate need to provide the level of detail he did in the publicly filed version of the SAC, and even if such detail was necessary, limited redactions would have resolved the issues between the parties. Indeed, the Court has contemplated the exact scenario when one party contends information is privileged, but the other party seeks to file that information. Both Plaintiff's failure to abide by the Local Rules and his decision to publicly file privileged information warrant sanctions.

Knowing Workday believed the proposed SAC contained confidential and privileged information, Plaintiff was obligated to comply with Local Rule 79-5. Rule 79-5 articulates a procedure that permitted Plaintiff to provisionally file the draft SAC under seal. That filing would have triggered a 7-day deadline for Workday to respond justifying the sealing of the document, or it would become public. Plaintiff did not comply with this Rule, which resulted in Workday incurring costs and fees to immediately act to preserve the privilege. *See Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 649-650 (C.D. Cal. 1997) (sanctioning plaintiff's counsel for violating local rules). In fact, Plaintiff disputes that the Rule requires Plaintiff to take

any action at all. While citing Local Rule 79-5(f)(3) in his opposition to Workday's motion to seal to argue that Workday was responsible for filing a motion to seal within seven days of his submission, Plaintiff ignores that the Rule does not permit him to publicly file the disputed document in the meantime. Indeed, Rule 79-5(f)(3) continues immediately following the language upon which Plaintiff relies: "A failure to file a statement or declaration may result in the *unsealing of the provisionally sealed document* without further notice to the Designating Party." If Plaintiff were correct and the Rules permitted him to freely file disputed confidential information, the reference to a "provisionally sealed document" and the "Administrative Motion to Consider Whether Another Party's Material Should Be Sealed" mentioned in 79-5(f) are nonsensical. Plaintiff's disregard for the Local Rules (which he is required to familiarize himself with) to Workday's detriment warrants sanctions.

In addition to rewriting the Local Rules to fit his actions, to further justify his egregious behavior, Plaintiff argues that disclosure of privileged information "is relevant and reasonably necessary to assert [his] claims." ECF No. 118 at 11. Plaintiff purports to rely on case law to support his position that he is entitled to include allegations disclosing privileged information in his publicly filed complaint. Setting aside that Plaintiff neglected to provide any of this authority until *after* he publicly filed the proposed SAC, Plaintiff misstates the cases upon which he relies.

For example, *Fox Searchlight Pictures Inc. v. Paladino* is a case about whether a former in-house counsel could disclose privileged information to her own lawyers. The court expressly does not decide whether a plaintiff can publicly disclose privileged information: "[i]n the present case we are not faced with, and do not decide, whether the former in-house counsel or her attorney can be held liable to the employer for the public disclosure of those confidences and communications." 89 Cal. App. 4th 294, 308 (2001). The Court noted the "Supreme Court's principal concern over permitting suits by in-house counsel against their former employers was that such suits not result in the unwarranted public disclosure of the employer's secrets." The Court recommended the use of "sealing and protective orders" as a means of limiting public disclosure. *Id*. at 309, 312. The Court further emphasized that "the in-house attorney who publicly exposes the client's secrets will usually find no sanctuary in the courts" and that a client cannot "turn the shield of confidentiality

into a sword."  *Id*. at 312-315. Plaintiff's reliance on *Chubb & Son* fares no better. 228 Cal. App. 4th 1094, 1108 (2014). The case stands for the proposition that a former in-house counsel can disclose privileged information to their own attorney as long as that information is not ***publicly disclosed***. *Id*. ("These attorneys would be precluded from further disclosure by the rules requiring attorneys to maintain confidences of their own client, as well as by the court's order expressly prohibiting further disclosure.").

In addition to these two cases cited in Plaintiff's Motion to Amend, ECF No. 118, Plaintiff has also relied on *Van Asdale v. International Game Technology* and *Wadler v. Bio-Rad Labs., Inc*. to support his public filing of the SAC containing Workday's privileged information in retrospect. *See* Grundy Decl, ¶ 7, Ex. E; 577 F.3d 989, 994–996 (9th Cir. 2009); 212 F. Supp. 3d 829, 841–42 (N.D. Cal. 2016). Neither of these cases hold that public disclosure of privileged information in a suit by a former in-house counsel is appropriate and instead address the question of whether a lawsuit can be dismissed because it relies upon privileged information—an argument Workday has not made here. On the other hand, both cases contain language that again supports Workday's position. The court in *Van Asdale* held that "[t]o the extent this suit might nonetheless implicate confidentially-related concerns . . . the appropriate remedy is for the district court to ***use the many 'equitable measures at its disposal' to minimize the possibility of harmful disclosures***, not to dismiss the suit altogether." 577 F.3d at 995-996 (emphasis added).  In *Wadler*, the court stated that a party "may also alert the Court in cases involving highly sensitive information, so that the ***Court can take measures to protect the confidentiality of the information if it deems such measures necessary and appropriate***." 212 F. Supp. 3d at n. 6 (emphasis added).

