1
2
3
4               UNITED STATES DISTRICT COURT
5          NORTHERN DISTRICT OF CALIFORNIA
6              SAN FRANCISCO DIVISION
7

8   ANTHONY C. HILL,              Case No. 23-cv-06558-PHK

9         Plaintiff,          **ORDER GRANTING-IN-PART AND**
                                 **DENYING-IN-PART THE PARTIES'**

10      v.                   **JOINT DISCOVERY BRIEF; ORDER**
                                 **TO SHOW CAUSE**

11   WORKDAY, INC., et al.,

12         Defendants.        Re: Dkt. 117

13

14      The details of this case are discussed in the Court's Order regarding the Defendant Workday,

15 Inc's motion to dismiss Plaintiff's First Amended Complaint. [Dkt. 89]. Now before the Court is

16 Plaintiff Anthony Hill's and Defendant Workday's joint discovery letter brief raising a number of

17 discovery disputes. [Dkt. 117]. After carefully reviewing the papers and the Parties' submissions,

18 the Court finds this matter appropriate for adjudication without the need for oral argument. Civil

19 L.R. 7-1(b). For the reasons discussed herein, the Court **GRANTS-IN-PART** and **DENIES-IN-**

20 **PART** the requested relief regarding these discovery disputes.

21                     **LEGAL STANDARD**

22      The generally applicable legal standards for discovery are well-known. The Court has broad

23 discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d

24 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and

25 their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S.*

26 *Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's discretion extends to crafting

27 discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v.*

28 *Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1    narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of

2    any discovery method if it determines that "the discovery sought is unreasonably cumulative or

3    duplicative, or can be obtained from some other source that is more convenient, less burdensome,

4    or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

5        Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery

6    regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional

7    to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy

8    for purposes of discovery is broadly defined to encompass "any matter that bears on, or that

9    reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In*

10   *re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v.*

11   *Sanders*, 437 U.S. 340, 350–51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User*

12   *Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021)

13   ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for

14   purposes of trial.") (alteration omitted).

15       While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v.*

16   *Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of

17   discovery, is defined broadly, although it is not without ultimate and necessary boundaries.").

18   Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope

19   of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1)

20   emphasize the need to impose reasonable limits on discovery through increased reliance on the

21   commonsense concept of proportionality: "The objective is to guard against redundant or

22   disproportionate discovery by giving the court authority to reduce the amount of discovery that may

23   be directed to matters that are otherwise proper subjects of inquiry. The [proportionality

24   requirement] is intended to encourage judges to be more aggressive in identifying and discouraging

25   discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In

26   evaluating the proportionality of a discovery request, the Court considers "the importance of the

27   issues at stake in the action, the amount in controversy, the parties' relative access to the information,

28   the parties' resources, the importance of the discovery in resolving the issues, and whether the

2

burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). Further, "a party seeking discovery of relevant, non-privileged information must show, before anything else, that the discovery sought is proportional to the needs of the case." *Gilead Sciences, Inv. v. Merck & Co.*, 2016 WL 146574, at *1 (N.D. Cal. Jan. 14, 2016).

The resisting party, in turn, has the burden to show that the discovery should not be allowed. *La. Pac.*, 285 F.R.D. at 485. The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). Similarly, a district court's determination as to proportionality of discovery is within the district court's discretion. *See Jones v. Riot Hospitality Group LLC*, 95 F.4th 730, 737–38 (9th Cir. 2024) (finding district court did not abuse discretion on proportionality ruling).

Ultimately, "the timing, sequencing and proportionality of discovery is left to the discretion of the Court." *Toro v. Centene Corp.*, 2020 WL 6108643, at *1 (N.D. Cal. Oct. 14, 2020).

# DISCUSSION

The Parties briefing presents three issues before the Court: (1) the appropriate location for Plaintiff Hill's deposition; (2) the scope of Plaintiff's Rule 30(b)(6) deposition notice to Defendant Workday; and (3) whether good cause exists to modify the scheduling order.

## I.     LOCATION OF PLAINTIFF'S DEPOSITION

First, Defendant Workday seeks to compel Plaintiff Hill (a resident of Maryland) to make himself available in California for his deposition. "A district court has wide discretion to establish

United States District Court
Northern District of California

3

the time and place of depositions." *Hyde & Drath v. Baker*, 24 F.3d 1162, 1166 (9th Cir. 1994).

