Lenden F. Webb, Esq (236377)
Katherine E. Cervantes (333940)
**WEBB LAW GROUP, APC**
10509 Vista Sorrento Parkway, Suite 450
San Diego, CA 92121
Telephone: (619) 399-7700
Email: LWebb@WebbLawGroup.com
Email: KCervantes@WebbLawGroup.com
**Please serve to:** Service@WebbLawGroup.com

Attorneys for Plaintiff,
ANTHONY C. HILL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANTHONY C. HILL, an individual,<br><br>Plaintiff,<br>v.<br><br>WORKDAY, INC., et al.,<br><br>Defendant. | Case No.: 23-cv-06558-PHK<br><br>**DECLARATION OF KATHERINE E. CERVANTES IN SUPPORT OF MOTION TO SHOW CAUSE**<br><br>Dept.: F<br>Judge: Hon. Peter F. Kang |

I, KATHERINE E. CERVANTES, declare as follows:

1. I am an attorney licensed by the State Bar of California and I am counsel for the Plaintiff ANTHONY C. HILL (*hereinafter* "Plaintiff") in the above-captioned matter.

2. This declaration is submitted in support of the Court's July 20, 2025, Order to Show Cause.

3. On behalf of Plaintiff ANTHONY C. Hill, I drafted and submitted Plaintiff's position to the Joint letter Brief Regarding Discovery Disputes filed with the Court on July 21, 2025 (Docket #117).

4. I incorrectly and inadvertently cited to the case *South Pointe Wholesale, Inc. v. Vilardi*, No. 16-CV-6758, 2017 WL 11570668, at *2 (E.D. N.Y. May 2, 2017).

**DECLARATION OF KATHERINE E. CERVANTES IN SUPPORT OF MOTION TO SHOW CAUSE**
- 1 -

5. The correct citation for the parenetical in the Joint letter Brief Regarding Discovery Disputes, is *South Pointe Wholesale, Inc. v. Vilardi*, No. 1:17-CV-00052-GNS, 2017 WL 3877860 (W.D. Ky. Sept. 5, 2017), attached hereto for reference as **Exhibit 1**. The citation is not reported in the federal supplement and should have complied with local rule 3-4 (d)(5).

6. The source, origin, and method of finding the citation, is by using WestLaw Precision, I searched by all federal jurisdiction, thereafter, searching for references to FRCP 26(b)(1).

7. The citation provided in Plaintiff's position to the Joint Letter Brief Regarding Discovery Disputes (Dkt. 117) was incorrectly cited but retains the correct case name. I used Westlaw's "Copy with Reference" function and admittedly failed to verify the accuracy or content of the citation at the time of filing. After receiving the Court's order, I reviewed *South Pointe Wholesale, Inc. v. Vilardi*, No. 16-CV-6758, 2017 WL 11570668 (E.D.N.Y. May 2, 2017), the case erroneously cited and confirmed that it does not contain any substantive discussion at or elsewhere supporting the proposition cited in the parenthetical.

8. Instead, the correct citation is *South Pointe Wholesale, Inc. v. Vilardi*, No. 1:17-CV-00052-GNS, 2017 WL 3877860 (W.D. Ky. Sept. 5, 2017), which does, acknowledge discovery may uncover facts justifying amendments. In this case, the court provides an analysis of FRCP 26(b)(1), a party "may obtain discovery regarding nonprivileged matter that is relevant to a party's claim or defense." The Court further looked to the 2000 amendments to Rule 26(b)(1) and states "the Court nonetheless retained discretion to allow additional discovery on a more broad "subject matter" basis when appropriate to the particular case." The Court later wrote that "discovery that is relevant to the parties claims or defenses may also support amendment of the pleadings to add a new claim or defense that affects the scope of discovery."

9. As to the citation *Mir v. L–3 Commc'ns Integrated Sys.*, L.P., 319 F.R.D. 220, 227 (N.D. Tex. 2016), and the parenthetical "discovery may support amendments to pleadings so long as it is not overly broad or disproportionate," I acknowledge that the language in the parenthetical is not a direct quote. However, the court in *Mir* expressly analyzes the court's discretion to limit discovery under the amended Rule 26(b)(1), emphasizing that discovery must

