UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANTHONY C. HILL,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WORKDAY, INC., et al.,<br><br>　　　　Defendants. | Case No. 23-cv-06558-PHK<br><br>**ORDER RE: RESPONSE TO ORDER TO SHOW CAUSE BY ATTORNEYS WEBB AND CERVANTES**<br><br>Re: Dkt. 129 |

# INTRODUCTION

While this appears to be a case involving a legal brief with fake citations created by an Artificial Intelligence ("AI") tool or large language model, fundamentally, this case involves the simple failure to check citations in a brief prior to filing. Since the advent of various software and computerized systems for lawyers and litigants to do legal research and draft court filings, much ink has been spilled warning and admonishing lawyers and the public about the risks of blind reliance on AI tools and large language models to draft briefs and create legal citations without confirming accuracy. Since the public release of AI chatbots only a few years ago, courts and commentaries have highlighted the risks inherent in blindly trusting the output of large language models as a substitute for legal research.

However, the more fundamental issue raised by these recent misuses of AI tools is the failure by attorneys to check the citations to the case law cited, much less read the cases for accuracy. This is, unfortunately, not a new phenomenon. Long before the advent of computerized tools, lawyers were admonished for their willful or reckless citations to nonexistent case law or fictitious statutes in briefs. *See, e.g., Willy v. Coastal Corp.*, 855 F.2d 1160, 1172 (5th Cir. 1988) (affirming Rule 11 sanctions for, among other things, "citing to nonexistent rules of law"). When submitting filings to

a court, one of a lawyer's basic professional and ethical duties is not to "present a claim or defense in litigation that is not warranted under existing law" regardless of the source of the alleged existing law (whether from a computerized source, a generative AI, a traditional legal research tool such as Westlaw, or a treatise). *See* Cal. Rules of Prof. Conduct r. 3.1(a)(2).

Here, there is no dispute that the lawyers at issue submitted a brief, which included a fake citation to nonexistent law. While the record is less than clear as to the source of the fake citation, what is clear is that there was a breakdown and failure to check or even try to read the cited law.

Now before the Court is the response by two attorneys to this Court's earlier Order to Show Cause regarding the brief containing fake citation to nonexistent law. [Dkt. 129]. After carefully reviewing the submitted declaration and holding a hearing on the Order to Show Cause, the Court **ADMONISHES** and **SANCTIONS** Attorney Katherine Cervantes, and the Court **ORDERS** Attorney Lenden Webb to file a one-page response to this Order and the Order to Show Cause.

## RELEVANT BACKGROUND

In this lawsuit between a former employee and his former employer, Plaintiff Anthony Hill and Defendant Workday filed a Joint Discovery Letter Brief on July 21, 2025. [Dkt. 117]. In the signature block for that brief, both Lenden Webb and Katherine Cervantes are identified as attorneys of record for Plaintiff Hill. *Id.* The actual signature in that discovery letter brief above the signature block is that of Attorney Cervantes. *Id.*

On July 30, 2025, the Court issued an Order resolving the dispute and issued an Order to Show Cause directed to Plaintiff Hill's counsel. [Dkt. 129]. The gravamen of the Order to Show Cause is that Plaintiff Hill's counsel submitted briefing in the letter brief that: (1) cited at least one nonexistent case, *South Pointe Wholesale, Inc. v. Vilardi*, No. 16-CV-6758, 2017 WL 11570668, at *2 (E.D.N.Y. May 2, 2017); and (2) misrepresented the holdings of another cited case, *Mir v. L–3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 227 (N.D. Tex. 2016). *Id.* at 9–12. The Court's core concerns centered around the inclusion of false or misleading citations, the source of the citations, how and why they were included in the brief, and potential violations of this Court's Standing Order, which specifically addresses AI and fictitious or unverified legal citations. *Id.* Specifically, in the Order to Show Cause, the Court ordered a written response by both attorneys to

the following:

