UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Peter H. Kang, Magistrate Judge

HILL,                            )
                                 )
          Plaintiff,             )
                                 )
vs.                              )   No. C 23-06558-PHK
                                 )
WORKDAY, INC., et al.,           )
                                 )
          Defendants.            )
_____ )

San Francisco, California
Thursday, September 18, 2025

TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
RECORDING 2:33 - 3:43 = 1 HOUR, 10 MINUTES

APPEARANCES:

For Plaintiff:
                         ANTHONY C. HILL, PRO SE
                         5 Kaywood Court
                         Silver Spring, Maryland 20905

For Defendants:
                         Orrick, Herrington &
                           Sutcliffe, LLP
                         400 Capitol Mall
                         Suite 3000
                         Sacramento, California 95814
                    BY:  JULIE A. TOTTEN, ESQ.
                         KAYLA D. GRUNDY, ESQ.


Transcribed by:          Echo Reporting, Inc.
                         Contracted Court Reporter/
                         Transcriber
                         echoreporting@yahoo.com

*Echo Reporting, Inc.*

2

P-R-O-C-E-E-D-I-N-G-S

--oOo--

THE CLERK:  Now calling civil matter 23-6558, Hill versus Workday, Inc., et al.

Counsel, if you can please approach the lectern and state your appearances beginning with the Plaintiff's counsel or beginning with Plaintiff.

MR. HILL:  Good afternoon.  Anthony Hill, pro se.

THE COURT:  Good afternoon, Mr. Hill.

MS. TOTTEN:  Good afternoon, your Honor.  Julie Totten and Kayla Grundy with me, appearing on behalf of Defendant Workday.

THE COURT:  Good afternoon.

Okay.  So we're here on the motion to -- no, the Rule 15 motion to amend -- for leave to file the second amended complaint.  So -- just -- the docket is self evident, but, Mr. Hill, I just want to confirm, you did not file a reply brief.

MR. HILL:  No.

THE COURT:  Okay.  All right.  And so -- well, in light of that, I'll give you a chance to reply to the opposition --

MR. HILL:  Yeah.

THE COURT:  -- before we go into my questions

there.  Yeah.

MR. HILL:  Shall I begin?

THE COURT:  You can begin.

MR. HILL:  All right.  Okay.  Great.

So Rule 15 versus Rule 16, I think this reply is directly to the opposition.  So the threshold issue is whether Rule 15 or Rule 16 should apply.  It's my position that there's no scheduling order barring amendment and that Rule 16 would apply only where such an order exists.  I think we can find -- you can find authority for that in Johnson v. Mammoth.  The cite for that is 975 F.2d 604, pages 607, 08, a Ninth Circuit case, obviously.  And so Workday specifically points to the May 2024 case management order, and that's at docket 52 --

THE COURT:  Yes.

MR. HILL:  -- for its argument that amendment is time barred.  But that order also set numerous other deadlines that are now long past due.  So, for instance, fact discovery in that order closed on February 28th, 2025. Jury trial would have been set for September 8th, 2025, a date that's already behind us by 10 days, obviously.  So if Workday is right that that May 2024 CMO continues to govern all aspects of the case, then all the discovery would have closed seven months ago and the case would have already been tried, so that plainly can't be the posture of the case.

4

So the Court subsequently modified all deadlines, including moving the close of fact discovery to August 22nd, 2025, yet Workday is attempting to selectively enforce different provisions of different scheduling orders depending on which suits its current argument. So, for instance, in the discovery dispute, if you look at the argument in its portion of the joint letter statement to the Court, it relies on the Court's later order extending discovery through August 2025 to argue that my discovery requests are untimely, but imposed in the amendment, Workday invokes the earlier May 2024 order to cut off, you know, my amendment. So that -- it's a sort of a heads I win, tails you lose approach. And it's not only inequitable, but it's also intellectually and legally inconsistent.

So even setting aside that inconsistency, their own conduct, and I think this is a very important point, shows that they knew amendment was procedurally available to me. For example, if you look at docket 71, and that's the parties' joint case management statement on July 26th, 2024, I reserved the right to amend and Workday didn't object. And then if you look at the subsequent case management statement at docket 136, that's August 5th, 2025, I again reserve the right to amend. But this time, Workday not only failed to object, but it also expressly reserved its own right to oppose any amended complaint I might file on the

merits.  And so that reservation is significant.  A party doesn't reserve a right to oppose something that is procedurally prohibited.  At a minimum, Workday waived any argument that it might have made that amendment was procedurally foreclosed by the May 2024 case management order by not -- by obviously not objecting.

And so, more fundamentally, it shows its own filings -- oh, I'm sorry, more fundamentally, both -- this shows that both parties understood amendment after dismissal of portions of the first amended complaint remain procedurally available, and, obviously, that's what I did.

So in light of this, Rule 15, not Rule 16 as Workday has argued, should control.  Courts have consistently applied Rule 15 where no scheduling order exists and to ensure that cases are resolved on their merits.  This is fundamental to our legal system per the holding in cases like, of course, the seminal case <u>Foman v. Davis</u>, US Supreme Court, that's 37 U.S. 178, obviously 1962.

And so given that the liberal -- if you look at the liberal standard Rule 15, Rule 15 states that leave to amend should be freely given where justice so requires.  It instructs that this rule be applied with extreme liberality.  That's a Ninth Circuit case, <u>Dcd Programs, Limited v. Leighton</u>, 833 F.2d 183, page 186.  The Ninth Circuit maintains a presumption in favor of granting leave absent

6

undue delay, bad faith, repeated failure, undue prejudice, or futility, and my proposed amendment, the second amended complaint that's obviously under consideration now, Judge, simply cures the jurisdictional defect by substituting federal causes of action for California state law claims that you dismissed, Judge, stemming from the same factual nucleus -- this is super important -- and the same premises and alleged misrepresentation.

So there's no prejudice to Workday. They've been on notice of these core allegations, my core allegations, since the initial complaint and even earlier during the EEOC process. Merely experiencing the inconvenience of defending other claims, which is what they're experiencing now or may experience, does not constitute prejudice, as illustrated in cases like <u>Kamal v. Eden Creamery</u>. That's a Ninth Circuit case from 2023. The cite is 88 F.4th 126, page one -- I'm sorry, page 1280.

And so if you just look at the idea of diligence and my timing, I acted diligently in responding to the Court's dismissal of the state law claims, leaving promissory fraud as the operative surviving claim. After that, I sought to amend with federal claims based on the same factual background, same factual nucleus, as I said. The sequence demonstrates my diligence. I conformed my complaint to address the Court's jurisdictional ruling while preserving

the key facts underlying my claims.

So there was no undue delay, no attempts to sandbag, no surprise for Workday.

And even if Rule 16 applies, and obviously I don't think it does, good cause exists for my amendment.  I've been diligent in responding to the Court's dismissal order and curing the jurisdictional defects, and I did that promptly, even through changes of counsel and all that stuff.  So Workday can't show any legal prejudice, which is super important, versus sort of mere inconvenience, that would warrant denying my motion as recognized under the law.

For these reasons, Judge, I would ask that you find that Rule 15 controls.

THE COURT:  Okay.  On the procedural issue first, I mean there is -- you agree there's nothing in the -- there's no order rescinding the deadline set by the initial case management order for amending the complaint, right?

