UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Peter H. Kang, Magistrate Judge

HILL,                          )
                               )
            Plaintiff,         )
                               )
vs.                            )   No. C 23-06558-PHK
                               )
WORKDAY, INC., et al.,         )
                               )
            Defendants.        )
_____)

San Francisco, California
Tuesday, November 4, 2025

TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
RECORDING 11:18 - 11:53 = 35 MINUTES

APPEARANCES:

For Plaintiff:
                               5 Kaywood Court
                               Silver Spring, Maryland 20905
                          BY:  ANTHONY C. HILL, PRO SE

Former Attorney for
  Plaintiff:                   Webb Law Group, APC
                               466 West Fallbrook, Suite 102
                               Fresno, California 93711
                          BY:  LENDEN F. WEBB, ESQ.

For Defendants:
                               Orrick, Herrington &
                                 Sutcliffe, LLP
                               The Orrick Building
                               405 Howard Street
                               San Francisco, California
                                 94105
                          BY:  KAYLA D. GRUNDY, ESQ.


                  (APPEARANCES CONTINUED ON NEXT PAGE)

*Echo Reporting, Inc.*

For Defendants:

Orrick, Herrington &
  Sutcliffe, LLP
400 Capitol Mall
Suite 3000
Sacramento, California 95814
BY:  JULIE A. TOTTEN, ESQ.

Transcribed by:

Echo Reporting, Inc.
Contracted Court Reporter/
Transcriber
echoreporting@yahoo.com

Tuesday, November 4, 2025                          11:18 a.m.

P-R-O-C-E-E-D-I-N-G-S

--oOo--

THE CLERK:  Your Honor, now calling Civil Matter 23-6558, Hill versus Workday, Inc., et al.

Counsel, if you could please approach the lectern and state your appearances, beginning with the Plaintiffs.

MR. HILL:  Good morning, your Honor.  Anthony Hill, Plaintiff pro se.

THE COURT:  Good morning.

MS. TOTTEN:  Good morning, your Honor.  Julie Totten and Kayla Grundy here with me today, appearing on behalf of Workday.

THE COURT:  Good morning.

MS. TOTTEN:  Good morning.

THE COURT:  Mr. Webb here?

MR. WEBB:  Yes, your Honor.  Former counsel for Mr. Hill.

THE COURT:  Okay.

MR. WEBB:  (Indiscernible.)

THE COURT:  Yeah.  Let's take care of you first so you don't have to sit through the Case Management Conference.  Why don't you approach the --

MR. WEBB:  Sure.

THE COURT:  -- the lectern.  So, we're -- we

started the order to show cause hearing with regard to Mr. Webb. And, so, I've got -- received your declaration --

MR. WEBB: Yes, your Honor.

THE COURT: -- in response to the -- the further order to show cause, and I guess the question I have is prior -- I know now you've done things to address the previous sanctions issues and the problems with AI use at your firm.

Prior to your firm starting to use CoCounsel and the AI tools, had you done any training or put in any kind of warnings to staff and associates about the problems with AI?

MR. WEBB: Yes.

THE COURT: Okay.

MR. WEBB: So, our firm, your Honor, I believe is robust as far as training. So --

THE COURT: Um-hmm.

MR. WEBB: -- every morning, we have half an hour of tentative rulings where people read for 15 minutes and then share didactically for 15 minutes with one, maximum two other people. That's throughout the tenure of the firm. We have 35 hours of video training before someone darkens our door. We do cross-trainings where I pay people not just to sit in the cross-training where each ones shows what they learn, and a huge focus is AI, but I'm paying for their food every day at lunch. I'm paying for them to teach each

other, and I pay a penalty hour for that because I'm breaking the -- the penalty hour rule.  And I do that once a week, your Honor, with a separate session with the law clerks and attorneys and then the rest of the staff separately.  I flew 10 people to ClioCon three weeks ago, and probably 60 to 70 percent of the sessions at ClioCon in Boston were regarding AI, what do we do with AI, how do we make it better.

So, in answer to your question, your Honor, in -- anywhere from like Westlaw sites even before I -- I knew that your Honor was concerned after Ms. Cervantes came here the first time, I attached an email where I'm telling the Westlaw representative, Hey, this is your software.  Why are we getting hallucinated cases inside Westlaw?

THE COURT:  Right.

MR. WEBB:  And, so, I've been actively pursuing this, your Honor.

THE COURT:  Okay.

MR. WEBB:  This is not a small thing to me.