Although Workday questions the necessity and intention of Plaintiff's disclosure of Workday's privileged information to his own counsel, *that* disclosure is not the one to which Workday now objects. But Plaintiff did not only disclose information to his attorneys to inform his case. He publicly disclosed privileged information over Workday's objection. None of Plaintiff's authority—and no authority of which Workday is aware—authorizes such an egregious violation of the attorney-client privilege and the duty of confidentiality.

DEFENDANT'S MOTION FOR
DISQUALIFICATION & SANCTIONS
[CASE NO.: 3:23-cv-06558]

**3.** **Plaintiff's Attempts to Circumvent the Court's Emergency Procedures to Handle Public Filing of Privileged Information Warrants Sanctions**

Plaintiff's actions are shrouded in bad faith and appear calculated to cause injury. *See Hartpence*, 2013 WL 2278122, at *3 ("counsel's decision to quote documents in the pleadings without seeking any guidance from the Court after the USAO notified them of privilege issues was 'tantamount to bad faith.'"). Despite the fact that Plaintiff concedes the information contained in the proposed SAC is privileged in his motion to amend, *see* ECF No. 118 at 11, after Plaintiff learned that Workday successfully disabled public access to the SAC temporarily, he attempted to interfere with Workday's efforts to preserve its privilege by representing to court staff that the proposed SAC contains no privileged information. Grundy Decl., ¶ 7. Just hours later, however, Plaintiff again conceded (in an email not including the Court) that the proposed SAC does contain privileged information but he is entitled to do so in support of his claims (a false conclusion based on a misinterpretation of the cases upon which he relies as explained *supra*). *Id*., Ex. E.

In addition to making misrepresentations to the court about the nature of the proposed SAC, Plaintiff further acted in bad faith by seeking to have Workday's emergency administrative measures reversed because Workday had not yet filed a motion to seal. *Id*. At the time Plaintiff made this representation to the Court, Plaintiff knew (1) Workday requested Plaintiff file a motion to withdraw an improperly filed document; (2) Workday requested Plaintiff confirm it will file such a motion by a set time; (3) Workday intended to file a motion to seal if Plaintiff did not agree to withdraw the proposed SAC; and (4) Plaintiff had neither responded to Workday's request nor had the time to do so expired based on Workday's request. To *again* decline to meet and confer with Workday while seeking to evade the Court's decision on whether the proposed SAC should be sealed in part or not is inconsistent with the Northern District's Guidelines for Professional Conduct or the California Rules of Professional Conduct.

The present dispute was avoidable and unnecessary. The parties almost certainly could have resolved this dispute had Plaintiff engaged in good faith. Instead, Plaintiff took all steps to ensure that he succeeded in waiving Workday's attorney-client privilege, despite the fact he is not entitled

to do so. Plaintiff's conduct pre-filing and post-filing warrants the imposition of sanctions.

## IV.    AN AWARD OF ATTORNEY'S FEES IS APPROPRIATE

"Federal courts possess certain inherent powers, including 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 102 (2017) (citing *Chambers*, 501 U.S. at 44-45). A district court may award costs and attorneys' fees as one such compensatory sanction. *In re Dyer*, 322 F.3d 1178, 1193 (9th Cir. 2003). Workday notified Plaintiff that his SAC contained privileged and confidential information and that filing such information would breach his duty of confidentiality and harm Workday. Grundy Decl., ¶ 4. Plaintiff had the opportunity to confer with Workday about the at-issue language and make modifications, to redact and provisionally file his preferred draft under seal, and to withdraw the SAC to address Workday's concerns after the fact. Plaintiff refused in each case and further refused to meet and confer with Workday until Workday stated its intention to file this motion. Because of Plaintiff's willful refusal to do what the law requires and let the Court resolve the parties' dispute, Workday has incurred considerable expense engaging in needless motion practice.

Workday now seeks to recover the reasonable attorney's fees incurred preparing and filing its Administrative Motion to Seal and for preparing and filing this Motion.  See *Reed,* 2012 WL 846475, at *3 (publicly filing documents containing confidential information that cost the plaintiff and "the court time [ ] and energy in sealing the aforementioned documents" was sanctionable conduct that allowed for reasonable attorney's fees related to the motion to seal and motion for sanctions). Given Plaintiff's insistence on making Workday's privileged and confidential information publicly accessible and refusal to cooperate with Workday to cure the error, the payment of costs and reasonable attorney's fees is appropriate.

## V.    CONCLUSION

For the reasons stated herein, the Court should exercise its inherent authority to disqualify Webb Law for filing privileged and confidential information in violation of their ethical duties and impose monetary sanctions against Plaintiff for Workday's expenses, costs and attorney's

fees for its Administrative Motion to Seal in the amount of $11,429 and this Motion in the amount of $9,351, *see* Grundy Decl., ¶ 8, and any additional sanctions the Court determines to be just and proper.

Dated: July 29, 2025

Orrick, Herrington & Sutcliffe LLP

By:

_____
KAYLA D. GRUNDY
Attorneys for Defendant
WORKDAY, INC.

DEFENDANT'S MOTION FOR
DISQUALIFICATION & SANCTIONS
[CASE NO.: 3:23-cv-06558]