Here, there is a general presumption that the Plaintiff may be deposed here in the Northern District of California because he chose this forum. "Courts ordinarily presume that a plaintiff may be deposed in the judicial district where the action was brought, inasmuch as the plaintiff, in selecting the forum, has effectively consented to participation in legal proceedings there." *Fenerjian v. Nong Shim Co., LTD*, 2016 WL 1019669, at *2 (N.D. Cal. Mar. 15, 2016) (citations omitted). "The general rule that a plaintiff will be required to make himself or herself available for examination in the district in which suit was brought 'appears to be based not only upon the fact that Plaintiffs choose the forum but also upon pragmatic considerations. . . . This not only permits predictability in prospective litigation, it also pragmatically permits the trial court to resolve disputes which may take place during the course of depositions without undue expenditure of time.'" *Id.* (quoting *Lexington Ins. Co. v. Commonwealth Ins. Co.*, 1999 WL 33292943, at *9 (N.D. Sept. 17, 1999)).

The presumption that a plaintiff may be deposed in the venue of the litigation is rebuttable. *Palma v. Safe Hurricane Shutters, Inc.*, 2009 WL 653305, at *4 (S.D. Fla. Mar. 12, 2009) ("Although ordinarily a defendant is entitled to depose a plaintiff in the forum where the case is pending, [Fed. R. Civ. P. 26(c)(2)] authorizes the Court to order that a plaintiff's deposition be taken in a different location, or by alternative means, if justice so requires."). "To overcome the presumption that a plaintiff's deposition should take place in the district in which plaintiff filed suit, the 'plaintiff has the burden of proving that undue hardship or exceptional or compelling circumstances justify his refusal to travel to his chosen forum.'" *Fenerjian*, 2016 WL 1019669 at *2 (quoting *Mullins v. Premier Nutrition Corp*, 2014 WL 4058484, at *1 (N.D. Cal. Mar. 15, 2014) and citing *Rulo v. Ricoh Ams. Corp.*, 2015 U.S. Dist. LEXIS 153432, at *3, 2015 WL 9688060 (N.D. Cal. Nov. 12, 2025) (plaintiff must "persuasively demonstrate" that traveling to the forum for his deposition "would, for physical and financial reasons, be practically impossible, or that it would otherwise be fundamentally unfair")).

Here, Plaintiff Hill provides two arguments to justify his refusal to travel to California for deposition. First, Plaintiff Hill avers that he has "anxiety-related concerns . . . and health-related

United States District Court
Northern District of California

1  anxiety[.]"  [Dkt. 117 at 4–5].  However, Plaintiff offers only generalized, non-specific assertions

2  of these "anxiety-related concerns," with no supporting detail about the nature of these "anxiety

3  related" issues, how severe the health issues are, or most significantly any explanation linking how

4  travelling for deposition in the Northern District of California would impact (much less impose an

5  undue burden as to) those issues.

6         Second, Plaintiff Hill avers that he is "currently on unpaid leave and does not have the

7  financial resources to fly across the [country] and stay for potentially multiple days for a deposition

8  that can simply take place remotely."  [Dkt. 117 at 4–5].  However, Plaintiff provided no details

9  regarding his "financial resources" and no evidence to substantiate his asserted impecuniousness.

10  The Court is further cognizant that Plaintiff Hill is an attorney who has been a member of the bar

11  for twenty years, *see* https://my.dcbar.org/directorymemberships?id=0014z00001kZvhfAAC,  and

12  most recently worked for several years at Workday.  In the modern era of discounted airfares, the

13  Court has not been presented with sufficient basis to conclude that the costs of travel are so high as

14  to constitute an undue burden.  In denying a similar motion seeking to avoid travel by plaintiffs for

15  their depositions, the court in *Rock Springs Vista Development* noted that "[t]he plaintiff, on the

16  other hand, has not only taken the volitional step of initiating the lawsuit or claim, he or she stands

17  to gain a substantial monetary sum and/or other beneficial relief as a result of suing a defendant. A

18  plaintiff, therefore, cannot invoke the mere fact inconvenience or expense as a legitimate reason to

19  refuse to appear and submit himself or herself to questioning by the defendant regarding the basis

20  for the claim."  *U.S. v. Rock Springs Vista Devel.*, 185 F.R.D. 603, 604 (D. Nev. 1999).  Because

21  "issues of time and money present ordinary concerns attendant to travel," there is no showing that

22  these ordinary concerns rise to the level of extreme hardship.  *See Sunsauce Foods Indus. Corp. v.*

23  *Son Fish Sauce USA Corp.*, 2024 WL 778395, at *2 (N.D. Cal. Feb. 26, 2024) (citing *Fenerjian*,

24  2016 WL 1019669, at *3).  Where, as here, a plaintiff's claim of undue hardship or exceptional or

25  compelling circumstances is devoid of detail or fails to provide basic information about their

26  circumstances, they fail to prove exceptional or compelling circumstances to justify their refusal to

27  travel to their chosen forum.  *See Fenerjian*, 2016 WL 1019669, at *3.