be both relevant and proportional to the needs of the case as well as the burden or expense of the proposed discovery outweighing its likely benefit. I now acknowledge and understand my erroneous interpretation of the *Mir* opinion quoting Rule 26's language may have been a slight reach in stating that discovery may encompass any nonprivileged matter relevant to a claim or defense, so long as it meets the proportionality standards. My intent was to liberally construe the manifest injustice to Plaintiff in the exclusion of his opportunity to take the deposition of Defendant's Person Most Knowledgeable, in light of the forthcoming Second Amended Complaint that includes twelve additional causes of action correctly pled under Federal employment statutes. Although *Mir* does not specifically address amendments to pleadings, the citation was intended to support the broader legal principle that discovery, may yield information justifying amendment. I further acknowledge that the phrasing of the parenthetical could have been more precise by clarifying that *Mir* discusses proportionality in the scope of discovery generally, rather than in the specific context of amended pleadings.

10. I respectfully request that this Court consider my failure to accurately cite *South Pointe Wholesale, Inc. v. Vilardi*, No. 1:17-CV-00052-GNS, 2017 WL 3877860 (W.D. Ky. Sept. 5, 2017) as mistake, inadvertence, or excusable neglect.

11. I respectfully request that this Court consider my inaccurate application of the *Mir* opinion to the merits of my contention that Plaintiff is entitled to take the deposition of Defendant's Person Most Knowledgeable to include discovery reasonably sought for obtaining information inclusive of all thirteen anticipated causes of action pled in his anticipated Second Amended Complaint as mistake, inadvertence, or excusable neglect.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct, and that this declaration was executed on July 30, 2025, in San Diego, California.

*[signature]*
KATHERINE E. CERVANTES

EXHIBIT 1

Case 3:23-cv-06558-PHK   Document 131   Filed 07/30/25   Page 5 of 12

South Pointe Wholesale, Inc. v. Vilardi, Not Reported in Fed. Supp. (2017)

2017 WL 3877860
Only the Westlaw citation is currently available.
United States District Court, W.D. Kentucky,
Bowling Green Division.

SOUTH POINTE WHOLESALE, INC., Plaintiff

v.

Marie T. VILARDI, Defendant

CIVIL ACTION NO. 1:17-CV-00052-GNS
|
Signed 09/05/2017

**Attorneys and Law Firms**

Kyle G. Bumgarner, Scott A. Bachert, W. Greg Harvey, Kerrick Bachert PSC, Bowling Green, KY, for Plaintiff.

Bradley S. Zoppoth, Scott P. Zoppoth, The Zoppoth Law Firm, Louisville, KY, for Defendant.

## MEMORANDUM, OPINION, AND ORDER

H. Brent Brennenstuhl, United States Magistrate Judge

**\*1** Before the Court is the joint motion on behalf of non-parties Halas Trading, Inc., Wire Frame Consulting, Inc. and Healthy Concepts, Inc. to quash subpoenas for production of documents served on them by Plaintiff South Pointe Wholesale, Inc. (DN 37). South Pointe has responded in support of the subpoenas (DN 44).

### Nature of the Case

According to South Pointe's complaint, South Pointe is a Kentucky Corporation organized in 2001 and operates as a pharmaceutical distributor. South Pointe purchases inventory either directly from pharmaceutical manufacturers or from other distributors. These purchases require price negotiations conducted by either distributor or vendor employees or independent brokers working on a commission basis (DN 1, p. 2).

South Pointe hired Defendant Marie T. Vilardi on March 8, 2004 as a pharmaceuticals purchaser. South Pointe provided Vilardi and two other employees with office space in New York, and Vilardi had access to South Pointe's computer server in Kentucky. Vilardi also made periodic trips to Kentucky for in-person meetings. In 2006 Vilardi purchased a forty-five percent ownership in South Pointe and was elected to South Pointe's board of directors. She was later elected as vice president and chief operating officer (Id. at p. 4-5).

In 2015 other South Pointe employees became suspicious that Vilardi was making purchases that were not in the company's best interests and South Pointe began restricting Vilardi's purchasing autonomy. In 2017 South Pointe obtained information indicating that Vilardi was performing work for a South Pointe competitor. As a result, South Pointe terminated Vilardi's employment on March 14, 2017 (Id. at p. 6-7). Subsequent to her termination, South Pointe conducted further investigation and concluded that Vilardi had worked for other competitors and engaged in self-dealing (Id. at p. 8-11). South Pointe's complaint against Vilardi alleges violation of fiduciary duties under Kentucky statutes (Id. at p. 11-12).