> They **SHALL** explain the source, origin, and method of their finding the citation "*South Pointe Wholesale, Inc. v. Vilardi*, No. 16-CV-6758, 2017 WL 11570668, at *2 (E.D. N.Y. May 2, 2017)";
>
> They **SHALL** explain all steps taken to verify the accuracy, veracity, and existence of the case cited as "*South Pointe Wholesale, Inc. v. Vilardi*, No. 16-CV-6758, 2017 WL 11570668, at *2 (E.D. N.Y. May 2, 2017)";
>
> They **SHALL** explain all bases for the assertion in their brief that *South Pointe Wholesale, Inc. v. Vilardi*, No. 16-CV-6758, 2017 WL 11570668, at *2 (E.D. N.Y. May 2, 2017), supports the parenthetical they wrote in their brief that this case is "acknowledging discovery may uncover facts justifying amendments";
>
> They **SHALL** explain all bases for the assertion in their brief that *Mir v. L–3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 227 (N.D. Tex. 2016), supports the parenthetical they wrote in their brief that "discovery may support amendments to pleadings so long as it is not overly broad or disproportionate";

*Id.* at 12.

The same day the Order to Show Cause was issued, Attorney Cervantes filed a declaration responding to the Order to Show Cause. [Dkt. 131]. Attorney Webb did not file a separate response or declaration to the Order to Show Cause.

The Court held a hearing on the Order to Show Cause on August 11, 2025, at which Attorney Cervantes appeared (but not Attorney Webb). [Dkt. 148].

## **LEGAL STANDARD**

Rule 11(b)'s language familiar to lawyers appearing in federal courts states that "[b]y presenting to the court a pleading, written motion, or other paper, whether by signing, filing, submitting, or later advocating it, an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."

A lawyer whose name therefore appears on a court filing therefore "certifies to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and

3

United States District Court
Northern District of California

is satisfied that the document is well grounded in both, and is acting without any improper motive." *Bus. Guides, Inc. v. Chromatic Commc'ns. Enters., Inc.*, 498 U.S. 533, 542 (1991). Accordingly, Rule 11 "admits of no exceptions to the requirement that all reasonable attorneys will read a document before filing it in court." *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986), *abrogated on other grounds by Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990). Thus, the lawyer whose name appears on a court filing has "an affirmative duty to conduct a reasonable inquiry into the facts ***and the law*** before filing." *Bus. Guides*, 498 U.S. at 551 (emphasis added). "[T]he applicable standard is one of reasonableness under the circumstances." *Id.* "Courts must apply an objective test in assessing whether the rule has been violated." *Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993). Therefore, a "violation of the rule does not require subjective bad faith." *Id*. The Court has authority under Rule 11(c) to impose sanctions for such violations.

Long before the public launch of ChatGPT, the Fifth Circuit affirmed an award of sanctions by noting that "[f]iling mountainous piles of unorganized documents and citing to nonexistent rules of law are precisely the sort of conduct that, under the objective test of Rule 11, could lead a district court to conclude that the attorney had not made reasonable inquiry into the law or was seeking to harass or delay." *Willy*, 855 F.2d at 1172. Sanctioning a party for citing to nonexistent law is, unfortunately, not merely a product of AI-hallucinated citations. *See, e.g.*, *Dobson v. U.S. Bank Trust, N.A.*, 2021 WL 1235248 at *2 (C.D. Cal. Feb. 19, 2021) ("Plaintiff's citation to a nonexistent code section and subsequent failure to address the erroneous citation and the merits of Defendant's Motion for Sanctions indicate that Plaintiff did not conduct a reasonable and competent inquiry into the law before signing and filing his Complaint."). "One specific inquiry for determining whether sanctions are appropriate is 'whether the party or attorney made a reasonable inquiry into the law.'" *Mid Central Operating Engineers Health and Welfare Fund v. HoosierVac LLC*, 2025 WL 574234 at *2 (S.D. Ind. Feb. 21, 2025) (quoting *Brown v. Federation of State Med. Boards of the U.S.*, 830 F.2d 1429, 1435 (7th Cir. 1987), *overruled on other grounds by Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928 (7th Cir. 1989)).

"Given the rise of artificial intelligence and its use in court proceedings, courts have begun

4

ordering litigants suspected of citing to AI-hallucinated cases to show cause why sanctions or discipline should not issue. Specifically, courts tend to find that Fed. R. Civ. P. 11(b)(2) applies in the context of litigants citing to AI-hallucinated cases in documents submitted to courts." *Marion v. Hollis Cobb Assocs.*, 2025 WL 1275828, at *5 (N.D. Ga. Feb. 14, 2025) (citations omitted). The issue of sanctions for filing briefs with fake citations is a nationwide issue and has been addressed by the Northern District of California. *See, e.g.*, *Coronavirus Reporter Corp. v. Apple Inc.*, 2025 WL 2162947, at *5–6 (N.D. Cal. July 30, 2025).