MR. HILL:  No, your Honor.  But like I said, it would be -- what we would need to do is that we would need to pull from different orders to get to kind of the procedural posture that we're at today.  And that just would not -- that would be so herky-jerky and legally sort of consistent with what, you know, your Honor has done and what courts do that it would be -- it would be comical.  Like I said, Workday in relying in their argument on the August

8

22nd subsequent order, right, they pull from that order to say that order controls, but then they harken back to the May 2024 order to say, "Well, you know, that portion controls," and that just can't be case.

THE COURT:  But if they had gone back to the earlier order, the discovery deadline would have been longer passed.  So it's actually better for you that they relied on the later order because it's actually closer to the time when you asked for the --

MR. HILL:  Yeah.

THE COURT:  -- discovery, right?

MR. HILL:  But -- well, but that's -- your Honor set that date, so -- I mean, the point I'm making is that you can't pull from two orders and say, "Hey, both control." That's not how -- been how, you know, your Honor has run this.  This has been a super -- you know, extremely flexible case.  I understand that.  It's been an experience, to say the least, but there's been order, particularly in the docket, in how the clerk's office and how you, Judge, have run the case.  And so to have it work that way would be so helter-skelter that it would be -- I think it would be a -- some error.

THE COURT:  Okay.  In your briefing, you point to the May 7th order that we set the case management conference as somehow affecting the deadline to amend the pleadings,

9

but I went back and looked at that order, there's nothing in that May 7th order that specifically addresses the deadline to amend pleadings, right?

MR. HILL:  No, that's -- I mean, I -- to the extent that that argument was made, that's not the argument that I'm, you know, hanging on.  I am strongly looking at the way that the -- this -- I mean, if that May 2024 scheduling order that I'm talking about at docket -- I think it's 52 --

THE COURT:  Yeah.

MR. HILL:  -- if that controls, then the case should have been 10 -- then the trial should have been 10 days ago and discovery should have closed -- what is it -- seven months ago, whatever.  So that's -- that can't be the outcome --

THE COURT:  Okay.

MR. HILL:  -- where we read -- sorry, where we read parts of orders and we don't read the whole thing.

THE COURT:  Okay.  But you would agree in general with your Opposing Counsel's argument in their papers that something you put in a CMC statement can't trump or overrule a court order, right?

MR. HILL:  No, I think the -- I think, your Honor, I don't think that it's something that we did.  I'm saying to the extent that we recognized as the parties and Workday

10

recognized as the -- as a party that the May 2024 case management order was no longer viable, given subsequent events. So I'm saying -- I'm not saying that it trumps anything. I'm not saying that what we should do is take this in light of -- over what the Court has said. What I'm saying is that Workday has recognized through their own conduct, particularly in not opposing my -- you know, my reservation of amendment, and then also going further and then themselves reserving the right to respond to any amendment that I was going to file -- by doing that, what they've done in conduct is show that they understand that circumstances have changed such that the May 2024 -- that CMO no longer controls because those events obviously have passed.

THE COURT: Okay. Let me -- just on the -- I just want to wrap up the procedural --

MR. HILL: Yes, Judge.

THE COURT: -- issue, so let me hear from the Defendant just on that issue.

MS. TOTTEN: Sure, your Honor. Thank you very much for the opportunity to be heard.

So the May 13, 2024, scheduling order is very much a scheduling order. It set all of the dates for the entire case all the way through trial. While it is called a case management order, it's also known as a scheduling order. It

11

clearly says on page two, line three that the dates would remain in effect absent an order from the Court on good cause shown.

And so it is true, your Honor, that we do draw certain dates from this particular order and then other dates from the subsequent orders that came out.  Those subsequent orders did amend other dates, but they did not impact, your Honor, the dates that were not included or referenced in the subsequent case management orders.

THE COURT:  Okay.  What's your response to the argument that you at least were on notice that he -- the Plaintiff intended to amend -- file a motion to amend, if possible, after that CMC statement and could have said something in your portion of the CMC statement that you're saying now, which is too late, right?

MS. TOTTEN:  We were never on notice of anything other than a general statement reserving rights to amend. We first received notice of a specific request to amend only a few months ago, your Honor, right before the motion -- this motion that we're here for today was filed.  It is true that there were these general attempts to reserve rights, but, your Honor, I agree with you that you are the one that gets to say whether or not anybody can amend, and a party is unable to simply reserve rights in an effort to overcome very clear dates that are set in a scheduling order.

THE COURT:  Remind me of the chronology.  I believe Plaintiff's prior counsel sent an e-mail either in late June or early July raising the issue of a stipulated -- not -- maybe a month or two after the order dismissing the first amended complaint.  So -- I mean, September --

MS. TOTTEN:  That's correct.

THE COURT:  -- now.  It's more than three or four.  It's three or four months ago, right?

MR. HILL:  Right.

MS. TOTTEN:  That is -- I said a few, but, yes, probably three.  I have it here somewhere, but, yes, that is correct, your Honor.  You issued the order granting the motion to dismiss on all of the claims, but for the promissory fraud claim, on March 28th, 2025.  Mr. Curls, former counsel, his motion to withdraw was granted on May 7th, 2025.  I can tell you that there were no discussions with Mr. Curls about amending the complaint.  And then July 14th, 2025, was the meet and confer letter regarding the attempt to propose a second amended complaint, your Honor. July 2025.

THE COURT:  Okay.  So -- but you would agree generally that I've got the discretion whether or not to grant leave to amend even at this late date?

MS. TOTTEN:  Of course, your Honor.

THE COURT:  Okay.  Let's move on from the

13

procedural issue.

So, Mr. Hill, going back to Rule 15, I mean you made your general argument.  You have to come up before I move to the Defense and make sure I didn't cut you off and make sure you've got anything further on the Rule 15 part of this.

MR. HILL:  I -- well, just the notice, your Honor. I mean, I actually reviewed it.  The notice went out at least three months ago.  And, certainly, in these joint statements that we made to the Court, it was quite clear what we were talking about.  We were talking about amendment following the Court's order on the pending, at that time, motion to dismiss.  So I just -- you know, I think it's -- I think it's a hard argument for Counsel to make that they didn't know, when they joined two filings that specifically said it, and then, like you said, they received notice from Counsel as well, so --

THE COURT:  Okay.  I'll hear from the Defense on Rule 15 then.

MS. TOTTEN:  Yes, your -- I mean, your Honor, we think Rule 15 is not the applicable standard.  We believe that Rule 16 squarely is the applicable standard because the case management schedule was issued, and therefore Rule 16 then becomes applicable.

But regardless of which rule is applied, we -- I don't know if you want to get into that or not, but we -- you

14

know, we think that both rules require a showing of diligence and (indiscernible) an utter lack of diligence in this case.  And so regardless of the rule that is applied, the outcome should be the same.  But I don't know if we want to get into that right now.

THE COURT:  I do.  So let's assume we get past the procedural hurdle issue.  On the substance of the request for leave to amend, give me -- what's your best shot on why there should be no leave to amend granted?