THE COURT:  So, I'm -- if you've been actively working with Westlaw and have you read the Disclaimer of Warranties and Liabilities from the Thomson Reuters website?

MR. WEBB:  I have.

THE COURT:  Just for the record, I'll read it.  Thomson Reuters, which is the provider of Westlaw and

CoCounsel, which is the tool that Ms. Cervantes used:

"Thomson Reuters provides this website as is, without any warranty of any kind expressed or implied, including warranties with regard to any content or software that has been modified by -- in any way by anyone other than, without the express approval of Thomson Reuters. By accessing, browsing or using this website, you" -- that is, you the user -- "acknowledge that provision of content and software entails the likelihood of some human and machine errors, delay, interruptions in lawsuits, including lawsuit data."

MR. WEBB: And I can address that if you'd like?

THE COURT: Yeah. So, I mean, we've all seen their marketing material for their AI tools, but whether they -- when it comes down to a legal liability and their -- their actual position on this, what -- what do they say to you? We know what they're saying to the public in their disclaimer.

MR. WEBB: They say one thing there, but the sales team and the marketing team, for instance, Mark Strange (phonetic), who I've worked with for over 12 years --

THE COURT: Yeah.

MR. WEBB: -- he's been the sales representative for us --

THE COURT: Yeah.

MR. WEBB: -- says no way, there's no hallucinations. It's not possible. So, I have two things that we've worked on with our firm specifically. One is there's a software out there by the person who started Avo.com called Clearbrief. And it's another way to take what you have, dump it into another program, not just check the citations but actually check for the standing, does that stand for what you're saying it stands for. So, that's one thing.

The second thing is just simple, read the case and make sure that it's right. And that's something with Ms. Cervantes -- we handed it out to every attorney and every law clerk in our firm. We have 25 people. I'm doing my best, your Honor, to be diligent. I canceled a vacation to be here, and I take this very seriously, and I recognize my mistake. If my name's on the pleading, even if I didn't do the research, I should be more familiar with it, and I apologize.

THE COURT: Yeah. I mean, so, you said it in the declaration. So, you understand under Rule 5.1 of the California Rules of Professional Conduct, you have

responsibilities as the manager or the supervising --

MR. WEBB: A hundred percent. My name on the door, your Honor.

THE COURT: Right. Okay. And would you agree that at the time Ms. Cervantes put the hallucinated citations into the briefing that has your name on it, you didn't read the brief, you didn't check it yourself, you didn't do everything that a prudent managerial lawyer would do to supervise her use of the tool?

MR. WEBB: I -- I should have done that, your Honor, and I wish -- I have 25 people in my firm, plus off shore people.

THE COURT: Yeah.

MR. WEBB: And it's -- I'm fighting to do my best.

THE COURT: Well, your duty is to put -- I mean, okay. So, one thing, you've probably read my standing orders. I mean, I do encourage senior lawyers to send junior lawyers like other lawyers in your firm, you say to send -- send your juniors to hearings and things like that so that it's a way to get training, right. And the same thing goes to briefs. I mean, you do need to rely on them, but they do need to be trained, and that's the way they learn to get better.

MR. WEBB: A hundred percent.

THE COURT: And Ms. Cervantes is not your partner.

So, there's a reason why she's, you know, just an associate yet, and --

MR. WEBB: And she's been with me for seven years, your Honor. I trained her. She stayed with me all the way through law school --

THE COURT: Right.

MR. WEBB: -- as a law clerk, all the way through full time in the summers. She's done trials with me. She's done arbitrations with me. She's a beast for a younger attorney.

THE COURT: Okay. Well, I did -- you saw my order. I did take into account her acceptance of responsibility and her --

MR. WEBB: Yes.

THE COURT: -- candor, and I do take that into account with respect to yourself as well. Okay. Well, I've got your declaration, and I've got her supplemental declaration. Has she finished with CLE yet? I mean, she says it's -- she said it's ongoing. Do you know if she's completed it yet?

MR. WEBB: I'm not aware, but the morning after your staff emailed me this, I -- I sent you an email right away. I filed my declaration the next day. So, I'm sure that anything you've ordered her to do, she's done. I know she's handed out your order to everybody on the staff,

including the law clerks.