28         The case law relied on by Plaintiff Hill is neither persuasive nor germane to the facts present

in this action. [Dkt. 117 at 5 (citing *Shockey v. Hihtamaki, Inc.*, 280 F.R.D. 598, 602 (D. Kan. 2012) and *Packard v. City of New York*, 326 F.R.D. 66 (E.D. N.Y. 2018)]. While both cases are outside the Ninth Circuit and thus not binding, they are substantively both inapposite and distinguishable. The *Shockey* case was a Fair Labor Standards Act case involving several out of state opt-in plaintiffs, whose depositions were sought after other plaintiffs (including the named plaintiff) had already been deposed. *Shockey*, 280 F.R.D. at 599. The plaintiffs in *Shockey* presented detailed submissions showing that their estimated recovery in this remedial FLSA action would be either be a substantial percentage of or even exceed their lost overtime compensation. *Id.* at 601. By contrast, Plaintiff Hill has not submitted the same or similar type of detailed financial information and his potential recovery far exceeds the costs of travel.

The *Packard* case was a civil rights class action involving the deposition of one of the named plaintiffs who resided in Taiwan. *Packard*, 326 F.R.D. at 67. There, unlike here, the plaintiff submitted "a sworn declaration setting forth his modest income." *Id.* Further, the *Packard* court imposed all the costs of taking the deposition by videoconference on the plaintiff, including all costs required to comply with the Federal Rules of Civil Procedure. *Id.* at 68. The Court is cognizant that the fees charged by court reporting services to host virtual or videoconferenced depositions can run into the hundreds of dollars for "technology" or setup fees, which can approximate the costs of travel here. Thus, not only is *Packard* distinguishable, but the remedy granted in *Packard* would not achieve the cost-savings Plaintiff Hill seeks now.

Accordingly, Plaintiff Hill has failed to meet his burden to justify his refusal to travel to the Northern District of California for his deposition. The Court **GRANTS** Defendant's motion to compel Plaintiff to appear for his in-person deposition in the Northern District of California (specifically, in San Francisco as Workday requests in its briefing). While the Parties are free to stipulate to a different location, if they both desire, Plaintiff Hill's objections to travel to this forum for his deposition are overruled.

## II.    PLAINTIFF HILL'S 30(B)(6) DEPOSITION NOTICE

The next dispute concerns Plaintiff Hill's Rule 30(b)(6) deposition notice. Workday argues that the 30(b)(6) notice is overbroad because, of the twenty-two topics, none are allegedly germane

to the promissory fraud cause of action remaining in this case. [Dkt. 117 at 3]. Rather, Workday argues that counsel for Plaintiff Hill admitted that these topics go beyond that cause of action but that they relate to causes of action which would be asserted in a proposed Second Amended Complaint. *Id.* Plaintiff Hill recently filed that motion for leave to file a Second Amended Complaint, only after this discovery letter brief was filed, and that motion for leave to amend still awaits opposition and reply briefing, as well as oral argument.

Plaintiff Hill admits that the topics noticed are "tailored" to the proposed claims which Hill seeks leave to add by the pending motion to amend the complaint. [Dkt. 117 at 5]. There is thus no dispute that the noticed topics are unrelated to the promissory fraud claim. Plaintiff Hill argues that discovery may be taken to support "anticipated amendments" to pleadings. *Id.*

First, Rule 26 makes clear that "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Contrary to Plaintiff Hill's unsupported assertion, Rule 26 does not "expressly permit discovery of relevant and proportional matters that 'may support amendments,' so long as they are not pursued as a fishing expedition for unrelated claims." [Dkt. 117 at 5]. Rule 26(b)(1) was amended in 2000 to clarify the scope of relevance of discovery to the claims and defenses asserted. The Advisory Committee Notes to the 2000 Amendment to the Rule state that "The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action…. The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." Adv. Comm'ee Notes 2000 Amendments to Rule 26(b)(1).