Vilardi has asserted counterclaims against South Pointe. She contends she made two loans to South Pointe, one in 2006 in the principal sum of $300,000.00 and another in 2007 in the principal sum of $205,000.00. These loans were made because South Pointe "was in desperate financial condition," and were both demand notes. She states she made demands for repayment, along with interest, and South Pointe is in default on its repayment obligation (DN 10, p. 9-10). Vilardi further contends that her termination from employment was wrongful and motivated by age discrimination. As a shareholder in South Pointe, Vilardi claims that she has been wrongfully denied access to South Pointe's business and financial records to which she is entitled under Kentucky law and demands an accounting (Id. at p. 10-11).

### Motion to Quash

South Pointe has issued individual subpoenas to the three non-party movants for production of business records. Halas Trading states that it is owned by Vilardi's husband and is engaged in lending money and has no involvement in the pharmaceuticals business (DN 37, p. 1). Wire Frame and Healthy Concepts are both controlled and operated by Vilardi (Id. at p. 2). The movants do not elaborate on the nature of their business operations, but a prior pleading Vilardi filed suggests that they are engaged in the pharmaceutical market and are competitors of South Pointe (see DN 28 at p. 8-9). [1]

Case 3:23-cv-06558-PHK   Document 131   Filed 07/30/25   Page 6 of 12

South Pointe Wholesale, Inc. v. Vilardi, Not Reported in Fed. Supp. (2017)

**\*2** From Halas, South Pointe seeks production of documents related to any loans it may have made to Vilardi, Wire Frame or Healthy Concepts. Regarding Wire Frame and Healthy Concepts, South Pointe seeks broad production of documents related to their business operations, including correspondence related to Vilardi's services to any entity in the pharmaceutical industry, payments related to those services, financial records, and tax records.

Movants argue that the subpoenas issued to Halas seek information about loans to Vilardi, Wire Frame or Healthy Concepts. They note that none of South Pointe's claims involve money borrowed by Vilardi or loans which Halas may have made. As to Wire Frame and Healthy Concepts, movants note that, while South Pointe's complaint contends Vilardi breached fiduciary duties by working for various competitors, neither of these businesses are mentioned. Moreover, movants note that South Pointe's complaint discusses activities beginning in 2015, however the subpoenas seek information dating back to 2006. The movants also contend that the requests are overbroad because they are unlimited in time or cover an eleven-year period or seek "all documents" across a wide spectrum of inquiry. As to financial statements, movants argue that these would only show cash flow, revenue and expenses in generalized categories, and profits and losses. Movants assert that these bear no relevance to any alleged breach of fiduciary duty. Likewise, payroll records of every employee working for these entities are unlikely to reveal discoverable information. The tax information requested, they further contend, is not reasonably likely to produce specific information related to South Pointe's claims or defenses. Finally, movants claim that Rule 45(a)(1)(A)(iv) requires that every subpoena set out the text of Rule 45(d) and (e), and that the subpoenas delivered to them lacked the required information.

### South Pointe's Response

South Pointe agrees that its complaint makes no mention of any of the three entities upon which it has served subpoenas and that the timeframe specified in the complaint begins in 2015. South Pointe asserts, however, that since filing the complaint it has conducted additional investigation which now casts a wider net of suspicion.

Although Vilardi was required to produce a sworn statement identifying every entity in the pharmaceutical industry which had compensated her directly or indirectly since 2006 (DN 9), South Pointe alleges that she failed to list Able Wholesalers of Tennessee, LLC, which paid Wire Frame and thereby indirectly Vilardi. South Pointe also contends that it discovered a data file on its computer server which Vilardi inadvertently saved there, and which reflects financial registers for both Wire Frame and Healthy Concepts for July 1, 2015 to September 30, 2015. These registers, South Pointe asserts, demonstrate that the entities received commissions from South Pointe competitors and which directly benefited Vilardi. Vilardi's 2012 and 2013 federal tax returns reflect substantial income for both Wire Frame and Healthy Concepts, which South Pointe argues are indications that she has utilized the entities to funnel commissions from competitors longer than South Pointe initially suspected.

Further, South Pointe has discovered invoices Vilardi saved to the server. One dated in 2009 shows billings to Wire Frame for products that South Pointe was also buying and selling at that time. Another 2010 invoice shows Healthy Concepts billing a distributor for commissions earned for sales both to South Pointe and a competitor. Given this additional information, South Pointe argues that it should be permitted to delve into Wire Frame and Healthy Concepts' business records, as South Pointe believes it will thereby uncover additional actions constituting breaches of Vilardi's fiduciary duty.