However, the Court recognizes that the motion at issue here is a discovery motion. Under Rule 11(d), such motions are exempt from the requirements of Rule 11. *See* Fed. R. Civ. P. 11(d) ("This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37."). "This appears to be an unintended anomaly in Rule 11: the advisory committee's note indicates that discovery motions were excepted from Rule 11 because the committee expected Rules 26 and 37 to allow courts to address sanctionable misconduct in such motions, but Rules 26 and 37 furnish no basis for the court to address the false statements of law these attorneys made in discovery motions. Regardless, Rule 11 speaks for itself; it does not apply here, and this court has no authority to change that." *Johnson v. Dunn*, -- F. Supp. 3d ----, 2025 WL 2086116 at *14 (N.D. Ala. July 23, 2025) (citations omitted).

Separate from Rule 11, "[w]ithin the federal system, each district court is authorized to govern and discipline its own bar." *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1198 (9th Cir. 1999). The district court may issue sanctions for violating its local rules, and also under its inherent authority. *See Fink v. Gomez*, 239 F.3d 989, 991–92 (9th Cir. 2001); *Zambrano v. City of Tustin*, 885 F.2d 1473, 1480 (9th Cir. 1989). Before imposing sanctions on an attorney, the Court must provide the attorney with notice and an opportunity to be heard. *Weissman*, 179 F.3d at 1198. A separate sanctions hearing is not required when the attorney is given the opportunity to respond in writing. *Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000). "The opportunity to brief the issue fully satisfies due process requirements." *Id.* (citing *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 268 (10th Cir. 1995); *Toombs v. Leone*, 777 F.2d 465, 472 (9th Cir. 1985)).

"Broad deference is given to a district court's interpretation of its local rules." *Bias v. Moynihan*, 508 F.3d 1212, 1223 (9th Cir. 2007) (citing *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002)). This Court's Civil Local Rule 11-4 provides in relevant part that all attorneys permitted to practice in the Northern District must: "Be familiar and comply with the standards of professional conduct required of members of the State Bar of California;" "Comply with the Local Rules of this Court;" "Maintain respect due to courts of justice and judicial officers;" and "Practice with the honesty, care, and decorum required for the fair and efficient administration of justice[.]" "Failure by counsel or a party to comply with any duly promulgated local rule or any Federal Rule may be a ground for imposition of any authorized sanction." Civil L.R. 1-4.

In that regard, the undersigned's Civil Standing Order, which is applicable to this case, states that: "in the course of preparing filings with the Court or other documents for submission in an action, counsel and Parties choosing to use an AI *or other automated tools* shall fully comply with any applicable protective order and all applicable ethical/legal obligations (including issues relating to privilege) in their use, disclosure to, submission to, or other interaction with any such AI tools. Such counsel and parties using any AI tool shall maintain records sufficient to establish and corroborate their compliance with this Standing Order, if asked by the Court, such as by keeping records of all prompts or inquiries submitted to any such third-party AI tools." Civil Standing Order at § VI(C), available at https://cand.uscourts.gov/wp-content/uploads/judges/kang-phk/PHK-Civil-Standing-Order_2025.7.16.pdf (last accessed Sept. 4, 2025) (emphasis added).

Further, the Standing Order requires that "all counsel who have appeared, as well as all others responsible for making representations to the Court or opposing counsel (whether or not they make an appearance) . . . , shall competently and responsibly use automated, computer-based software or hardware applications in drafting briefs, pleadings, or other documents to be submitted to the Court, whether such tools are labelled as AI, generative AI, language model, natural language processing tool, machine learning tool, artificial neural network, deep learning neural network, *or any other automated generator of text*. Counsel and pro se parties shall make use of such tools with competent training, knowledge, and understanding of the limitations and risks of such automated tools." *Id.* (emphasis added).