MS. TOTTEN:  Yeah, so the case law is clear, your Honor, and Mr. Hill cited Kamal vs. Eden as one example. That's an example of case law that's applicable.  I think that he got the holding wrong because that particular case denied the motion to amend.  I mean, that case is a perfect example of the way courts most often look at this.  In that particular case, the motion to amend was denied with the plaintiff stating that they had only received discovery five months before that revealed some new cause of action, they said.  And the court found that waiting five months was dilatory and did not show diligence, and therefore the court denied the motion.  And here, your Honor, we have a delay of, you know, from the very beginning of the case, if we go back to the filing in December of -- let me try to get it right -- 2023.  When this case was filed, it was filed as a, you know, California only claims case.  But, you know,

certainly, there was that whole body of claims out there under federal law that could have -- that, you know, kind of mirror each one of the California claims that were filed, and, certainly, those could have been brought at that time. But they were not. We -- that was filed in Alameda County Superior Court originally. And so perhaps that would make sense to only file California claims if you're filing in Alameda County Superior Court. But we removed the case, your Honor, immediately thereafter, right after it was filed, and we were in federal court. And so that should have certainly been a clue that, you know, if you have federal claims, now would be a good time to bring them. But that did not happen. And we filed, as you know, your Honor, multiple motions to dismiss. We spent incredible time and energy working -- and our client incurred significant attorney's fees moving to dismiss those claims, all based on Iqbal Twombly, but also, first and foremost, based on a lack of jurisdiction.

And so just to the extent that there was some strategy that Plaintiff and his counsel admitted in their first motion, that it was a legal strategy to not bring the federal claims at that time, you know, that was a strategy that was in error clearly because you made it very clear all along that the -- the ability to predicate claims on California law was shaky. You told Counsel standing here

16

that they needed to give it their best shot and put everything, everything that they needed to put, into that first amended complaint or run the risk that it would all be completely dismissed. You put them on clear notice that they needed to do that, and they came back with just the California claims.

So we're -- you know, so we're talking, you know, one and a half years -- more than one and a half years after the initial complaint was filed. But then there's also delay, your Honor, post your order from March of 2025. If they wanted to show that they were diligent, they would have immediately sprung into action. But we just established that there was no reference to a proposed amended complaint until July. That is multiple months that passed from March until July. And so even after your order came out, there was not a showing of diligence. So there is no good cause, your Honor, because there's no diligence.

And then courts also -- while they look first and foremost at diligence, the second thing they look at is prejudice to the defendant. And here, there is prejudice, your Honor, for multiple reasons, because we did file motions to dismiss. And had the federal claims been pled with the state law claims, we would have been filing combined motions to dismiss, right, that address all of the claims. We are now one month away from filing our summary

judgment motion, your Honor, discovery has completely closed. And while Mr. Hill claims that it's the same nucleus of fact, that actually is a fact that I think benefits us. He was on clear notice the whole time that he had these federal claims to bring. There was no surprises that he got in discovery that led him to be aware of these claims for the first time. And so we have not done discovery on any of those issues, your Honor, because the parties had agreed that we would not do discovery. And then we tried to do discovery, but Plaintiff's counsel would not want to do discovery -- did not want to do discovery on all of those claims. And so the only claim that we had done discovery on is promissory fraud. So while it's based on the same nucleus of facts, that's a harmful fact for him. I think it's a helpful fact for us. And it shows that he should have brought those claims from the very beginning, and it shows all the reasons why we are harmed, because even though it's the same nucleus of facts, we didn't do discovery on those. So we have to literally restart this case from the beginning, your Honor, if this motion to amend is granted.

THE COURT: Mr. Hill?

MR. HILL: Thank you, your Honor.

So if I understand Ms. Totten correctly, her core argument is that as a legal proposition, there's undue delay

18

because she doesn't like the legal approach that we chose to take with respect to the claims filed. But I don't know any case law that supports that proposition. There just isn't. And so, you know, not liking legal strategy doesn't foreclose me from amending to include viable available claims.

With respect to her argument that they're prejudiced, again, legal prejudice under Rule 15 has a very specific meaning. What she's just described, from my reading of the case law, is inconvenience. She doesn't want to or her client doesn't want to litigate these available claims, even conceding that the facts that they would have to litigate are exactly the same, which puts my case in a different posture than a lot of the other cases where employees or plaintiffs in general have tried to amend and have been given leave to amend on the merits, because in those cases, unlike in mine, sometimes they're adding a whole new different set of facts that are -- that were otherwise unknown to the plaintiff -- to the defendant, rather. And in this case, they know everything. They know the people, the dates, the times, the places, and there's nothing else.

With respect to their argument that my former counsel didn't want, you know, discovery. That's just patently untrue. If you look at docket 117, they moved the Court to cut off discovery with respect to I think deposition

19

requests, but certainly discovery in general, because they said that there's only promissory fraud, and so anticipating the proposed rule -- I'm sorry, rule -- proposed second amended complaint per the Rule 15 motion in discovery was not something that should be done. Your Honor obviously agreed, which is, you know, absolutely fine. And docket 129, firmly said, you know, "Mr. Hill, you need to cut off your strategy here. You need to -- you need to change and limit your discovery request to the operative promissory fraud claim." That's exactly what happened. That's what we did. They pressed for it. And, in fact, I would love to, if I can, just briefly -- because I think this dovetails or at least gets into the joint letter brief that we filed and the open issues around discovery. I think it's sort of all part and parcel of the same thing. No, I won't.

THE COURT: We didn't set a hearing on that discovery letter brief. It was only filed, I think, yesterday, so --

MR. HILL: Okay.

THE COURT: -- or two days ago.

MR. HILL: But to the extent that your Honor is interested, I think that, you know, it's clear that they pressed for this, they knew that that was the limit, and so I just don't think it -- it's fair to say that we didn't want discovery. We absolutely wanted discovery. I'm

20

pressing for discovery, certainly in the brief and every place else.  So, you know, I think for all of these reasons, Rule 15 controls.

And then lastly, I think -- and then I'll close with this, you know, I think that the operative date to look at is when your Honor, you know, partially -- you know, you dismissed most of the claims.  You kept as a viable claim, promissory fraud.  And then at that point, you know, other things happened, obviously, there was counsel withdrawal, things that sort of -- I don't think -- again, as a legal proposition, within the authority of kind of these cases, they don't speak to things like bringing in new claims or bringing in new counsel as sort of legal delay.  I mean, these are just things that happen, your Honor certainly understands, in litigation.  We press on.  But after discovery reopened, which we promptly did when I -- when I hired new counsel, we opened the discovery window earlier -- sorry -- than we had said that we would and that the Court said that we should, and the order, we said -- I think it was a week earlier, we said, "Okay.  Hey, discovery is back on."  We started working diligently to exchange discovery.  And then we were -- they were on notice that we were going to amend the complaint, and so they certainly knew, and then we pressed on and did.

And then there was a sealing issue.  And then right

21

after the sealing issue, which we resolved the way that they wanted us to, we filed I think the redacted or altered second amended complaint to comport with kind of what they wanted. We were in agreement on that. And then, you know, obviously, they opposed. I think it's fine to oppose on the merits. But to oppose on the procedural idea that the earlier case management conference requires Rule 16 is, I think, just -- a case management order requires a Rule 16 is, I think, a tough call for them.

THE COURT: Ms. Totten.

MS. TOTTEN: Thank you, your Honor.