THE COURT: Okay. All right. I appreciate that, and I appreciate all the efforts you've been taking since this all came to light. You're not the first law firm to run into this. You're not the first lawyer even in my court to run into this, and one -- this is kind of old school. The one proposal I've read recently is to require -- and this is really going back in the day when I was -- before -- even before Lexis and Westlaw as a junior -- is requiring lawyers to actually attach a declaration attaching copies of every case they cite in their briefs, right, because that would pick up whether or not the citation is false or not, and to do that kind of overloads the document, but I'm -- anyway, if I had a standing order that required that for all briefs, in preparing that kind of declaration, it would have been picked up by your firm, right?

MR. WEBB: Right.

THE COURT: In my own -- but on this side of the bench, I'm considering what other procedures to put in place to kind of force -- you know, to head these kind of problems off at the pass in the future for folks as opposed to acting with that.

MR. WEBB: I'm hoping that doubling up with the Clearbrief program, your Honor, with Westlaw --

THE COURT: Yeah.

MR. WEBB: -- and we've also stepped up our Westlaw subscription to -- and it costs a little bit more money.

THE COURT: Yeah.

MR. WEBB: So, I'm hoping that with all these procedures in place, that we have something that's double protected.

THE COURT: Well, I -- I hear what you're saying. Okay. So, I'll -- I'm going to discharge the order to show cause as to you, but I am going to issue an order. I'm probably going to order you to do some CLE just yourself personally.

MR. WEBB: I'm happy to do that, your Honor.

THE COURT: And it will be similar in nature to the order I -- when I discharged the OSC as to Ms. Cervantes.

MR. WEBB: That's fine with me.

THE COURT: Okay. So, thanks for coming in. Thanks for all you've been doing and being candid in your -- in your response here and changing your travel plans. I appreciate that.

MR. WEBB: Happy to do it. Does your Honor want us still on the -- the electronic notification for this case or --

THE COURT: Why don't you stay on because you need

to see the order that comes out of this. It will set some deadlines and all that, but given that you weren't on -- you weren't getting things by ECF, that's why I had to make sure the last order was sent to you by email. I'll make sure the staff does that as well.

MR. WEBB: Thank you. Appreciate it, your Honor.

THE COURT: Okay. Thank you. Thank you.

Okay. Okay. So, let's move to the Case Management part of the hearing today.

So, you all didn't file a case -- an updated Case Management Statement. I didn't see anything on the docket. So, I'm just going to go on the fly here a little bit on what -- what your thoughts are in terms of scheduling and resetting some dates. So, I'm going to tell you what I have in mind, and you can tell me whether those dates work or not. Okay.

As I said in the order denying Plaintiff's motion for leave to amend the complaint, if the deadlines have passed, I'm not going to reset those. So, those are -- those are passed, right, other -- unless I modify them explicitly here. Okay.

So, I'm assuming, other than the ongoing dispute as to your discovery motion, there's no fact discovery that needs to be done?

MS. TOTTEN: Correct, your Honor.

MR. HILL: Well, no additional, your Honor, but obviously there's a -- there's a bunch of stuff that should have been produced under the -- the current discovery schedule and supplemented per Rule 26. They -- Workday did provide some -- a bit after the August 22nd cutoff date, but what they did is they retroactively asserted privilege. And, so, what it does -- and this will be in my future filings, but what they did is they withheld certain documents that should have been produced. I think it just seems like they don't want them out if it's embarrassing, whatever. And, so, they asserted sort of a retroactive privilege for somebody who wasn't -- wasn't giving, you know, legal advice and wasn't part of the email tranche.

And then they also, your Honor, partially redacted some of the stuff they gave me. They produced the privilege log on October 27th, the same day, like after I filed my -- my opposition to their motion for summary judgment.

So, there -- there are definitely issues. I -- I understand no new discovery, but the old discovery that should have been produced under the -- the original orders have not -- have not been sufficiently handed over. And, so, I'm going to have to --

THE COURT: So, if you have a dispute to clean up anything from the fact discovery period --

MR. HILL: Yes.

THE COURT: -- obviously, assume you all -- not assume -- you all have to follow my discovery dispute resolution procedures on how to work it out.

And is Workday, are you done with your privilege logs? It's a little late to be serving privilege logs in October.

MS. TOTTEN: We -- we are done, your Honor. It was a very small privilege log. We -- Mr. Hill had pointed out recently that there wasn't one, and we recognized that that was accurate. And, so, it has four or five items on it, your Honor, all deals with the fact that a complaint that he made was investigated under privilege.

THE COURT: Okay.

MS. TOTTEN: That's it.