Because there is no dispute that the 30(b)(6) topics are unrelated to the promissory fraud cause of action asserted in this case, and because there is no dispute that these topics relate to proposed causes of action which are only present in the proposed Second Amended Complaint (for which leave to file and amend is still an open disputed, not yet fully briefed matter), there is no dispute that the 30(b)(6) notice seeks material that is outside the scope of the sole claim in the operative Complaint and thus outside the scope of relevance for discovery under a straightforward

application of Rule 26(b)(1).  According, Workday's motion for a protective order to bar Plaintiff Hill from taking the noticed 30(b)(6) deposition on the 22 noticed topics is appropriately **GRANTED**.  Nothing in this Order prohibits Plaintiff Hill from serving a different 30(b)(6) deposition notice which is appropriately limited in scope to topics seeking discovery relevant to the claims and defenses remaining in this case (*i.e.*, the asserted promissory fraud cause of action or remaining defenses asserted in the case).

### III.    PLAINTIFF'S MOTION TO MODIFY THE CASE SCHEDULE

The next issue concerns Plaintiff Hill's motion seeking a modification of the case schedule. This request is **DENIED WITHOUT PREJUDICE**.  Plaintiff Hill argues that good cause exists to modify the scheduling order because (1) he has acted diligently to advance discovery, including agreeing to the lifting of the discovery stay, producing documents, and engaging in meet and confers; and (2) Plaintiff Hill's motion for leave to file a Second Amended Complaint provides further support for good cause.  *Id.*

The context of Plaintiff Hill's diligence argument is noteworthy.  On May 7, 2025, the Court granted Plaintiff Hill's previous counsel's motion to withdraw (which Plaintiff himself consented to).  [Dkt. 98].  On May 29, 2025, the Court granted the Parties' stipulation to stay all discovery deadlines for one month (through June 27, 2025) to allow Plaintiff time to secure new counsel.  [Dkt. 107].  Plaintiff obtained new counsel on June 11, 2025.  [Dkt. 110].  On June 13, 2025, the Court lifted the stay on discovery.  [Dkt. 115].  Thus, the actual delay caused by the stay of discovery amounted to less than a month.

Defendant Workday argues that no good cause exists to modify the current case scheduling order.  [Dkt. 117 at 4].  Defendant Workday argues that the Parties initially agreed to delay discovery pending the Court's ruling on Defendant Workday's then-pending motion to dismiss.  *Id.*  Defendant Workday attempted to resume discovery while that motion remained pending in February 2025, anticipating that the discovery deadline would remain unchanged.  *Id.*  Defendant Workday avers that Plaintiff Hill declined to resume discovery at that time.  *Id.*  Defendant Workday avers that the Parties promptly served discovery and that Workday noticed Plaintiff's deposition after their first round of settlement discussions.  *Id.*

1    The Court commends the Parties for their diligence in pursuing discovery, particularly since

2    the stay was lifted.  Plaintiff Hill's motion and the current dispute stems in part from the Parties'

3    strategic decisions to delay discovery earlier in the case and from disagreements over deposition

4    logistics and scope.  These factors do not establish good cause under Rule 16(b)(4) to modify the

5    case schedule.  There is no real dispute that the Parties can reasonably complete discovery on the

6    sole remaining promissory fraud claim by the existing deadline of August 22, 2025.  Accordingly,

7    no good cause exists to modify the scheduling order at this time.  To the extent the Parties require

8    time for specific "clean up" discovery after the fact discovery cut-off, the Court expects counsel for

9    both Parties to collaborate reasonably and reach reasonable accommodations and agreements.

10    Further, Plaintiff's pending motion for leave to file a Second Amended Complaint does not

11    support a finding of good cause to modify the current case schedule.  At the time the instant

12    discovery dispute was filed, no motion for leave had been filed.  However, two days after the instant

13    dispute was filed with the Court, Plaintiff Hill filed the not-yet fully briefed motion for leave.  [Dkt.