**\*3** As to Halas, South Pointe argues that it believes the discovery will establish that Vilardi misrepresented the source of the money she loaned to South Pointe and the true interest rate she was passing along to South Pointe. If true, South Pointe asserts this would constitute an additional breach of Vilardi's fiduciary duty.

South Pointe responds to the movants' complaints that the subpoena was technically deficient by stating that it cannot independently verify whether or not copies of the provisions of Fed. R. Civ. P. 45(d) and (e) were attached. In the interest of full compliance, South Pointe states that it has sent the movants' counsel revised subpoenas with the required text, thereby remedying any deficiency.

### Analysis

A party "may obtain discovery regarding any nonprivileged matter that is relevant to a party's claim or defense." Fed. R. Civ. P. 26(b)(1). The discovery must be "proportional to the needs of the case, considering importance of the issues at stake in the action, the amount in controversy, the parties'

Case 3:23-cv-06558-PHK   Document 131   Filed 07/30/25   Page 7 of 12

South Pointe Wholesale, Inc. v. Vilardi, Not Reported in Fed. Supp. (2017)

relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id.

When a party seeks discovery from a non-party, it must demonstrate good cause to justify production. Perez v. Off Duty Police Servs., No. 3:13-CV-935-DJH-LLK, 2015 WL 2089962 at *1, 2015 U.S. Dist. LEXIS 58015 at *3 (W.D. Ky. May 4, 2015). Only after a showing of relevance and good cause does the presumption for enforcement of the subpoena arise. Id. Here, the movants argue that the information South Pointe seeks is not relevant to its claims against Vilardi as set forth in its complaint or its defenses against her counterclaim. South Pointe contends that the information sought from the movants is necessary to follow-up on post-complaint discoveries of additional breaches of Vilardi's fiduciary duties.

The current version of the rule and the associated commentary demonstrate that a party is to be held to discovery within the scope of the claims and defenses asserted in the pleadings, and may not employ discovery as a means of investigating whether additional claims might be available. The 2000 amendments to Rule 26(b)(1) replaced prior language defining relevant discovery as that relating to the "subject matter" of the litigation the more restrictive "claim or defense" language. "The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." Fed. R. Civ. P. 26(b)(1) Advisory Committee's Note (2000 Amendment). "This limitation ensured that discovery would no longer be used to troll for new claims or causes of action, but that the requested discovery was relevant to the specific claims and defenses before the court." Franklin v. United States, No. 12-1167 KBM/LFG, 2013 WL 11336864 at *2, 2013 U.S. Dist. LEXIS 191416 at *5 (D.N.M. Aug. 28, 2013); see also Monte H. Greenwalt Revocable Trust v. Brown, No. 2:12-cv-01983, 2013 WL 6844760 at *3, 2013 U.S. Dist. LEXIS 178802 at *7 (D. Nev. Dec. 19, 2013) ("This prevents litigants from engaging in 'fishing expeditions' that may expose the defendant to claims not previously asserted in the plaintiff's complaint."). As described by another court:

*4 Rule 26(b)(1) permits a party to obtain discovery that is relevant to "any party's claim or defense." If a complaint states a claim, then a party may engage in liberal discovery and "fish" for evidence to support that claim.... However, Rule 26(b)(1) does not authorize what [plaintiff] seeks: to fish for evidence to support new claims that are not contained in the complaint. This would frustrate the fundamental goals of Rule 8 and Rule 26, which exist to provide a defendant with "fair notice" of the claims against it and "avoid surprise at trial."

Haigh v. Constr. Indus. & Laborers Joint Pension Trust for S. Nev. Plan A & Plan B, No. 2:14-cv-1545-JAD-VCF, 2015 WL 1886666 at *6, 2015 U.S. Dist. LEXIS 53930 at *14 (D. Nev. April 24, 2015) (citations omitted).