1     As noted, the Local Rules require attorneys to comply with the standards of professional conduct of the State Bar of California. Rule 1.1 requires that "A lawyer shall not intentionally, recklessly, with gross negligence, or repeatedly fail to perform legal services with competence." And as noted above, Rule 3.1 requires that a lawyer "shall not . . . present a claim or defense in litigation that is not warranted under existing law."

# DISCUSSION

## I. ATTORNEY CERVANTES

In her declaration filed in response to the Order to Show Cause, Attorney Cervantes attests as follows: "I incorrectly and inadvertently cited the case *South Pointe Wholesale, Inc. v. Vilardi*, No. 16-CV-6758, 2017 WL 11570668, at *2 (E.D. N.Y. May 2, 2017)." [Dkt. 31 at ¶ 4]. "The correct citation for the parenthetical in the Joint Letter Brief Regarding Discovery Disputes, is *South Pointe Wholesale, Inc. v. Vilardi*, No. 1:17-CV-00052-GNS, 2017 WL 3877860 (W.D. Ky. Sept. 5, 2017), attached hereto for reference as Exhibit 1." *Id.* at ¶ 5. "The citation is not reported in the federal supplement and should have complied with local rule 3-4 (d)(5)." *Id.*

At the Order to Show Cause hearing, Attorney Cervantes averred under oath that she utilized Westlaw's CoCounsel research tool in order to assist with drafting her client's portion of the Joint Discovery Letter Brief. Westlaw's CoCounsel is self-described as "Professional-grade AI CoCounsel Legal: AI lawyers swear by;" and which allows attorneys to "Leverage the most advanced single tool for completing complex legal work—research, drafting, and analysis—with speed and precision[.]" Thomson Reuters, "CoCounsel Legal: AI lawyers swear by" https://perma.cc/96LT-FM3H (last accessed Sept. 4, 2025). At a general level, CoCounsel is a computerized tool which generates citations. CoCounsel appears to use a version of a large language model which, in response to prompts, generates legal research, analysis, and (relevant here) case citations. Attorney Cervantes attested that her firm had recently obtained access to that Westlaw tool and wanted to utilize it for the first time for the discovery dispute at issue.

Attorney Cervantes attested at the hearing that she utilized the CoCounsel tool and directed her paralegal to review the citations, but one citation was inadvertently missed. She further attested that she did not personally review the *South Pointe Wholesale, Inc.* improper citation at issue.

7

1   Following the Court's issuance of the Order to Show Cause, Attorney Cervantes stated that that
2   Order to Show Cause was circulated firmwide, a meeting was convened, and additional training on
3   the use of large language models was conducted.

4   The Court firstly appreciates Attorney Cervantes's taking responsibility for the issues raised
5   by the Order to Show Cause. However, her declaration in response to the Order to Show Cause
6   raises several issues which were not satisfactorily resolved at the Order to Show Cause hearing.
7   First, there appears to be some inconsistency between the representations made in Attorney
8   Cervantes's declaration and those made during her sworn testimony at the Order to Show Cause
9   hearing. In her declaration, Attorney Cervantes described the erroneous citation as her own
10  inadvertent error and further implied that Westlaw's tool may have "glitched" by erroneously
11  producing the citation. [Dkt. 31 at ¶ 4]. Specifically, she indicates that the copy citation tool may
12  have inadvertently copied the wrong citation information.

13  Yet, that explanation seems highly improbable. The citation was incorrect in every respect
14  and none of the sub-parts of the citation match each other, including the case docket number,
15  reporter, pincite, court information, and date information. The likelihood of every component of a
16  citation being simultaneously wrong due to a software malfunction in transcribing from a "correct"
17  citation is, in the Court's view, statistically improbable (particularly given Westlaw's
18  representations as to the accuracy of its tools and the apparent resources Westlaw has devoted to
19  promoting the reputation of this tool). If one set of numbers had been transposed, or if the date were
20  wrong, such transcription errors might be explicable. However, the fact that the party names, docket
21  number, Westlaw citation, date, and court all failed to match, resulting in a mashup citation, cannot
22  credibly be attributed to a software error, let alone a mistranscription or copying mistake. Rather,
23  this Frankensteinian legal citation, stitched together from mismatched party names, docket numbers,
24  dates, and courts, bears the hallmarks of an AI-generated hallucination, as documented in numerous
25  published opinions and reports. *See, e.g., Johnson v. Dunn*, -- F. Supp. 3d ----, 2025 WL 2086116
26  at *11 (N.D. Ala. July 23, 2025) (collecting cases; "Every lawyer knows that citing fake cases in a
27  court filing is a terrible decision. No one here is attempting to defend it. In the few years that
28  generative AI has affected court filings, it has become well established that '[m]any harms flow