Mr. Hill's recitation of them attempting to do discovery is not incorrect. It's just important to frame it within the chronology. At that point in time, your Honor -- again, we're talking from July 2025 forward. And at that point in time, your Honor, you had already granted the motion to dismiss dismissing all of those claims other than the promissory fraud claim. So while they were seeking to conduct discovery over the very broad set of originally existing claims, you, thankfully and -- thankfully, from our perspective, and appropriately granted our motion to limit discovery to only the claims that were live and in existence at that time. So I'm not quite sure what the point is there with regard to that discovery. Yes, they did attempt to seek very broad discovery at that point in time, but that

22

point in time is really somewhat moot.

Mr. Hill has referenced legal prejudice a few times, and I'm not sure that that is a correct concept under Rule 16, which is the appropriate rule that we should be looking at. That is not a standard the courts talk about. They -- again, the primary focus is on the diligence of the plaintiff who is seeking to amend first and foremost. But then second, it is just prejudice to the defendant and whether there is prejudice. And we have shown the exact same kind of prejudice that exists in the Kamal case, in Keritin (phonetic) vs. the NCAA case, in Quan vs. the San Francisco Police Department. All those cases are cited in our brief.

THE COURT: You would agree that inconvenience alone is not prejudice.

MS. TOTTEN: I agree, your Honor, that inconvenience alone is not prejudice. Certainly, if this motion had been brought immediately after the March order, I think we might be in a different spot, your Honor, but it wasn't, your Honor, and now discovery has closed. At that point in time, had this motion been filed then, it would have been a race, your Honor. It would have been a race. But we could have completed discovery within the time frame. Discovery closed on August 22nd. We could have gotten it done. But there was a delay. There was a significant delay

23

even after your March order, your Honor.  There's been a delay from the very -- everything about the case in terms of, like, this particular issue is dilatory.

MR. HILL:  May I say something?  We're talking about delay.  August 22nd is the date that they -- that she just said.  They slammed me with a bunch of -- I think the third or four discovery dumps on that day, on the afternoon of the 22nd, the last possible date.  And then they, on the September 12th, they served more discovery.  So, obviously, that date -- I mean, they understand Rule 26 imposes an -- a continuing obligation.  They understand that litigation has some flexibility, and to the extent that they, you know, they look at this date, they're saying, well, at least, it seems like co-counsel is arguing most of the -- my colleague is arguing that the 22nd of August is sacrosanct.  That's the date that you can't -- you know, can't -- do not pass go.  But they did in their discovery, and they understand that there is flexibility built in.

THE COURT:  Just so I'm clear, when you say they served discovery on August 22nd and in September 12th, did they serve discovery requests on you?

MR. HILL:  Responses.  They responded --

THE COURT:  Responses.

MR. HILL:  They -- supplemental discovery.  So they dumped a bunch of documents on me on the 22nd, the last

24

possible day of discovery, and then obviously beyond -- and that's fine.  I was actually happy to get some documents on the 12th.

THE COURT:  Yeah.

MR. HILL:  But in so doing, they understand -- what I'm saying is that they understand the concept conceptually that there -- there's a continuing obligation, obviously, under the federal rules, that -- to keep going, but there's also an understanding that there's flexibility in there.

And I just also want to kind of go back to what she's saying with respect to the March 2025 date after the ruling on their motion to dismiss.  What she would essentially be arguing is that delay due to issues with counsel withdrawals should be counted against a pro se plaintiff lawyer or not -- should be counted as legal prejudice to a Fortune 500 company worth $70 billion.  That sort of asymmetry just would seem, again, very -- certainly would be within the Court's discretion, but that would seem very inconsistent with how the courts have looked at inconvenience versus prejudice even under Rule 16.  And so looking at it under that and sort of the good cause standard, I think it would weigh more -- the sequence of events would lean more towards inconvenience than actual prejudice.

THE COURT:  Now, you did argue that the delay from

25

March to July of this year is cause for denying the motion. Do you have any case law that says a four-month delay is too much?  I don't remember seeing anything in your briefing that is that short.

MS. TOTTEN:  I don't believe that we have a case that says exactly that, your Honor.

THE COURT:  And, I mean, we -- it was either -- at least -- it was an order.  I can't remember if it was based on a motion or a stipulation.  We did pause the case for about a month to give Mr. Hill time to find new counsel, so -- and that falls within those four months.  So even -- and he actually found counsel -- new counsel within two or three weeks.  So it's a little less than four months of delay.  I mean, are you really hanging your hat on that delay and saying that's a reason for denying the motion to amend?

MS. TOTTEN:  I believe it is a combination of the -- holistically.  We can't look at that time period, your Honor, without looking at everything that came before that.

THE COURT:  Yeah.

MS. TOTTEN:  It's impossible.  Like, if there was a desire to bring federal court claims that mirror the exact California claims that were pled, knowing the risk that the California claims might be dismissed at any moment --

THE COURT:  Right.

MS. TOTTEN:  -- they should have been brought, and

26

they should have been brought a long time before your March 2025 order.  But I do think there is also delay post March 2025.  I'm not going to stand here and say there wasn't delay because there was, your Honor.  And there is case law that saying -- that says change of counsel is not sufficient to excuse delay.  It's <u>Quan vs. San Francisco Police Department</u>, your Honor.  And we didn't serve discovery.  Mr. Hill pointed out that he thought that our discovery was lacking certain categories of documents that he was aware of from working there and asked us if we would look into whether they might exist.  And we did, your Honor.  And we did find some documents that we were unaware of in a category that we hadn't heard of before.  And we located those, and we provided them as he requested, your Honor.

THE COURT:  Okay.

MR. HILL:  May I say something?

THE COURT:  Yeah.

MR. HILL:  Your Honor, I'm sorry to have cut you off.  So the <u>Quan</u> case, obviously the question would be, was the delay two and a half months?  And I think that that's -- that sort of argument militates more -- like your Honor recognized -- more in favor of not seeing change of counsel as more than an inconvenience.

Secondly, obviously, this case has had complexity because there were named defendants and the individual

27

corporate defendant, and so there were various dispositive motions and responses flying around. And, you know, for instance, they chose to dismiss on behalf of I think it was Susan Dahm individually, and then Katie Hauck and Lisa McFall together. And so we were obviously opposing their motions to dismiss. They were replying. So it was -- it -- that was part of the, I think, you know, sort of how long the case has been. I recall because I -- it was the first time I had come here in, I think, 2024 when we had a hearing, and your Honor said, "Hey, you should" -- to my former counsel Curls -- Michael Curls, "Hey, you may want to think about dropping the individual plaintiffs." And we immediately did.

THE COURT: Defendants.

MR. HILL: I'm sorry, defendants. And we immediately did. And, obviously, at that point, we just had the corporate defendants, but -- the corporate defendant.

But to the extent that they can find some case law, because I would be very interested, that says that not liking your legal -- your opponent's legal strategy is grounds to say that we've been dilatory or whatever, or anything other than diligent, I think would -- yeah, I would be interested to see it, but I haven't seen any. And that's the argument that they're making.

THE COURT: Okay. Just so I'm clear, because I --

28

it's probably buried in the filings, what was the date that you initiated your EEOC complaint that led to the right to sue letter?

MR. HILL:  So their -- I don't recall.

THE COURT:  Yeah.

MR. HILL:  And that's the one thing I was actually trying to look at it from the filing.

THE COURT:  Yeah.