THE COURT: Well, if you have a -- Mr. Hill, if you think you've got a dispute, you want to raise it -- raise it in the proper way and follow the -- you know, the (h)(2) -- (h) -- paragraph (h) procedures in my standing order, and hopefully you can work it out because, you know, you'll be able to work a lot of things out.

Okay. So, other than cleanup on discovery disputes, there's no -- no more fact discovery.

One question I had, but I think I raised this at maybe the last one -- last meeting we had -- are you all planning on using expert witnesses? Have you designated any expert, at least identified any experts?

MR. HILL:  Not yet, your Honor.  I think it was going to necessarily depend on probably the -- the amendment motion and the reconsideration, if those -- you know, to the extent those other claims get in here versus in another Federal Court, but if they do get in here -- and I think -- it will be in my reply.  I'll tee it up for you obviously.  There's a right to sue letter that came out on August 13th.  So, after the -- the motion to amend.  And, so --

THE COURT:  August 13th of this year?

MR. HILL:  August 13th of this year.

THE COURT:  Okay.

MR. HILL:  And, so, I couldn't have brought -- you know, by law, I couldn't have brought most of the federal claims before August 13th.  And, obviously, I sought leave to amend on the 6th of August.  So, you know, obviously, it's not just the late produced and the -- and the post cutoff discovery issues that I raised in the original motion for reconsideration, but it's also -- and this will be in my reply.  I saw your Honor's order -- but -- and I'll attach it as -- as an exhibit.  There's also the late right to sue letter.  And, so, there's nothing that I could have -- could have done.  It wasn't ripe until August 13th.

THE COURT:  This is the first I'm hearing about right to sue letter.

MR. HILL:  Absolutely.

THE COURT:  What's your --

MS. TOTTEN:  I believe it --

THE COURT:  Was that a surprise to you or --

MS. TOTTEN:  No.  I believe it came up, your Honor, in the last hearing, but I -- I could be wrong.

THE COURT:  I don't remember it coming up previously, but I -- I could be wrong too.

MS. TOTTEN:  No, but I'm not surprised by it, and Mr. Hill for the -- requesting the right to sue letter from the EEOC at any time, your Honor.

THE COURT:  Okay.

MS. TOTTEN:  That's within his control, as -- as you know.

MR. HILL:  Your Honor, I mean, obviously, the EEOC's going to do what it's going to do.  I can show you emails -- and I'll attach those as well -- where I was asking, begging for a right to sue, and they obviously didn't -- the understanding that I got from the E -- one of the EEOC people that I was able to speak to about six months ago is obviously because of the Mobley case against Workday, they are investigating Workday.  And, so, that's why they held my claim, which was similar -- or sufficiently similar to I think raise some alarms within the agency.  They were looking at this, and that's why it was this sort of strange thing where I -- you know, obviously, I brought the

administrative complaint. I think it was in August -- I'm sorry -- April 2023, and they've been investigating it all the way up until they gave me a right to sue.

Finally, I said, Hey, listen, it's been past 180 days. As a matter of right, please give it to me, and I think I have two or three emails that I can -- I can send your Honor. So, I mean, the idea that, you know, I wasn't diligent even under Rule 16 standard because the EEOC is investigating, which is obviously -- it's their -- its prerogative, and I could not have by right sought relief under the Federal Claims before the right to sue letter. There's nothing I could do.

THE COURT: I'll look at in the briefing, and we'll deal with it at that point.

MS. TOTTEN: Well, I have a clarifying question then, your Honor. Mr. Hill just said he's going to bring it up in his reply brief, your Honor. He did not bring it up in his requested moving papers.

MR. HILL: Well, I --

THE COURT: I mean, you are the -- you are the moving party. I mean, if you knew about it in August, why didn't -- why didn't you put it in your motion for reconsideration?

MR. HILL: Well, because, your Honor, I didn't even sort of realize it. It hit me after I filed the motion

for reconsideration. I can supplement the record -- and I can find an administrative hole, but if the idea is, Well, hey, you should have -- you should have put it in the original -- the original motion for reconsideration and you didn't -- it would be disregarded in the reply. I don't know on what sort of legal basis that that -- that -- that would be a very strange --

THE COURT: Well, I mean, technically, it's not strange. You know, as the moving party, you raise your best arguments. They oppose, and then the reply brief, it's called a reply because, you don't -- you're not supposed to raise completely new theories and arguments. You're supposed to reply -- you reply to what they have said in their opposition.