14    118].  The belated filing, by itself, does not warrant disruption of the current schedule and provides

15    no basis to justify relief.  Plaintiff Hill cites no persuasive authority requiring modification of a case

16    schedule simply because a motion for leave to amend has been filed, and the Court is not inclined

17    to change the case schedule based solely on the pendency of that motion.  Accordingly, Plaintiff

18    Hill's motion to modify the case schedule is **DENIED**.

19    ## ORDER TO SHOW CAUSE

20    In the briefing on the second issue above (scope of Plaintiff Hill's 30(b)(6) deposition

21    notice), Plaintiff Hill cited two cases with the following parentheticals:  *Mir v. L–3 Commc'ns*

22    *Integrated Sys., L.P.*, 319 F.R.D. 220, 227 (N.D. Tex. 2016) (discovery may support amendments

23    to pleadings so long as it is not overly broad or disproportionate); *South Pointe Wholesale, Inc. v.*

24    *Vilardi*, No. 16-CV-6758, 2017 WL 11570668, at *2 (E.D. N.Y. May 2, 2017) (acknowledging

25    discovery may uncover facts justifying amendments).  [Dkt. 117 at 5].

26    The *Mir* case has nothing to do with scope of relevance of discovery with regard to proposed

27    amendments to the pleadings.  Rather, that opinion deals with the issue of whether or not a party

28    can use Rule 37(a) to require an opposing party to sign release forms to authorize the Social Security

United States District Court
Northern District of California

Administration and a third-party to release information in their possession relevant to the *Mir* plaintiff's disability discrimination claim.  319 F.R.D. at 223-24.  As the *Mir* court noted, the releases at issue (the disputed discovery) was directly relevant to the actually asserted disability discrimination cause of action.  *Id.*  There is no discussion or mention in *Mir* about that discovery being relevant to supporting amendments to the complaint in that case.  The pinpoint cite in Plaintiff Hill's briefing (page 227 of the *Mir* opinion) is a page discussing in detail whether Rule 34 is the proper discovery rule for requiring another party to sign an authorization form to release confidential information.  319 F.R.D. at 227.  There is nothing on that specifically cited page relevant to the dispute over Plaintiff Hill's 30(b)(6) deposition notice and certainly nothing on that page which supports the parenthetical quoted verbatim above.

More troubling is Plaintiff Hill's citation to *South Pointe Wholesale, Inc. v. Vilardi*, No. 16-CV-6758, 2017 WL 11570668, at *2 (E.D. N.Y. May 2, 2017).  [Dkt. 117 at 5].  According to the Court's research, there is no such case.  First, the case number, 16-CV-6758 from the Eastern District of New York, is *Thompson v. Martuscello* a Petition for Writ of Habeas Corpus.  Second, the Westlaw citation, 2017 WL 11570668, is for *Cengage Learning, Inc. v. Wang*, No. 17 Civ. 4914 (JFK), 2017 WL 11570668 (S.D.N.Y. Sept. 14, 2017).  That *Cengage* opinion deals with a motion for expedited discovery under Rule 26(d)(1), not the scope of relevance for discovery with regard to proposed amendments to pleadings.  *Id.*

According to the Court's research, there are five Orders available on Westlaw for cases captioned *South Pointe Wholesale, Inc. v. Vilardi*, all from the W.D. of Kentucky, not the E.D. of New York.  Two of these orders have nothing to do with discovery at all: Civil Action No. 1:17-CV-00052-GNS, 2018 WL 922379 (W.D. Ky. Jan. 23, 2018) (report and recommendation on motion to dismiss); Civil Action No. 1:17-CV-00052-GNS, 2018 WL 2770438 (W.D. Ky. April 18, 2018) (report and recommendation on motion for partial summary judgment).

Two of the other *South Pointe Wholesale* orders discuss the scope of relevance for discovery and, contrary to Plaintiff Hill's parentheticals, both orders expressly hold that discovery is ***not*** relevant if it is outside the scope of then-asserted, existing claims and defenses.  Indeed, these orders discuss the very same amendment to Rule 26(b)(1) discussed by this Court above:

The current version of the rule and the associated commentary demonstrate that a party is to be held to discovery within the scope of the claims and defenses asserted in the pleadings, and may not employ discovery as a means of investigating whether additional claims might be available.  The 2000 amendments to Rule 26(b)(1) replaced prior language defining relevant discovery as that relating to the "subject matter" of the litigation with the more restrictive "claim or defense" language.    "The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings."  Fed. R. Civ. P. 26(b)(1) Advisory Committee's Note (2000 Amendment).  "This limitation ensured that discovery would no longer be used to troll for new claims or causes of action, but that the requested discovery was relevant to the specific claims and defenses before the court."  *Franklin v. United States*, No. 12-1167 KBM/LFG, 2013 WL 11336864 at *2, 2013 U.S. Dist. LEXIS 191416 at *5 (D.N.M. Aug. 28, 2013); *see also Monte H. Greenwalt Revocable Trust v. Brown*, No. 2:12-cv-01983, 2013 WL 6844760 at *3, 2013 U.S. Dist. LEXIS 178802 at *7 (D. Nev. Dec. 19, 2013) ("This prevents litigants from engaging in 'fishing expeditions' that may expose the defendant to claims not previously asserted in the plaintiff's complaint.").