The 2000 amendments to Rule 26(b)(1) contemplated that "party-controlled discovery" would focus on claim and defense issues, but the Court nonetheless retained discretion to allow additional discovery on a more broad "subject matter" basis, when appropriate to the particular case. "When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested." Fed. R. Civ. P. 26(b)(1) Advisory Committee's Note (2000 Amendment). The 2015 amendment "deletes the former provision authorizing the court, for good cause, to order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1) Advisory Committee's Note (2015 Amendment). While the amendment removed language authorizing substantial discretion by the Court, it also made clear that latitude is required in some situations:

The distinction between matter relevant to a claim or defense and matter relevant to the subject matter was introduced in 2000. The 2000 Note offered three examples of information that, suitably focused, would be relevant to the parties' claims or defenses. The examples were "other

Case 3:23-cv-06558-PHK   Document 131   Filed 07/30/25   Page 8 of 12

South Pointe Wholesale, Inc. v. Vilardi, Not Reported in Fed. Supp. (2017)

incidents of the same type, or involving the same product"; "information about organizational arrangements or filing systems"; and "information that could be used to impeach a likely witness." Such discovery is not foreclosed by the amendments. Discovery that is relevant to the parties' claims or defenses may also support amendment of the pleadings to add a new claim or defense that affects the scope of discovery.

Id.

Consequently, South Pointe's subpoena requests must be evaluated in light of whether they are relevant to a claim or defense set out in the complaint or response to Vilardi's counterclaim or are otherwise within the scope discussed in the 2015 amendment note.

A. Halas Subpoena

South Pointe's subpoena to Halas requests the following information:

1. Produce every correspondence between you, your shareholders, owners, members, employees, agents, and/or Marie Vilardi regarding any loan that you have made to Marie Vilardi, Wire Frame Consulting, Inc., or Healthy Concepts, Inc., including but not limited to, any correspondence requesting the loan, stating the basis for the loan, establishing the terms of the loan, modifying the terms of the loan, or mentioning payment of the indebtedness.

2. Produce every document regarding or relating to any loan that you have made to Marie Vilardi, Wire Frame Consulting, Inc., or Healthy Concepts, Inc., to include but not limited to, evidence of indebtedness, the terms of the loan, evidence of payment, and any modifications to the loan or its terms.

*5 (DN 37 p. 2).

Movants argue that these requests have no relevance to South Pointe's complaint that Vilardi breached her fiduciary duties to South Pointe beginning in 2015 by acting on behalf and for the benefit of South Pointe's competitors. Nothing about Vilardi's loans to South Pointe is mentioned in the complaint and Halas is not a competitor in the pharmaceuticals industry.

The complaint contains two counts alleging breach of statutory fiduciary duty "as particularly set forth in paragraphs 29-57" (DN 1, p. 11 & 12). The factual background in South Pointe's complaint recites the history of the business relationship between the parties and alleges that Vilardi's employment with a direct competitor, Taiga Distribution, was a breach of her fiduciary duty, beginning in 2016. The complaint also alleges that Vilardi engaged in a self-dealing transaction involving the purchase of Amoxicillin in 2017. The complaint further alleges that Vilardi breached her fiduciary duty by acting as an agent of competitor Drug Place of Kentucky in 2016. There is no allegation that Vilardi breached a fiduciary duty by misrepresenting the terms and interest rate of a loan.

That the complaint does not make mention of the loan does not preclude the discovery requested. "The role of discovery ... is to find support for properly pleaded claims, not to find the claims themselves." Samsung Elecs. Am., Inc. v. Chung, No. 3:15-cv-4108-D, 2017 WL 2832621 at *26, 2017 U.S. Dist. LEXIS 101619 at *83 (N.D. Tex. June 26, 2017) (quoting Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill, 561 F.3d 377, 392 (5th Cir. 2009)). This is because "[t]he discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim." Micro Motion, Inc. v. Kane Steel Co., Inc., 894 F.2d 1318, 1327 (Fed. Cir. 1990) (emphasis in original). Here South Pointe has made a claim for breach of fiduciary duty. What it now seeks to discover is whether Vilardi engaged in any other conduct that breached her fiduciary duty in addition to those actions specifically described in the complaint. Thus, South Pointe is not fishing for *new claims*; rather it is fishing for *additional facts in support of the claim* of breach of fiduciary duty. This qualifies as "other incidents of the same type" as identified in the 2015 advisory committee note. *See, e.g.* Robert Half Int'l Inc. v. Ainsworth, No. 14cv2481-WQH (DHB), 2015 WL 4662429 at *13-14, 2015 U.S. Dist. LEXIS 104038 at *39-40 (S.D. Cal. Aug. 6, 2015) (Plaintiff allowed to conduct discovery of whether persons in addition to named defendants engaged in solicitation of its employees, even though plaintiff was "not currently aware of such facts," as such actions could constitute "other incidents of the same type" as contemplated by the advisory committee notes.).