from the submission of fake opinions.'"); *see also Lahti v. Consensys Software Inc.*, 2025 WL 2404454 at *4 (S.D. Ohio Aug. 20, 2025) (citing Christina M. Frohock, *Ghosts at the Gate: A Call for Vigilance Against AI-Generated Case Hallucinations*, 130 Penn St. L. Rev., issue 1 (Winter 2025) forthcoming, available at https://dx.doi.org/10.2139/ssrn.5275945).

At the hearing, Attorney Cervantes emphasized her reliance on Westlaw's CoCounsel and her delegation of citation review to a paralegal, and she did not repeat or rely on the suggestion in her declaration of a Westlaw "glitch." Rather, at the Order to Show Cause hearing, Attorney Cervantes shifted the reasoning and speculate that there was an error in copying and pasting the citation from Westlaw's *CoCounsel* webpage into the Word document of the brief. She could not explain how that error could have occurred in the copy-and-pasting process, but implied that some form of error was involved. These differing characterizations, combined with the improbability of the explanation offered in the declaration, raise concerns about the accuracy, completeness, and candor of the explanations provided.

More fundamentally and problematically, Attorney Cervantes did not herself confirm the accuracy of the citations in Plaintiff's portion of the brief before filing the Joint Discovery Letter Brief. Rule 5.3 requires that "a lawyer having direct supervisory authority over [a] nonlawyer, whether or not an employee of the same law firm, shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer." Cal. Rule of Prof. Conduct 5.3(b). While Attorney Cervantes represented that she asked her paralegal to review the citations, she further admitted that she did not personally review the *South Pointe Wholesale* citation at issue. That was a fundamental failure on her part. "Courts have consistently held that failing to check the treatment and soundness—let alone the existence—of a case warrants sanctions." *Mid Central Operating Engineers*, 2025 WL 574234 at *2. Delegation to staff is normal and appropriate in many circumstances, but counsel bears ultimate responsibility for filings submitted to the Court. *See Davis v. Marion County Superior Court Juvenile Detention Center*, 2025 WL 2502308 at *2 (S.D. Ind. Sept. 2, 2025) (sanctioning attorney for filing brief with fake citations, where attorney averred that paralegal drafted the brief and attorney alleged he "did not have time to carefully review the paralegal's draft before filing it.").

1      Moreover, to the extent Attorney Cervantes appeared to attempt to deflect at least some of the blame to her paralegal as the potential source of the alleged "human error," her response to the Order to Show Cause is inadequate. Ultimately, an attorney, and not their staff, undertakes the duties of professional responsibility when submitting filings to the Court. "An attorney who uses the services of a paralegal is liable for any harm caused as the result of the paralegal's negligence." Cal. Bus. & Prof. Code § 6452(b). "Even though an attorney cannot be held responsible for every detail of office procedure, he must accept responsibility to supervise the work of his staff." *Vaughn v. State Bar of Cal.*, 6 Cal. 3d 847, 857 (1972). Given the ease with which computerized tools allow for cite checking, the failure to verify the accuracy of cited legal authority reflects a lack of diligence in these circumstances, particularly where Attorney Cervantes was using a tool which was admittedly new to her and her law firm and in light of the numerous cases, this Court's Standing Order, and very public warnings about AI-generated fake citations. *Davis*, 2025 WL 2502308 at *2 (sanctioning attorney for filing brief with fake citations, where attorney did not take the time to check citations before filing: "It would have taken only a few minutes to check the validity of the citations in the brief using LEXIS before filing it. [Attorney] Mr. Sture failed to take even that most basic of actions, and therefore did not catch the fact that the brief contained citations that did not exist.").