MR. HILL:  I have the filing.  I know that their EEOC letter was July 19th, 2023, but I don't know the date of the EEOC charge that I filed.  I can try to get that --

MS. TOTTEN:  It was before July of 2023 because that's when we did prepare the response.

MR. HILL:  Yes, July 19th was the date.

THE COURT:  Okay.

MS. TOTTEN:  It was April 10th, 2023, your Honor.

THE COURT:  April 10th.

MR. HILL:  Thank you.

THE COURT:  Okay.  Thank you.  Just so I've got the chronology.

Okay.  And it's because you argued earlier in the hearing that there's no prejudice to the Defense because they've known about kind of the operative facts here --

MR. HILL:  Yes, Judge.

THE COURT:  -- since I think you said as early as

the EEOC --

MR. HILL:  Yes.

THE COURT:  -- letter is April '23.  And I -- and, again, without doing a redline comparable of the documents, I assume the EEOC charge mirrors or is mirrored in what's -- what was in your original complaint in the Washington, D.C. case?

MR. HILL:  Yes.

THE COURT:  Okay.  And then, you know, you voluntarily dismissed that complaint in D.C.  This is back in '23.

MR. HILL:  Yes.

THE COURT:  That complaint is substantially mirrored by your --

MR. HILL:  First --

THE COURT:  -- Alameda Superior Court complaint.

MR. HILL:  Yes.  And which then was obviously removed here and became the operative complaint --

THE COURT:  Right.

MR. HILL:  -- before the first amended complaint, yes.

THE COURT:  Okay.  Right.  So if I understand your argument then, it's that they've known since I guess you're saying as early as April '23, but certainly as early as July '23 when you filed in D.C. --

30

MR. HILL:  Yes, Judge.

THE COURT:  -- right, all the operative facts that are at issue in this case, and that's basically why your argument is no prejudice because they've known for a long time --

MR. HILL:  Right.

THE COURT:  -- about all this.  Is that -- I'm just making sure I've got that right.  That's your position?

MR. HILL:  Right.  And they presumably could have done the investigations that are talked about in these -- in the case law that -- there's no surprise, there's no whoopie.  They know exactly it.  And then like I said, there are cases where there is a bit of surprise, and the courts, particularly Nine Circuit, still says, "Hey, you know, we should give them leave to amend because we're much more interested in plaintiffs being able to make merits-based arguments."  And so that's really the --

THE COURT:  Okay.  But -- I mean, their argument as briefed and as she repeated is essentially, "Look, you could have pled the federal causes of action as early as the D.C. case, right, if it's all based on the same facts," right?

MR. HILL:  Right.  I could have done it even earlier.  I could have not brought any state law claims and just decided to bring, you know, 1983, 1981 claim --

31

THE COURT:  Right.

MR. HILL:  -- you know, all the claims that I'm bringing now.

THE COURT:  Right.

MR. HILL:  But that's -- again, that's strategy. And that's no -- that's not a bar.  As I understand and read the law, that's not a bar to being able to file.  I mean, you know, sort of lawyers may -- certainly, I was being advised by counsel.  I'm not saying -- I'm not -- I don't want to sort of assign fault or blame or anything, but I'm saying not agreeing with your opponent's legal strategy is not grounds to say, "Hey I've been prejudiced or I've been" --

THE COURT:  Well -- okay.  But -- I mean, it's fairly succinctly put, I think, in their opposition brief, that is, look, if your lawyers made a strategic decision not to include those federal causes of action in the original complaint in D.C. or the original complaint in Alameda County or the removed complaint here, or even in the -- as late as the first amended complaint, if they made the strategic decision to do that --

MR. HILL:  Yes.

THE COURT:  -- there was -- it was a conscious decision, and therefore the diligence here shows that there wasn't diligence in asserting the claims because there was a

32

-- in other words, it defeats diligence, I think -- well, she's nodding her head -- if I understand the argument.  It defeats diligence because if you make a conscious decision not to assert the claims earlier when you could have and you knew all the facts, that you shouldn't be allowed to later assert the claims because you lost the motion to dismiss. In other words, you -- if you make a strategic choice to do something and to forego something, you should be held to it. Essentially, that's what I -- she's nodding her head. That's essentially what I understand her argument to be.

         MR. HILL:  Well, I just -- I don't -- so what I would say to that is that if that were the case, then those claims would not be procedurally available to me to be able to assert as a matter of law.  Certainly, the case law and likely, you know, the statutes would say, "Hey, you can't amend by doing this."  So to the extent that I am able to do it legally, I can take advantage of it, and it would be, again, sort of like them relying on two different scheduling orders to make their -- the case.  It would be sort of that same kind of logic where I can do something legally on the one hand, but if I do that one thing that I'm able to do, then I could be penalized as causing prejudice to the other side for taking advantage of what is legally available to me.  That -- again, that doesn't make sense intellectually, and it also doesn't make sense as a matter of law.

33

THE COURT:  Well, you understand the possibility and the -- I mean, she raises the risk of delay, right?  I mean, if every time a defendant -- sorry, a plaintiff loses on a motion to dismiss and they amend the complaint once, but then loses on a second motion to dismiss, and then says, "Well, I could have asserted these other claims" and basically tries to, you know, reassert new claims that weren't asserted previously, at some point, it just becomes an unending battle over the pleadings, doesn't it, if you keep allowing that, just based on your logic that, well, if you have it legally available to you, you should be allowed to amend?

MR. HILL:  Well, I understand what your Honor is saying, and it is well taken.  But if you look here, right, I'm only able -- so I was able to amend as a matter of right in the first instance, and then I sought leave to amend in the second instance.  And what I'm amending is adding federal claims, again based on the same factual core nucleus, right?  If I were to try to do that a third time, I couldn't, because there would be no other claims that would be procedurally available to me -- legally available to me. There would be nothing else that I could argue and -- to the extent that I try to argue something that's outside of this factual box, right?  Then I think that would be a stronger argument to say -- or at least I think it would be a home

34

run argument to say, "Hey, look, we're being prejudiced because Mr. Hill is bringing in stuff we had absolutely no knowledge about." But what I'm doing is I'm bringing in stuff that they've known, as your Honor recognized, since at least July 19th, 2023, and likely earlier in April, and likely even earlier than that because they -- as I pled, they ran a -- an HR investigation, so they knew all this stuff. And I -- they gave them the same 10-page document that was the basis for the EEOC filing and the D.C. human rights charge that was eventually the basis for the superior court claim that was moved here. So all of this has been a line that they've known about since day one. It doesn't -- and so if I were to try to, you know, pull this again, I couldn't, because to the extent that I'm stepping out of that same factual box that they've known about, then I think they could obviously hammer me and say, "Listen, we had -- we didn't know anything about this, and so how can we -- how can we be prepared for this?" But they've known about this forever.

THE COURT: Okay. So part of her argument, both in the briefing and today, was that part of the prejudice that they risk here is that if I were to grant you leave to amend, it would -- I think she says it would require restarting the whole case and certainly would require reopening potentially expansive discovery, which they could

35

argue is prejudicial. And I think in your briefing, you hint -- you may have even argued it, that no new discovery is really needed because it's the same operative facts at issue here.

MR. HILL: Yeah.

THE COURT: So let me ask you this. Hypothetically --

MR. HILL: Right.