MR. HILL: Right. So, a couple of things. One, I'm a pro se litigant --

THE COURT: Yeah.

MR. HILL: -- with memory cognitive challenges. I have pled that in the first amended complaint and the original complaint. So, lawyer or not, pro se litigants are supposed to be given some deference, particularly, respectfully, because -- particularly, respectfully, because your Honor knows that I have --

THE COURT: I'm going to -- if you've got an argument you want to make based on this EEOC letter and the

course of conduct there --

MR. HILL: Right.

THE COURT: -- I'm going to give you leave to file a supplemental opening brief on your motion for -- motion for leave.

MR. HILL: Yes.

THE COURT: All right. But you got to do that this week.

MR. HILL: Yes. Absolutely. I can -- I can do that. And then, secondly, I just want to say that, you know, besides the deference to pro se litigants, these are federal civil rights claims. The Ninth Circuit is quite clear that I'm supposed to be given -- and I think I put this in the original brief -- particularly -- I think it's called particular latitude or particular deference, you know, to get my civil rights claims in on the merits. So, these are -- they're supposed to be given even more deference than you would normally give --

THE COURT: But, as we said I think at the last hearing, it's one thing if -- if the claims are before me and -- and all that. If you'd moved to amend when the case was earlier, right, I could have -- well --

MR. HILL: Well, because the -- the right to sue didn't come out until the 13th, and then the -- the motion to amend was August 6th, and I can -- you know, the docket

clearly shows that. So, I'm -- if -- and then also, they didn't produce the first discovery until August 15th, and then they produced in the last hours those 303 to 313 (indiscernible) emails. They produced those in the last hours of August 22nd. Then they produced another tranche of documents I believe -- I don't know the exact date but mid September. And then they produced their privilege log when I asked them for, you know, I think a week or two before. They produced their privilege log after my opposition to their summary judgment motion on October 27th. So, I could not have included the late-produced evidence, and I certainly couldn't have sued under the federal claims because they weren't ripe, and the law is clear. That's why the EEOC issues the right to sue. It gives you the right to sue letter.

THE COURT: I'm not sure why you didn't waive it in a supplemental brief on the original motion for leave to amend, you know, because you -- the motion's been pending for a while, right? And you've certainly had time to file -- at least seek leave to file a supplemental brief, right, because you've had that EEOC letter as of August, right, and I only issue the decision on the motion to amend fairly recently. And, so --

MS. TOTTEN: Friday.

THE COURT: Yeah. So, you did have time -- I

mean, you do know how to file things with the Court, and you do know how to bring things to my attention, right.

And, so, like I said, I'm giving you leave to file a supplemental brief on your motion for leave for reconsideration, right, and you can make your arguments there.

But I guess I go back to one of the questions I had the last time we were together is what's the harm to you of filing a new lawsuit?

MR. HILL: Well, I -- I have a protected complaint.

THE COURT: Yeah.

MR. HILL: I've, you know, provided to Workday yesterday a 61-page brief, you know, and it will be filed in Maryland District Court because I have to. It's not a, sort of a threat thing or anything like that. I have obviously 90 days. So --

THE COURT: Yeah.

MR. HILL: -- by -- by calendar, it's like I think November 12th is the date that I have to file it. I'll file it next week in Federal Court. And, you know, those claims will either be decided in front of your Honor or they'll be decided in Maryland. Maybe the Maryland court will, I don't know, transfer it. I'm not quite sure what the Court will do, but it will assert jurisdiction.

THE COURT: Up to the -- up to the judge.

MR. HILL: Absolutely, but they'll -- they'll be filed, and I have already drafted the --

THE COURT: You're aware of the deadline you need to file that complaint. You -- you need to --

MR. HILL: Yeah, November 12th.

THE COURT: -- hit the -- hit those --

MR. HILL: Oh, absolutely. It will be filed -- I'll walk it to the court and hand it -- hand it to the clerk.

THE COURT: Okay. You wanted to say something?

MS. TOTTEN: We did not receive anything yesterday. I'm not aware of any proposed new complaint by Mr. Hill. So --

MR. HILL: You know -- I'm sorry. I thought Judge Cisneros gave it to you.

MS. TOTTEN: No.

MR. HILL: No?

MS. TOTTEN: So, but it -- your Honor, of course you're going to do what you should do, but I don't understand why we are going to proceed in two different forums briefing on the same issues.

MR. HILL: May I hand this to her?