*South Pointe Wholesale*, 2018 WL 2085272 at *3; *South Point Wholesale*, 2017 WL 3877860 at *3 (same).

The final opinion with the parties named South Pointe Wholesale and Vilardi is a motion for reconsideration of the previous discovery Order (2018 WL 2085275) in that same case.  *South Pointe Wholesale*, 2018 WL 1721936 (W.D. Ky. April 9, 2018).  That motion for reconsideration discussed relevance of discovery with regard to an existing, asserted defense (unclean hands) and not whether discovery should be permitted to support a potential amendment to a pleading.

It appears that Plaintiff Hill or his counsel has cited a non-existent opinion in support of their arguments.  It also appears that Plaintiff Hill or his counsel has cited cases and represented that they stand for propositions of law which, upon examination, they do not.  Without further facts, the Court will not speculate as to whether or not Plaintiff Hill or his counsel misused an AI tool such as ChatGPT to obtain hallucinated case citations.  However, the Court's Standing Order has made clear to the Parties and counsel in this case since its outset that there are risks inherent in the irresponsible and unprofessional misuse of such tools:

Parties and counsel shall not file or otherwise present to the Court any briefs, pleadings, materials, other documents, or argument which contain AI-hallucinated citations to law, case or legal citations which

11

1    are fictitious or non- existent, or any uncorroboratable assertions of
2    law or fact. A pro se party or a counsel's failure to confirm or double-
     check the accuracy, veracity, or even existence of a case or legal
     citation (or assertion of fact) created by an AI tool is grounds for
3    potential sanctions.

4    *See* Judge Kang's Standing Order in Civil Cases at § VII(C).

5         Accordingly, the Court hereby **ORDERS** Plaintiff Hill and his counsel to **SHOW CAUSE**

6    as follows:

7        1.  They **SHALL** explain the source, origin, and method of their finding the citation "*South*

8            *Pointe Wholesale, Inc. v. Vilardi*, No. 16-CV-6758, 2017 WL 11570668, at *2 (E.D.

9            N.Y. May 2, 2017)";

10       2.  They **SHALL** explain all steps taken to verify the accuracy, veracity, and existence of

11           the case cited as "*South Pointe Wholesale, Inc. v. Vilardi*, No. 16-CV-6758, 2017 WL

12           11570668, at *2 (E.D. N.Y. May 2, 2017)";

13       3.  They **SHALL** explain all bases for the assertion in their brief that *South Pointe*

14           *Wholesale, Inc. v. Vilardi*, No. 16-CV-6758, 2017 WL 11570668, at *2 (E.D. N.Y. May

15           2, 2017), supports the parenthetical they wrote in their brief that this case is

16           "acknowledging discovery may uncover facts justifying amendments";

17       4.  They **SHALL** explain all bases for the assertion in their brief that *Mir v. L–3 Commc'ns*

18           *Integrated Sys., L.P.*, 319 F.R.D. 220, 227 (N.D. Tex. 2016), supports the parenthetical

19           they wrote in their brief that "discovery may support amendments to pleadings so long

20           as it is not overly broad or disproportionate";

21       5.  The response to this Order to Show Cause **SHALL** include declarations under oath from

22           all persons responsible for the briefing and citation to these cases and **SHALL** address

23           each of the issues enumerated above.

24        The response to this Order to Show Cause **SHALL** be filed in writing on or before **<u>August</u>**

25   **<u>12, 2025</u>**. After the response to the Order to Show Cause, the Court, at its discretion, set a hearing

26   on the Order to Show Cause.

27   //

28   //

12

United States District Court
Northern District of California

1

**CONCLUSION**

Accordingly, for all the reasons discussed herein, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the various forms of relief requested in the Parties' joint discovery letter brief [Dkt. 117].

Further, the Court **ORDERS** Plaintiff Hill and his counsel to **SHOW CAUSE** as directed herein.

This **RESOLVES** Dkt. 117.

**IT IS SO ORDERED.**

Dated:  July 30, 2025

_____
PETER H. KANG
United States Magistrate Judge