However, the movant's concerns about the breadth of the discovery requests are valid. South Pointe contends that it has reason to believe that Vilardi misrepresented the interest rate of the loans. Thus discovery related to whether Halas was the source of the money Vilardi loaned to South Pointe and the amount of interest Halas may have charged would be relevant to the claim of breach of fiduciary duty. However,

Case 3:23-cv-06558-PHK   Document 131   Filed 07/30/25   Page 9 of 12

South Pointe Wholesale, Inc. v. Vilardi, Not Reported in Fed. Supp. (2017)

the scope of the subpoena goes far beyond those questions and delves into any loan Halas may ever have made to Vilardi for any purpose. The subpoena also seeks information about any loan Halas may ever have made to Wire Frame or Healthy Concepts for any purpose. The subpoena to Halas must be restricted to information about any loan it made to Vilardi which she in turn loaned to South Pointe. If Halas, which is operated by Vilardi's husband, responds that it does not know the purpose to which Vilardi applied the loan proceeds, then additional discovery may be relevant to ferret out transactions.

B. Wire Frame and Healthy Concepts Subpoenas

**\*6** South Pointe's subpoenas to Wire Frame and Healthy Concepts request the following information:

1. Produce every document or correspondence in the possession of your owners, members, employees or agents related to services provided by Marie Vilardi to any entity in the pharmaceutical industry.

2. Produce financial statements from 2006 to 2017, including but not limited to, your general ledger, cash flow statements, profit and loss statements, and year-end balance sheets.

3. Produce payroll records from January 1, 2006 to present.

4. Produce records of every payment received between January 1, 2006 and present from any entity or person in the pharmaceutical industry related to services provided by Marie Vilardi, whether it is a cancelled check, deposit slip, evidence of wire transfer, or otherwise.

5. Produce every correspondence between any of your owners, members, employees or agents and/or any third party entity or person from January 1, 2006 to the present regarding the sale or purchase of pharmaceuticals.

6. Produce every correspondence between any of your owners, members, employees or agents and/or any third party entity or person in the pharmaceutical industry from January 1, 2006 to the present regarding any arrangement to compensate Health [sic] Concepts, Inc. [or Wire Frame Consulting, Inc.] or Marie Vilardi related to services provided by Marie Vilardi.

7. Produce every W2 and Form 1099 received from any entity in the pharmaceutical industry between January 1, 2006 to present.

8. Produce each of your federal and state tax return, including all schedules and attachments, from 2006 to the present, together with every K-1 or other document provided to each of your members in each tax year.

(DN 37 p. 2-3).

**Topic 1**—The movants challenge the first request as overly broad because it is not limited in terms of subject matter or time. South Pointe responds with agreement that the request should be limited. Although Vilardi's fiduciary duties would not have arisen prior to November 30, 2006, South Pointe contends that is should have to opportunity to review documents dating from January 1, 2006 to the present to "place all conversations, agreements, and relationships in proper context" (DN 44, p. 7). As to scope, South Pointe asserts that it is reasonable to request information regarding "services provided by Marie Vilardi to any entity in the pharmaceutical industry" because this goes to the heart of whether she was engaged in activities for other entities which conflicted with her duty to South Pointe.

While the movants cite two cases for the general proposition that "all documents" requests are overly broad, they fail to consider the context of those cases. In Cardinal Aluminum Co. v. Cont'l Cas. Co., No. 3:14-CV-857-TBR-LLK, 2015 WL 4483991 at \*5, 2015 U.S. Dist. LEXIS 95361 at \*13 (W.D. Ky. July 22, 2015), the court held that a request for "all" documents related to equipment owned or operated by the plaintiff was excessive when the litigation "concerns insurance coverage for a specific piece of machinery ... based on a narrow question...." In Pioneer Res. Corp. v. Nami Res. Co., L.L.C., No. 04-465-DCR, 2006 WL 2037405 at \*1-2, 2006 U.S. Dist. LEXIS 49658 at \*3-4 (E.D. Ky. July 18, 2006) the court held that a request for "all documents" numbering in the thousands related to an audit was excessive when the audit was based on the requesting party's own documents, and of which it already had copies. Here, South Pointe's requests are specific to documents reflecting services Vilardi performed for any entity in the pharmaceutical industry during the time when she owed a fiduciary duty to South Pointe, and are not overly broad. However, the undersigned is not persuaded that South Pointe has demonstrated the relevance of any documents pre-dating the beginning of Vilardi's duty. Should production reveal that the temporal scope should be extended to an earlier date in order to achieve a full understanding of the documents produced, South Pointe can make that argument at the appropriate time. For the present, the request is limited to documents generated after November 30, 2006.