     Here, as Attorney Cervantes admitted at the Order to Show Cause, she never checked the citations in the brief to make sure they actually existed. "The arrival of modern legal research tools implementing features such as Westlaw's KeyCite and Lexis's Shephardization has enabled attorneys to easily fulfill this basic duty. There is simply no reason for an attorney to fail to fulfill this obligation." *Mid Central Operating Engineers*, 2025 WL 574234 at *2.

     At its core, resolution of the issues here does not require finding the exact source or cause for the fake citation in Plaintiff's brief, whether from Westlaw CoCounsel, from the unexplained use of an AI tool or large language model, or from some form of error in cutting and pasting. The fact remains that the fake citation was included in the filing due to a failure to check the citation. "Regardless of the source of the fictitious case and quotation, an attorney with almost six years of experience . . . knows how to conduct legal research, retrieve cases, and accurately cite those cases.

The Court need not make any finding as to whether [sanctioned attorney] Mr. Francisco actually used generative AI to draft any portion of his motion and reply, including the fictitious case and quotation. 'Citing nonexistent case law or misrepresenting the holdings of a case is making a false statement to a court. It does not matter if [generative AI] told you so.'" *United States v. Hayes*, 763 F. Supp. 3d 1054, 1066–67 (E.D. Cal. 2025) (citations omitted) (sanctioning attorney for violations of court's local rules and under inherent authority). As such, the Court is inclined to sanction Attorney Cervantes.

Based on the submissions and the hearing, the Court also recognizes several mitigating circumstances. First, Attorney Cervantes responded promptly to the Court's Order to Show Cause. In fact, she responded the same day the Order to Show Cause was issued. Her immediate engagement with the Court's directive demonstrates respect for the process and recognition of the seriousness of the matter.

Second, at the hearing, Attorney Cervantes did not minimize the error and expressed genuine regret. Her demeanor suggested that she understood the gravity of the issue and took the Court's concerns seriously. The Court appreciates Attorney Cervantes's candor and acknowledgment of responsibility.

Third, Attorney Cervantes ultimately accepted responsibility for the mistake (and did not persist in pointing to her paralegal's involvement). Attorney Cervantes acknowledged that the failure to check the citation was her error ultimately.

Fourth, following the issuance of the Order to Show Cause, Attorney Cervantes indicated under oath that her firm circulated that order internally, convened a meeting, and implemented additional training regarding the use of large language models. These corrective measures indicate that the firm is attempting to address the underlying issues proactively and to prevent recurrence.

Fifth, Attorney Cervantes is a relatively junior attorney, and her inexperience may have contributed to the failure to properly supervise and manage the circumstances that led to the filing. The Court is mindful that younger attorneys are still in the process of developing sound professional judgment and learning the full scope of their ethical and procedural obligations as counsel of record. The Court does not take lightly the challenges that early-career attorneys face, particularly when

navigating emerging technologies and complex discovery disputes. This context underscores why the Court's Standing Order expressly encourages law firms to provide junior attorneys with meaningful opportunities, alongside appropriate guidance and oversight, when appearing before this Court.

On balance, while the Court remains troubled by the lapses identified above, including the inconsistent explanations, the failure to disclose the use of a large language model as required by the Court's Standing Order, and the ultimate failure to verify citations before filing, the Court also credits the mitigating factors discussed above. These factors weigh against the imposition of more severe sanctions at this time.

## CONCLUSION AS TO ATTORNEY CERVANTES

Accordingly, the Court herby publicly **ADMONISHES** Attorney Cervantes for her failure to comply with the Court's Standing Order, her failure to comply with Rule 11(b), and for her lack of diligence in ensuring the accuracy of the citation submitted to the Court.

In addition, the Court **ORDERS** the following sanctions:

> **Circulation Requirement:** Attorney Cervantes shall circulate this Order, together with the Court's Order to Show Cause and her response, to all attorneys and paralegals in her office. The Court highly encourages that all recipients read these documents to reinforce the importance of diligence, candor, and compliance with the Court's Standing Order regarding the use of AI tools. Attorney Cervantes **SHALL** file a certification with the Court that she has complied with this circulation requirement within **ten (10) days** of completion.