THE COURT: -- if the Court were to grant you leave to amend, are you -- would you be -- would you commit that you don't need any more discovery, if it's all based on the same operative facts?

MR. HILL: No. Well, sort of. What I would -- no, I get it. And what I'm saying is -- and that's why I really wanted to talk about -- and I -- and I'll preview it. But I wanted to talk about the joint letter brief and --

THE COURT: I read the joint letter brief. We're not here to -- we're not here to argue.

MR. HILL: No, I get it. No, but what I'm saying is that that's -- that answers your question about discovery. To the extent that I'm getting the categories, the six -- I think the six categories of documents that I talk about in the joint letter brief, then no, I wouldn't need new discovery at all because that -- again, those same facts that would support the pretextual argument around

36

promissory fraud, the surviving claim, would also support my case-in-chief with respect to the 1981 claim, the 1983 claim, the Rehab Act claim, you know, all of the federal claims, should your Honor allow those to go in.

THE COURT:  Let me ask you more pointedly. Hypothetically --

MR. HILL:  Yes, Judge.

THE COURT:  -- if the Court were to grant you leave to file an amended complaint, would you commit here and now that you would not serve any new discovery requests on Workday?

MR. HILL:  Yes, to the extent that Workday would give me -- yes, Judge, but I would just pray that they would give me the discovery that I've already asked for.  If they did that, then there's no problem.  And there's no need for new requests.  But I would -- I -- obviously, we're pressing for the idea that we need supplemental discovery that's in line with my initial request, and obviously --

THE COURT:  Yeah.

MR. HILL:  So, yes, Judge, the answer is yes, full stop.

THE COURT:  Okay.  And let me make it broader. You wouldn't serve any new discovery requests on anyone if leave to amend were granted, not just Workday, but third party.  No subpoenas, no --

37

MR. HILL:  No, I'm not throwing subpoenas.  They throw subpoenas.

THE COURT:  Okay.

MR. HILL:  Well, Judge, I haven't -- would I -- under this hypothetical situation, would I be able to depose anybody?

THE COURT:  No.

MR. HILL:  Okay.

THE COURT:  In other words, no new discovery means no new discovery.

MR. HILL:  Then no new discovery, but I would pray that your Honor would say, okay, they need to supplement with the stuff we've already asked for, which I think is at least fair.

THE COURT:  Well, we're not --

MR. HILL:  Yes, Judge.

THE COURT:  -- here to decide that in discovery letter brief, and you have -- you -- I mean, you got to take the risk that I may deny your request in that discovery letter brief.

MR. HILL:  That's absolutely fine.

THE COURT:  Right.  Okay.  So let's assume that I take his response as a full stop, that there's no more new discovery if leave to amend were granted from the Defense side, then isn't the prejudice mitigated if there's no new

discovery at all?

MS. TOTTEN:  No, your Honor, I don't think so, because right now, we have both -- only done discovery about promissory fraud.  And Mr. Hill -- I'm going to mention the discovery letter, because it -- because he does, and I just want to explain, like he believes that there's this component called pretext in a promissory fraud claim, your Honor, but there's not, your Honor.  There is no such thing as pretext in a promissory fraud claim.  Pretext exists in discrimination claims.  Those are the claims that he wants to have part of this case that you dismissed.  And so I think that he is being genuine in saying and giving the answer, but at the same time, he's not, because he is seeking to have Workday open up all of this discovery that it -- that he was seeking as it related to all those claims.

THE COURT:  Okay.  So I'm sorry to -- let me ask you a more slightly different hypothetical.  If, hypothetically, the Court were to grant leave to amend but were to issue an order saying no new discovery, no following up in any existing discovery other than the existing discovery letter brief, that's it, right, and whatever I rule on that, I rule on that, and you have to live with it, right?  Assuming I entered that kind of order, right, and I just ordered that, isn't the prejudice to Workday mitigated significantly?

39

MS. TOTTEN:  It is mitigated, your Honor.  I do agree with that.  It is mitigated.  But there -- I think there is still prejudice, your Honor, because we did not depose Mr. Hill about those claims, your Honor.  And so we wouldn't know what he's going to say other than what is in his complaint.  And so if there's no discovery, then we're all gambling, I guess, at trial.  And I think, you know, that's prejudicial.  We have the right to take depositions.

MR. HILL:  Well, your Honor, may I respond to what she says?

THE COURT:  Okay.  Go ahead.

MR. HILL:  Okay.  So just a couple of things.  One, they decided in docket 117 to move -- to limit discovery.  It was us who wanted to expand discovery to get in these other claims because we had already given them notice and given the Court notice that we were going to amend, they already reserved the right to respond to it.  So they chose to stop discovery and limit it to promissory fraud.  So that's, I think, the first thing, and it should be pointed out.  It's not as if they -- they're acting as if they didn't want discovery -- they wanted more discovery.  They've always been trying to limit discovery.

Second, this pretext argument, I -- and I won't go too far into it because I know your Honor hasn't probably had a chance to look too much into this.  But if you look at the

40

case -- it's a California Supreme Court case, <u>Serri v. Santa Clara University</u> -- it's an implied contract employment law case, and they're specifically talking about there's a breach of -- a breach of implied contract.  They're not talking about the other stuff.  They're talking about fraud.  And the court says that -- again, at page 72 to 73, it's talking about when an employer raises a -- proffers a reason for engaging in some adverse action.  Like in my case, you know, denying me RSUs or promotions or -- and all this other stuff, right?  When they do that, then the employee gets the chance to see whether those proffered reasons are legitimate or "pretextual."

So pretext, you know, is not an element of promissory fraud, but under -- you know, Rule 26 doesn't limit discovery to elements of claims.  What they say is something that's -- that quote -- what is it -- "allows discovery into any matter relevant to a claim or defense."  So that's what they're -- that's the rule.  What they've done is they've artificially constricted the rule.  It has nothing -- you know, what they're saying is that you would only get discovery to the extent that you can say that something is an element of a claim.  That's not the law.

THE COURT:  Okay.  We're not here to argue the letter brief, so I'm going to cut you off there.  I gave you both leeway there.

MR. HILL:  Yes, Judge.

THE COURT:  I understand the issue.  But you understand where I'm coming from.

MS. TOTTEN:  Your Honor, can I just add that there would be plenty of additional discovery that we would want to do, not just depose Mr. Hill.  I'm standing here thinking about all the discovery that I would want to do if I were to go to trial on 12 claims involving discrimination and retaliation, harassment.  There would be other witnesses that I would want to depose.  I would want to obtain all of the medical files and records.  There would be a quite a bit of discovery, your Honor.  So --

MR. HILL:  Well, we can stipulate to that.  I mean, that's fine.  I've always wanted, you know --

THE COURT:  You shouldn't interrupt each other.

MR. HILL:  Yes, Judge.  I'm sorry.

THE COURT:  Let her finish.

MS. TOTTEN:  Yeah.  So while I appreciate your thought that that would mitigate some of the risk as it relates to the delay, it would put us in -- we would still be prejudiced, your Honor, I think significantly prejudiced by you granting the motion, but not also then entering in -- entering an amended scheduling order, your Honor.

THE COURT:  Okay.  So I'm going to draw your attention to your opposition brief at page 10, footnote one.