THE COURT: Sure. I mean --

MR. HILL: Okay. I'll just put a clip on it.

THE COURT: By the way, I take it the case did not settle yesterday. That is why you're here.

MS. TOTTEN: It did not, your Honor.

THE COURT: Okay. All right. So, whatever happens in Maryland or wherever he files the new case, you'll have to raise it with that -- that court, and we'll proceed here.

Do you need extra time to oppose the motion for reconsideration if I'm giving them 20?

MS. TOTTEN: Our brief is due on November 14th.

THE COURT: Yeah, I gave you plenty of time I thought.

MS. TOTTEN: Well, I -- I think that -- I mean, if you're giving Mr. Hill all of this week, to get his additional briefing in, that does cut us a little short, your Honor, and --

THE COURT: Right.

MS. TOTTEN: -- we would request some additional time.

THE COURT: So, your -- your opposition will be due on November 21st then.

MS. TOTTEN: Okay.

THE COURT: I'll give you that extra week.

And, Mr. Hill, your reply -- I'm not going to ruin your Thanksgiving. Your reply is due December 5th.

MR. HILL: Okay. Thank you, your Honor.

THE COURT: Okay.

MS. TOTTEN: Thank you, your Honor.

MR. HILL: You said -- I'm sorry -- December 5th?

THE COURT: Yes.

MR. HILL: Okay.

THE COURT: Yes. Okay. But, going back to the question that kicked all this off, on the state of the case as it exists currently, is either side planning on using expert witnesses?

MR. HILL: I may, depending on what happens on the -- the --

THE COURT: Well, I need to set deadlines to identify an --

MR. HILL: Well, I'll just say yes then, your Honor. Tentatively, yes.

MS. TOTTEN: Your Honor, the deadline for designating expert witnesses has already passed. And, so, no, neither side designated any experts, your Honor. And if the case stands as its current composition, neither side should be able to -- to --

THE COURT: Well, that's why I asked if --

MS. TOTTEN: -- call any expert witnesses.

THE COURT: -- if -- I'll tell you what. I'm going to put some deadlines here for experts, and if you all

want to -- Mr. Hill, the case is going forward as it currently stands. I haven't granted your motion in any way, shape or form. So, right now we're -- we're on promissory fraud. That's why we are.

MR. HILL: Yes, your Honor.

MS. TOTTEN: But, your Honor, why are we going to revisit the deadline on experts? I don't understand.

THE COURT: Because I'm not sure -- well, he just told me he's planning on using an expert, and you've got time between now and -- I'm going to keep the -- the trial date I set previously. So, you've got time to get experts done. I'm skeptical that he's going to actually use an expert. I mean, if it's just promissory fraud, I mean, it's up to him, but I'm -- I'm going to set that deadline. Okay.

So, by -- Mr. Hill, by Friday, okay, November 7th, you need to identify whether you've -- and provide the CV and identify which experts, if any, you're going to use in this case. Okay.

MR. HILL: What -- what date?

THE COURT: November 7th.

MR. HILL: Okay.

THE COURT: Okay. And this is going to be -- I don't know if you're planning on using any opening experts or experts in -- I don't know if there any issues on which you've got the burden of proof, but it -- it applies to both

sides.  If there's an issue on which you've got the burden of proof and you plan to use an expert, you need to identify them by November 7th.  Rebuttal experts, just identification due November 14th.  Opening expert report for the party with the burden of proof on an issue November 28th.  This is already set.  I'm just going to reconfirm this.  We're meeting again on December 4th at 1:30 for the hearing on Workday's motion for summary judgment.

MS. TOTTEN:  And, your Honor, your order -- maybe you were about to say this -- your -- your prior order on scheduling also says that that's the date for a preliminary pretrial conference.

THE COURT:  Yeah.  I'm going to move that because it's --

MS. TOTTEN:  Okay.

THE COURT:  -- it's --

MS. TOTTEN:  And I --

THE COURT:  That's why I'm changing --

MS. TOTTEN:  Thank you.  I wanted clarity about whether we were having that.  Thank you.

THE COURT:  Okay.  And --

MR. HILL:  And, your Honor, all of these -- I'm sorry to interrupt.  All of these dates that you're -- that you're telling us about, they're obviously going to be in -- in an order.

THE COURT: They are.

MR. HILL: Okay.

THE COURT: They are, but I -- I'm giving them to you now so you can tell me if they cause heartburn or if you've got a conflict or there's a serious problem with any of them. Okay?