Case 3:23-cv-06558-PHK   Document 131   Filed 07/30/25   Page 10 of 12

South Pointe Wholesale, Inc. v. Vilardi, Not Reported in Fed. Supp. (2017)

*7 **Topic 2**—Movants contend this request is irrelevant as the financial statements and payroll records would only show things such as cash flow, revenue and expenses in generalized categories, and profits and losses. Movants assert that this information cannot demonstrate that Vilardi breached any duty to South Pointe or assist South Pointe in its defense.

South Pointe responds by questioning the veracity of Movants' characterization of what the requested information will reveal. South Pointe believes the request is for detailed documents and will show individual transactions of payments and receipts. South Pointe makes an additional argument that, in anticipation that Vilardi will take the positon that she is entitled to deduct any expenses from commissions awarded as damages, it should be entitled to verify those expenses.

The undersigned does not agree with South Pointe that the documents it has requested will demonstrate whether Vilardi breached a duty. The documents requested are ones which will only provide a broad picture of Wire Frame and Healthy Concepts' financial transactions. While South Pointe anticipates an argument by Vilardi, she has not yet advanced the argument so as to make the information relevant. The undersigned concludes that the documents requested in topic 2 are not at this time relevant.

**Topic 3**—Movants argue that payroll records for every employee for the last eleven years are irrelevant to South Pointe's claim or defense. South Pointe responds that it must be able to identify "who has aided Vilardi's tortious conduct and determine what they were paid" (DN 44, p. 8). South Pointe further contends that this will provide it guidance on what additional persons it may wish to depose. The undersigned is not persuaded that the requested information is relevant. It is one thing to inquire as to the identities of employees, it is entirely another to request payroll records. South Pointe has failed to demonstrate the relevance of what other employees may have been paid. The undersigned therefore concurs with Movants that the information requested in topic 3 lacks relevance at this time.

**Topic 4**—Movants argue that the request is overbroad because of the length of time involved. The undersigned concurs with South Pointe that, while the request is broad, it is not excessively so in light of the relevance of the information requested. The temporal scope, however, is limited to matters dating back to November 30, 2006.

**Topics 5 and 6**—Movants object to these requests as being overbroad in scope and time. South Pointe responds that it requires the information because it will reflect on whether Vilardi was selling or purchasing pharmaceuticals on behalf of any pharmaceutical entity while serving on South Pointe's board of directors. Given that Movants have made only a generalized objection based on overbreadth and the "any and all" nature of the requests, the undersigned cannot conclude that the requested information is not relevant to South Pointe's claim. Moreover, Movants have not demonstrated any undue burden associated with the requests. As before, the temporal scope is limited to beginning at November 30, 2006.

**Topics 7 and 8**—Movants argue that tax documents and returns are not relevant to South Pointe's claims of breach of fiduciary duty, particularly since the requests make no effort to limit the scope to anything specific to Vilardi. South Pointe contends that the requests are focused because they are limited to tax documents received from pharmaceutical industry entities. As Vilardi owns Wire Frame and Healthy Concepts, South Pointe reasons that any receipt of income from a competitor would represent a conflict of duty. South Pointe also asserts, in response to the Movants' argument that the request includes tax returns and forms provided to members other than Vilardi, that it believes Vilardi is the sole member of the entities and, if this is incorrect, is willing to limit the scope of the request to Vilardi. South Ponte believes that the tax return information is relevant to what the Movants and Vilardi have "reported to the federal and state governments under penalty of perjury the income received from Vilardi's tortious conduct" (DN 44, p. 11) as well as information about expenses.

*8 The undersigned concludes that the information sought in topic 7 is relevant, however only to the extent that the forms W-2 or 1099 relate to services provided after November 30, 2006. The information sought in topic 8 is relevant, but with regard to the portion requesting K-1 forms, only those provided to Vilardi are relevant.