> **Continuing Legal Education Requirement:** Within six months of the date of this Order, Attorney Cervantes shall complete at least four hours of live, in-person continuing legal education from providers approved by the California State Bar. At least one hour shall be in the area of law practice management/supervision of staff, at least one hour shall be in the area of professional responsibility and ethics, and at least one hour shall be in the area of ethical/professional use of artificial intelligence/large language models in legal practice. Upon completion of this CLE requirement, Attorney Cervantes **SHALL** file a declaration under oath certifying completion of the CLE within **ten (10) days** of completion, attaching copies of certificates of attendance.

After the Court reviews the certifications required above, the Court will make a final determination on whether to discharge the Order to Show Cause as to Attorney Cervantes. No

12

further sanctions will issue at this time.

## II. ATTORNEY WEBB

As noted, Attorney Webb did not appear at the Order to Show Cause hearing. [Dkt. 148]. The Order to Show Cause was directed to him, as well as Attorney Cervantes. [Dkt. 129]. As noted, his name is in the signature block of the brief containing the fake citation. At the Order to Show Cause hearing, when the Court inquired of Attorney Cervantes regarding his absence, she stated that Attorney Webb was attending another matter that had been scheduled in advance.

Attorney Webb's name appeared on the pleading at issue, and he was (until recently) attorney of record in this matter for Plaintiff. He is the namesake for his law firm and is the senior lawyer who supervised Attorney Cervantes in this lawsuit. As such, the responsibility for the accuracy of the filings submitted to the Court rests squarely with him.

Although Attorney Cervantes indicated that Attorney Webb had entrusted her with drafting the discovery letter brief, an attorney's professional responsibilities cannot be delegated in that manner. "A lawyer who individually or together with other lawyers possesses managerial authority in a law firm, shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm comply with these rules and the State Bar Act." Cal. Rules of Prof'l Conduct r. 5.1(a)(b). "An attorney is responsible for the work product of his employees which is performed pursuant to his direction and authority." *Crane v. State Bar of Cal.*, 30 Cal. 3d 117, 120 (1981). This supervisory duty is "separate and distinct from the underlying duties of a novice attorney to act competently." *Gadda v. State Bar*, 50 Cal. 3d 344, 354 (1990). Ultimately, Attorney Webb and his firm submitted the filing to the Court. His failure to appear at the hearing, failure to submit his own declaration, and failure to otherwise address the Court's concerns reflect poorly on his regard for his obligations as attorney of record and raise serious questions about his diligence and accountability in this matter.

The Court **ADMONISHES** Attorney Webb for failing to appear at the Order to Show Cause hearing and for failing to file any submission before or after the hearing to explain his absence. Those failures constitute failures to comply adequately with a Court Order. "An attorney who signs the pleading cannot simply delegate to forwarding co-counsel his duty of reasonable inquiry."

13

*Unioil, Inc. v. E.F. Hutton & Co.*, 809 F.2d 548, 558 (9th Cir. 1986). "Rule 11 requires that an attorney signing a pleading must make a reasonable inquiry *personally*." *Garr v. U.S. Healthcare*, 22 F.3d 1274, 1280 (3d Cir. 1994).

Accordingly, the Court **ORDERS** Attorney Webb to file a declaration within **fourteen (14) days** of this Order addressing all of the issues raised in the original Order to Show Cause and further addressing the following: (1) explaining his nonappearance at the Order to Show Cause hearing; (2) explaining the failure to provide advance notice to court staff as to his apparent scheduling conflict; (3) describing his role and responsibilities as counsel of record with regard to the supervision of Attorney Cervantes and other members of his law firm with regard to the filing of the brief containing the fake citation; and (4) identifying what steps he personally and his firm have taken, or plan to take, to mitigate and prevent similar issues from occurring in the future. Failure to comply with this directive may result in further sanctions. The Court does not discharge the Order to Show Cause as to Attorney Webb.

## CONCLUSION

Accordingly, for the reasons explained herein, and as an exercise of the Court's authority to enforce its local rules (which incorporate the California Rules of Professional Conduct) and its inherent authority, the Court **ADMONISHES** and **SANCTIONS** Attorney Cervantes as detailed herein.

The Court **ORDERS** Attorney Webb to file a declaration within **fourteen (14) days** of this Order as discussed above, and the Court will take further action upon review of that declaration.

**IT IS SO ORDERED.**

Dated: September 5, 2025

_____
PETER H. KANG
United States Magistrate Judge

14