42

You argued that trying to amend to new causes of action in this situation required the Plaintiff to meet the standard for a motion for reconsideration, not a motion for leave. And you cite the Ruiz (phonetic) case.

MS. TOTTEN:  Correct.

THE COURT:  The Ruiz case, that was a case where the plaintiff had a 17200 claim dismissed with prejudice earlier in the case, and then filed a motion for leave to amend to reassert the exact same claim under 17200, right. It doesn't stand for the proposition that a claim that's dismissed by an earlier order somehow requires reconsideration when you're trying to raise a new claim under a different law, right, which is what happened here. So how does Ruiz and how does that -- I guess that motion for reconsideration argument doesn't seem to have support from the very case you cite.

MS. TOTTEN:  Your Honor, I would have to refresh on Ruiz with all due respect.  I apologize.  It was in the footnote.  It's not a case that I read --

THE COURT:  The Court reads the footnotes.

MS. TOTTEN:  -- before this particular hearing.  I appreciate that, your Honor.

THE COURT:  And the case is cited in the footnotes.

MS. TOTTEN:  I believe -- I don't know, your

43

Honor.  I would have to go piece it together.  I thought that it also related to the -- let me think of the name of the other case.  Hold on -- the <u>Johnson vs. Mammoth</u>.  And maybe I'm mixing my theories up here.

THE COURT:  You are.

MS. TOTTEN:  Yeah, I am mixing my theories up?

THE COURT:  You are mixing your theory.

MS. TOTTEN:  Okay.

THE COURT:  So -- because the only case you really cited for this argument that the reconsideration standard applies was <u>Ruiz</u>, and I just -- okay.  I --

MS. TOTTEN:  Your Honor, I apologize for that.

THE COURT:  Okay.

MS. TOTTEN:  Your Honor, I did want to point out just -- it is -- this is in our brief, and so you're probably already aware of it, and it goes to about, I don't know, five points ago, but I think it is important that the new counsel's different strategy is not sufficient to excuse delay, your Honor.  And that is on page 12 of our brief in the <u>Sterling Savings Bank vs. Poulsen case</u>.

THE COURT:  Okay.  On that -- in that regard, Mr. Hill -- well, let me ask it this way.  You didn't provide a lot of detail on what your attorneys -- what they thought about or -- when -- you know, going back to the D.C. attorneys --

44

MR. HILL:  Right.

THE COURT:  -- right?  And Mr. Curls, what he thought and -- on whether or not to assert the federal claims, whether they were investigating how much time that they spent working on that.  And I assume -- and I'm just going to ask the question.  I assume you didn't put in that kind of information because of attorney/client privilege and work product concerns.  Is that right?

MR. HILL:  That's right.  I mean, I hold the privilege.

THE COURT:  Yeah.

MR. HILL:  I can freely give it.  I can -- I mean, look, I don't -- I'm not an employment attorney.  I was very clear here --

THE COURT:  Yeah.

MR. HILL:  -- to this Court.  You know, I'm doing this obviously because I have to at this point until I get new counsel.  But to the extent that, you know, I took, you know, my former counsel's advice, they wanted to get into superior court for strategic reasons that I won't get into. Workday has what's known as snap removal, which a lot of big companies and big law firms, like the one I used to work at, certainly at Orrick, have.  They monitor dockets, they have a bunch of money to do it.  And they do.  And they -- so they removed within, like, seconds.  We ended up --

45

thankfully, because it certainly could have been worse -- we ended up before your Honor in federal court.  And so we pressed on -- we pressed on with what we had.  And I wasn't thinking about, you know, strategically whether or not we should have brought in federal claims or not because I'm just -- you know, I, you know, have a very specific background.

THE COURT:  And I don't want to -- I mean

MR. HILL:  And so that's something that I was thinking about.  When we got -- when I -- we had the new lawyers, obviously, your Honor sanctioned them.  I won't speak badly about them.  But I will say that it is inaccurate in their brief when they suggested that they came up with the theory to amend.  That's something that I obviously brought to them and said, "Hey, listen, I want to amend, I want to bring in these claims."  That's something that we did.  They took my advice, and then we made it very clear to both the Court and Workday that that's something that we were going to do.  We never hit the ball on that. And then we subsequently did.

THE COURT:  I don't want you to go into more detail --

MR. HILL:  Yes, Judge.

THE COURT:  -- on your attorney/client communications.  I don't want to hear an argument from this

46

side that you're gone into detail to the point where there's a waiver.

MR. HILL:  Yes, Judge.

THE COURT:  Okay.  All right.  So -- but without going into a lot of detail and the substance about what the attorneys thought about the federal claims or when they first could have or were actually -- because I don't know, maybe, you know, Mr. Curls was thinking about them.  And this goes to diligence, right?  I mean, you certainly could have put in summaries of time records or billing sheets or something like that that it -- that people do, like, in a fee application where they don't waive privilege, but to establish kind of the course of work.  And you didn't really do that, right?

MR. HILL:  I don't sort of quite understand.  I'm sorry, Judge, I didn't understand what you --

THE COURT:  So part of the -- part of diligence is how -- you know, how hard and how much time were your attorneys spending on thinking about whether or not to file these federal claims earlier, right?

MR. HILL:  Right.

THE COURT:  And, I mean, based on the record we have, right -- I mean, the first time the Defense knew about it was in late June, early July of this year, right?  And the -- and so they've been arguing throughout that, you

know, if you've all known about the same operative facts since the D.C. complaint in '23 or even earlier, then it's certainly -- I think they're arguing implicitly that it's conceivable that your attorneys even back then should have or could have and maybe did know about the possibility of filing federal claims. I don't want you to divulge anything privileged here, right?

MR. HILL: Right.

THE COURT: And so part of the -- part of -- what I'm asking is, you could have, in part, either in a reply brief or in your opening brief, said, you know we -- it -- I mean, I've seen motions where they say, "This is a very complicated issue. We've been working on it for a long, long time" --

MR. HILL: Right.

THE COURT: -- right? "And here are the billing -- here are summaries of the billing records to show that we were trying to get to the point where we could have done it." Now, you didn't do that. That wasn't your approach here. I just want to make sure that --

MR. HILL: Well, I'm not sure --

THE COURT: Yeah.

MR. HILL: -- I'm not sure what former counsel did.

THE COURT: Yeah.

48

MR. HILL:  I can certainly provide -- so I had a --

THE COURT:  Well, I don't want you to disclose your work product.

MR. HILL:  No.  No, no, no, no.  This isn't privileged.

THE COURT:  Yeah.  Okay.

MR. HILL:  This isn't privileged.  After counsel withdrew --

THE COURT:  Yeah.

MR. HILL:  -- while I was looking for (indiscernible) --

THE COURT:  Yeah.

MR. HILL:  -- I had a website.  They asked me about it in discovery.  I was sending out mailers to -- on -- places like Facebook groups and all.  They found one and asked me about it.  And I told them.  I even had a -- I put together sort of a brochure for potential attorneys saying, "Hey, listen, this is federal claims.  You know, what I want to do is bring in 1981, 1983."  Again, nothing is privileged because, again, this was something I was publicizing.

THE COURT:  Okay.