MR. HILL: Yes, your Honor.

THE COURT: All right. December 4th, 1:30, in-person hearing on motion for summary judgment, Docket 173. Expert rebuttal reports December 22nd, and then expert discovery cutoff January 9th.

Last day to file any Daubert motions January 16th.

Mr. Hill, you did not file a summary judgment motion. I don't think you planned on filing any as the Plaintiff, but did you? I mean, the deadline for that passed.

MR. HILL: Oh, no.

THE COURT: All right. You're not going to do it?

MR. HILL: No.

THE COURT: Okay.

MR. HILL: There are plenty of material issues in dispute.

THE COURT: All right.

MR. HILL: As -- as your Honor states.

THE COURT: So, last day to file Daubert motions January 16th. Opposition to Dauberts January 30th. Replies

in support of <u>Daubert</u> motions February 6, and obviously all those deadlines become moot if neither party designates any experts. Okay.

All right. Joint preliminary pretrial readiness statement is due February 13th, 2026. The order we're going to issue after today will give you a little more detail on what I expect to see in that statement.

Okay. Conceptually, it's less -- less onerous than a final Pretrial Conference Statement, but it will have -- it will have to include confirmation that all your witnesses are ready and have been told about the trial dates, they're ready and available. You all and your lawyers and clients are all available and ready for the trial dates and that you're ready -- basically you're ready to go. That's called readiness. Okay.

MR. HILL: Right.

THE COURT: So, since it didn't settle yesterday, do you want me to set a deadline for any further ADR or is that even worthwhile, without going into the substance of what happened?

MR. HILL: Well, you know, your Honor, I think we -- well, obviously we had the settlement conference with Magistrate Judge Cisneros. She was wonderful, as always. Unfortunately --

THE COURT: She's wonderful.

MR. HILL:  Yes, she is.  We talked for a very long time.  Unfortunately, we didn't, you know, reach a -- a settlement.  I approached it in good faith.  I don't see the -- I don't know that it would be fruitful to set up, you know, another one of these things, but to the extent that -- you know, I'm always open in good faith to talk.  So, if your Honor thinks it's worthwhile, I will yield to the Court's better judgment.

MS. TOTTEN:  Your Honor, it would just be a deadline as last day to do that.  I don't see any harm in that, your Honor.

THE COURT:  All right.  So, certainly -- okay.  So, I'm going to set last day for any further ADR if the parties agree mutually to -- to do it.  Okay.  That will be February 18th.

MR. HILL:  Okay.

THE COURT:  Okay.  And that's formal ADR.  I mean, obviously nothing should stop you from directly negotiating and doing anything formal ADR, whatever you want to do.

MR. HILL:  Yes, Judge.

THE COURT:  And statistically we know most cases settle.  So, you know, I always keep hope alive there and certainly hope you're keeping at least the lines of communication open there.

All right.  So, we'll have the hearing on any Daubert

motions and the preliminary Pretrial Readiness Conference on February 19th at 1:30 here in person.

Does that date work for everyone?

MR. HILL: Yes, it works for me.

MS. TOTTEN: It does, your Honor. Thank you.

THE COURT: Okay. February 19th, here in person. All right. And that -- your -- your final Pretrial Statement, which is going to be more onerous. It will -- and I'll give you more detail as we get closer, but I think we have it's trial brief, witness list, exhibit lists, proposed voir dire, proposed jury instructions, proposed verdict forms, all the kind of things -- stipulations if you reached any. That will be due February 27th, 2026.

And what I would suggest, especially if you decide to forego any experts, is you've got plenty of time there to work on that stuff in the lead up to there and especially working on stipulations for authentication and admissibility of exhibits. That usually is something people will wait until the last minute to do, and it's easy to do if you get to it and if you do it in an orderly fashion.

All right. Last day to file motions in limine March 6th, 2026. Last day to file oppositions to motions in limine March 16th, 2026. I don't allow reply briefs on motions in limine because typically they don't require it, and then we'll have the Final Pretrial Conference on April

2nd, if that works, at 1 p.m.

MS. TOTTEN:  Same date it was before?

THE COURT:  Yes.

MS. TOTTEN:  Yes, your Honor, that works.

THE COURT:  Mr. Hill?

MR. HILL:  That works, your Honor.

THE COURT:  Okay.  At 1 p.m. or 1:30, do you have any preference there?

MS. TOTTEN:  No preference.

MR. HILL:  No.