The undersigned notes that the Movants have made a general contention that the information sought in all the requests is "confidential commercial information which could cause harm or disadvantage" (DN 37, p. 8). The Movants do not explain how the disclosure of the information to South Pointe would result in economic disadvantage. The undersigned cannot conclude from such a broad and unsupported claim that discovery should not be permitted on that basis. If the Movants have a legitimate concern that disclosure of

Case 3:23-cv-06558-PHK   Document 131   Filed 07/30/25   Page 11 of 12

South Pointe Wholesale, Inc. v. Vilardi, Not Reported in Fed. Supp. (2017)

the information would cause a business disadvantage, the Movants have the option of collaborating with South Pointe to prepare an agreed protective order (as Vilardi has already done at DN 34), or moving the Court for entry of a protective order upon showing good cause. *See* Owens v. Liberty Life Assur. Co., No. 4:15-CV-00071-JHM-HBB, 2016 WL 4523889, *2–3, 2016 U.S. Dist. LEXIS 115477, *6 (W.D. Ky. Aug. 29, 2016).

C. Technical Deficiency of the Subpoena Form

In response to Movants' complaint that the subpoena did not technically conform to Fed. R. Civ. P. 45(a)(1)(A)(iv) because it did not contain the text of Rule 45(c) and (e), South Ponte states that, if there was such a deficiency, it has cured the deficiency by subsequent correspondence to Movants' counsel "sending subpoenas with the text of Fed. R. Civ. P. (c), (d), (e), and (g) attached" (DN 44, p. 14). South Pointe attached a copy of the re-issued subpoena as an exhibit (DN 44-7).

Technical compliance with Rule 45, including the required language, is important because a subpoena must have legal force if it is to be enforced by sanctions. Shulman v. Amazon.com.KYDC LLC, No. 13-5-DLB-REW, 2014 WL 4103528 at *6, 2014 U.S. Dist. LEXIS 113506 at *15 (E.D. Ky. Aug. 15, 2014); Shulman v. Amazon.com.KYDC LLC, No. 5:13-CV-05-DLB-REW, 2014 U.S. Dist. LEXIS 114586, at *8 (E.D. Ky. June 17, 2014). However, upon learning of a technical deficiency, a party may cure those deficiencies. *See* State Farm Mut. Auto Ins. Co. v. CPT Med. Servs., P.C., No. 04 CV 5045 (ILG), 2008 WL 2884446 at *2–3, 2008 U.S. Dist. LEXIS 56683 at *10 (E.D.N.Y. July 23, 2008). Here, it appears South Pointe has adequately cured the technical deficiencies.

**ORDER**

**IT IS HEREBY ORDERED** that the motion of non-party movants Halas Trading Inc., Wire Frame Consulting, Inc. and Healthy Concepts, Inc. to quash subpoenas issued by Plaintiff South Pointe Wholesale, Inc. (DN 37) is **GRANTED IN PART** and **DENIED IN PART**. The movants shall comply with the subpoenas to the extent the requests are relevant as discussed in this order.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 3877860

---

## Footnotes

1   Vilardi initially challenged the subpoenas with her own motion to quash, DN 28. The undersigned concluded that she failed to demonstrate standing to challenge subpoenas issued to non-parties and denied the motion at DN 35.

**End of Document**                                © 2025 Thomson Reuters. No claim to original U.S. Government Works.

## CERTIFICATE OF SERVICE

I am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action; my business address is: 10509 Vista Sorrento Parkway, Suite 450, San Diego, CA 92121. My email address is Service@WebbLawGroup.com.
On July 30, 2025, I served the document(s) described as:

1. **DECLARATION OF KATHERINE E. CERVANTES IN SUPPORT OF MOTION TO SHOW CAUSE**

on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope at: San Diego, California, addressed as follows:

| | |
|---|---|
| Kayla Delgado Grundy | Julie Ann Totten |
| Orrick, Herrington & Sutcliffe LLP | Orrick, Herrington & Sutcliffe LLP |
| The Orrick Building | 400 Capital Mall, Suite 3000 |
| 405 Howard Street | Sacramento, CA 95814 |
| San Francisco, CA 94105-2669 | (916) 447-9200 |
| (415) 773-5537 | Email: jtotten@orrick.com |
| Fax: (415) 773-5759 | |
| Email: kdelgado@orrick.com | |

*Attorneys for Defendants Workday, Inc., Susan Dahm, Lisa McFall, Katie Hauck*

__XX__ (BY CM/ECF) By electronic email service and electronically filing the foregoing with the Clerk of the U.S. District Court, Northern District using its CM/ECF filing system.

Executed on **July 30, 2025**, at San Diego, California

__XX__ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____
MORGAN Y. EDGAR