MR. HILL:  So to the extent that what your Honor is saying is -- you're saying these are the hours that you would have thought about or, you know, spent doing this, I

49

can show you a spreadsheet of all the attorneys that I reached out to.  I can show you the dates that I reached out to them.  I can tell -- show you the answers.  I can pull it up on my cell phone.  We can print it here.  I can also show you the outreach that I had.  So those are hours that I was thinking about it.  And now I'm subsequently --

THE COURT:  Okay.

MR. HILL:  -- my own lawyer.  So I can show you that --

THE COURT:  Right.

MR. HILL:  -- that's something I was doing.

THE COURT:  I don't think we need to do that at this point.  But just -- you're representing that you started thinking about this and publicizing it after the March --

MR. HILL:  Absolutely.  As soon as Mr. Curls withdrew, I can show you the dates and times of about 200 lawyers that I spoke with, and in fact I think I interviewed with at least 30 or 40 of that.

THE COURT:  Okay.  That's all I need.

Okay.  So on a practicality issue, I mean, if the Court denies the motion for leave to amend here, it's certainly not out of the question that the Plaintiff here could simply decide to file these claims in a brand new lawsuit, a separate lawsuit, and then we've got these causes of action

sitting in a separate lawsuit and somebody is probably going to file a motion to relate the cases, and possibly you're all back in front of me anyway in two consolidated cases, or at least related cases.  So as a practical matter, what's the harm in granting the leave to amend if that's one likely or possible outcome here?

MS. TOTTEN:  Your Honor, the claims would be inappropriately brought in another action.  They should have been brought in this action.  And so we believe that he would not be able to -- he would be unjustified in doing that.  It's --

THE COURT:  What doctrine is that?

MS. TOTTEN:  I would ask for the opportunity to do additional briefing, but the Kaiser case that we cite in our papers is -- I think it would really be more of against public policy to allow him to litigate this entire case and then basically go litigate it again in another case.

THE COURT:  Well, I -- I mean, maybe I've got personal experience speaking too much, but I -- certainly, in the patent world, you know, if a plaintiff files a patent infringement case and it goes on and it goes through discovery, and then late in discovery or late in the case, they find out that the defendant has new products that they think also infringe, right, judges often say, "Well, it's too late to add those to the case because we've gone through

claim construction, everything," but nothing stops that plaintiff from filing a new patent infringement case on the same patent, same defendant, just newer products, right?  So it's essentially the same legal claims, but different -- you know, different facts to the extent it's newer products, with the same infringement theory.  I'm not aware of a legal doctrine that bars a subsequent case where -- especially where the plaintiff is not allowed in the first case to raise the claims that they want to raise in the first case, right?  So --

MS. TOTTEN:  I would request additional briefing, your Honor.  The case that I'm referring to --

THE COURT:  Yeah.

MS. TOTTEN:  -- is on page nine of our brief.

THE COURT:  I'll take a closer look at that, but --

MS. TOTTEN:  And you can, your Honor.  And I don't want you to -- I don't want you to think that I am arguing that there is res judicata, your Honor, because I'm not.

THE COURT:  Well, there can't be because there's no judgment --

MS. TOTTEN:  I'm not, your Honor.

THE COURT:  Yeah.

MS. TOTTEN:  Correct.  But that -- in that case, your Honor, the -- it's a very similar set of facts to this

52

case, except there was actual res judicata because the motion -- the original motion was granted as to the entirety of the case, so there was res judicata.  And then the federal claims were sought to be brought in a later case, and the court said that was inappropriate, your Honor.

THE COURT:  Okay.  I'll take a closer look, but I don't think that's the situation.  So, not to commit you, but have you thought about -- you know, this goes to my -- I mean, have you considered if I deny the motion to leave to amend that you'll just file the federal claims in a brand new lawsuit?

MR. HILL:  Yeah, I would certainly have that -- so I'm now -- I'm no, you know, expert on issue preclusion or claim preclusion.  I haven't looked into them.  I mean, I'm certainly aware of res judicata.  Look, to the extent that there's a legal avenue for pressing my claim, either through -- whether it's some sort of interlocutory appeal, which I hate to do, or filing again the claims that would -- you know, in another court, which, again, would probably be -- just be sent right back here, I certainly would (indiscernible).

THE COURT:  Okay.  Since you've asked for it, I'm going to grant you leave to file a two-page supplemental brief on this issue.

And, Mr. Hill, you get a two-page response.

53

MR. HILL:  Yes.

THE COURT:  Yours is due in a week, and yours is due a week after, okay.

MR. HILL:  Absolutely.

THE COURT:  So what are those dates?  So today is the 18th.  So September 25th for the Defendants' supplemental brief and October --

THE CLERK:  2nd?

THE COURT:  -- 2nd for the Plaintiff's supplemental brief.  All right.

MR. HILL:  Quick question, Judge.

THE COURT:  Yeah.

MR. HILL:  That would be the -- the spacing would be normal federal rules spacing?

THE COURT:  Normal -- it's not letter briefing. We're not doing discovery letter briefing.  This is normal briefing.

MR. HILL:  And I'm sorry, can you say the date again for me?  October?

THE COURT:  October the 2nd.

MR. HILL:  October.

THE COURT:  Thursday, October 2nd.

MR. HILL:  October 2nd.

THE COURT:  Okay.  Okay.  All right.  Anything further from Plaintiff?

54

MR. HILL:  No, Judge.

THE COURT:  Okay.  Subject to the supplemental briefing, are we submitted?

MR. HILL:  We are submitted.

THE COURT:  Okay.  Anything further from the Defense?

MS. TOTTEN:  Nothing, your Honor.

THE COURT:  Okay.  Subject to the supplemental briefing, are you submitted?

MS. TOTTEN:  Yes, your Honor.

THE COURT:  Okay.  We are submitted but for that supplemental briefing.

And then I know we're coming back in November for a case management conference, and then I forget if I set a deadline for you to submit a case management conference statement in advance of that.  Is that in the schedule?  I want to make sure it is.

MS. TOTTEN:  Yeah, I have a recollection --

THE COURT:  Okay.

MS. TOTTEN:  -- that you did do that.

THE COURT:  Okay.

MS. TOTTEN:  And we would certainly initiate that process, your Honor, regardless.

THE COURT:  Because --

MR. HILL:  I'll say, though, before the 4th, we do

55

have a hearing before Judge Cisneros on the 3rd.  Is that still in effect or no?

THE COURT:  That's up to her.

MR. HILL:  Okay.

THE COURT:  So if she hasn't taken it off calendar, then -- and certainly without, you know, going into the details of settlement, if you can settle the case, you should keep talking to her.  So that's certainly something to think about as well.

Given a lot of the arguments about scheduling and all that, I do want you to kind of, in a fulsome way, address, you know, case scheduling and how you think things ought to go forward in the case by the time you get to the case management statement, okay?

MS. TOTTEN:  Yes, your Honor.

THE COURT:  Okay.

MR. HILL:  Yes, Judge.

THE COURT:  All right.  Thank you.  I want to thank you both for your arguments.

MS. TOTTEN:  Thank you.

MR. HILL:  Thank you so much.

THE COURT:  You were well prepared.  Thank you.

THE CLERK:  Court is adjourned.

(Proceedings adjourned at 3:43 p.m.)

*Echo Reporting, Inc.*

56

CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

Echo Reporting, Inc., Transcriber

Tuesday, September 23, 2025

*Echo Reporting, Inc.*