THE COURT:  Let's say 1:30.  All right.  And then, like I said, we're going to keep the trial date.  So, we'll start trial on April 13th, 2026.  I'm going to set aside three days of trial, not including jury selection.  Again, we'll go over in more details how the jury selection works in this court.  We use a very robust survey process ahead of time.  So, it cuts down on the time for an actual voir dire and would limit most of the voir dire to -- appropriately, because you get a lot of information from the surveys.

MS. TOTTEN:  And, your Honor, is the survey a questionnaire that we participate in?

THE COURT:  You will see it, and you may have some opportunity to ask permission to add other questions but not a lot because it's a standard questionnaire we use for all -- all venires.

MS. TOTTEN: Thank you.

THE COURT: All right. And I'm going to set aside three days for trial, as I said. Given the scope of the case at this point, I don't think more than that is needed. And, as I said, not including jury selection.

MR. HILL: And, your Honor, these -- some of these dates, particularly like the trial date, three days, obviously it would add or delay the complexity of the federal claims or particularly their -- you know, some of them that came after -- I understand there's no right to sue neither for 1981, 1983. So, assuming that the Court, for instance, were to split the baby and say, Okay, the stuff that came out -- you know, the other claims that require the right to sue are in, the other two are out, we would obviously need a bit more than three days. So, it's -- your Honor's flexible about that?

THE COURT: Right now, because I haven't granted your motion --

MR. HILL: Right.

THE COURT: -- this is the schedule we have on the case as it currently exists. If and when I grant you leave to amend and I grant that reconsideration for leave to amend and if and when you file another motion and then I grant that and the nature of the case changes, we can -- you're certainly free and I'm sure I would expect you all to talk

with me about what to do about these deadlines and what would happen, the impact on the case at that point.

MR. HILL: Thank you.

THE COURT: But that's -- it's premature at this point.

MR. HILL: Yes.

THE COURT: Okay.

MR. HILL: I understand.

THE COURT: All right. And, you know, given your -- the deadline you stated for filing your protected complaint, things are going to move in a different court anyway long before we get to a lot of things here, I mean.

MR. HILL: Yeah. I made clear that -- the first couple of lines in the protected complaint that obviously, you know, it's not meant to circumvent your Honor, and it's just to protect, and to the extent that the Court wants to transfer it back, I'm happy --

THE COURT: You're the Plaintiff -- you're the Plaintiff. You choose your venue and your forum. You've already done that repeatedly in this case. You know, you make your choices.

MR. HILL: Yes, Judge.

THE COURT: And, as I said, if you file in a different court, it's up to that judge what they want to do in terms of changing the venue or transferring it. I'm sure

one of you or maybe neither of you, but one of you could raise that with -- with that judge.  Okay.

All right.  So, do all those dates work?  I just want to --

MS. TOTTEN:  Yes, your Honor.

THE COURT:  -- make sure they're all okay.  Okay.  All right.  Since we're not going to get together -- well, we'll get together again in December.

So, that December 4th hearing, let's make that also kind of just a follow-up status conference because I do want to make sure that whatever discovery -- lingering discovery disputes you have are hopefully resolved by then --

MR. HILL:  Absolutely.

THE COURT:  -- but, if not, teed up to me so we can get them resolved.  Okay.

MR. HILL:  Very important.

THE COURT:  Because I don't want any lingering fact discovery disputes much past that date because we're -- you know, we're starting to get close to the trial at that point.

Okay.  So, that's December 4th.  On December 1st, file a very short two-page updated status report to me on the status of ongoing discovery disputes and resolving the same and anything else you think you want to talk about in terms of the case management at the December 4th hearing.  Okay.

Two pages evenly divided between the parties.

(Pause.)

THE COURT:  Okay.  Okay.  Anything else from your end, Mr. Hill, that we need to talk about today?

MR. HILL:  No, your Honor, but thank you so much for your time.

THE COURT:  Okay.  Thanks for coming out.  Anything else from Workday?

MS. TOTTEN:  No, your Honor.  That's all.  Thank you.

THE COURT:  Okay.  Then I'll see you in about a month, right.

MR. HILL:  We will be here with bells on.

THE COURT:  Okay.  Thank you.

ALL:  Thank you, your Honor.

THE CLERK:  Court is adjourned.

(Proceedings adjourned at 11:53 a.m.)

<u>CERTIFICATE OF TRANSCRIBER</u>

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

Echo Reporting, Inc., Transcriber

Monday, November 10, 2025