UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Peter H. Kang, Magistrate Judge

HILL, Plaintiff,

vs.

WORKDAY, INC., et al., Defendants.

No. C 23-06558-PHK

San Francisco, California
Wednesday, January 21, 2026

TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND RECORDING 11:10 - 11:40 = 30 MINUTES

APPEARANCES:

For Plaintiff:
5 Kaywood Court
Silver Spring, Maryland 20905
BY: ANTHONY C. HILL, PRO SE

For Defendants:
Orrick, Herrington & Sutcliffe, LLP
400 Capitol Mall
Suite 3000
Sacramento, California 95814
BY: JULIE A. TOTTEN, ESQ.

Transcribed by:
Echo Reporting, Inc.
Contracted Court Reporter/Transcriber
echoreporting@yahoo.com

Wednesday, January 21, 2026 11:10 a.m.

P-R-O-C-E-E-D-I-N-G-S

--oOo--

THE CLERK: Now calling civil matter 23-6558, Hill versus Workday, Incorporated, et al.

Counsel, please approach and state appearances for the record, beginning with the Plaintiff.

MR. HILL: Hello. Anthony Hill, Plaintiff.

THE COURT: Good morning, Mr. Hill.

MR. HILL: Good morning.

MS. TOTTEN: Good morning, your Honor. Julie Totten from Orrick, appearing on behalf of Workday. And I have my client, Ruth Bolden, from Workday here with me as well today.

THE COURT: Good morning, Ms. Totten. Good morning, Ms. Bolden.

Okay. So thanks for your updated status statement. And then I think there was actually another status statement back in December that I responded to in a text order.

Let me turn to the in-camera review. I forgot to -- I should have -- I was going to issue a text order on this, but since I was going to see you, I just thought I would do this verbally. Submit for the in-camera the redacted versions of those documents because I can't tell what was actually withheld by just looking at the unredacted ones.

And, obviously, since it was redacted, I think there's an understanding that there was material that's not being withheld with privilege on it, but I can't tell from the face of the unredacted documents what -- what's actually in dispute.

And then also submit for in-camera the privilege log entries that correspond to those redactions, just so I can see what the basis for the -- the specific basis for the privilege assertion is as to each of those.

When do you think you can get me that stuff?

MS. TOTTEN: One week from today?

THE COURT: Okay. So ordered.

Okay. So that takes care of that. Update me on where you are with experts.

MR. HILL: I have no experts, your Honor.

THE COURT: Okay.

MS. TOTTEN: We have no experts, your Honor.

THE COURT: All right. So all those deadlines are now moot then. Then Dauberts go out. All right. Then that hearing goes out.

Let's see. I know last time we talked there was -- I won't say this -- I'll just say there was an open question whether you do any further ADR and is -- I mean, I'm going to keep that deadline in place, but have you done any further ADR since we last met?

MR. HILL: We have -- we have not.

THE COURT: Okay. Well, the deadline is there, so it's up to you all whether or not you think it's going to be fruitful or not.

All right. So I am going to change the schedules. I got the information that the -- and I do want to acknowledge any inconvenience the Court has done -- has imposed by having a conflict that arose. But let's do this. So if you've got your calendars ready, we'll keep April 30th as -- but we'll turn that into the preliminary pre-trial readiness conference as opposed to the final pre-trial conference, so that that date will stay on, but it'll be the preliminary pre-trial readiness conference. And so the preliminary pre-trial readiness statement will be due -- we could do April 10th now. And then the final pre-trial statement, I'll push that up by a month. That'll be due March 27th. Last day to file motions in limine, pushing that to April 6. Oppositions to motions in limine, April 24th.

And, Ms. Totten, you're totally unavailable in May. Is that what I'm hearing?

MS. TOTTEN: Workday is unavailable in May, your Honor, yes.

THE COURT: Workday is unavailable. What does that mean? I thought you were -- the Counsel --

MS. TOTTEN: Workday is unavailable. Our client

is unavailable during the month of May.

THE COURT: Completely?

MS. TOTTEN: Completely, your Honor.

THE COURT: Okay. Final pre-trial conference will be on June 4th here in person at 1:00 p.m., and then start trial on Monday, June 22nd. Do all those dates work for everyone?

MR. HILL: Yes, your Honor.

MS. TOTTEN: Yes, your Honor.

THE COURT: Okay. Okay. So -- you know, I -- both in the previous status report that I responded to by text order or statement, and then here, it sounds like you're still talking about cleanup discovery, and now that you're in person, maybe you can work all -- any lingering issues out, but I didn't see anything here that requires Court action at this point other than the in-camera review, which I (indiscernible) I'm undertaking.

MR. HILL: Well, your Honor, it -- so there's a -- an issue. It seems that we're at loggerheads over whether or not they can withhold confidential information that they haven't deemed privilege -- haven't asserted privilege over. There are hundreds of pages of documents that they've produced, but they -- I'm sorry, your Honor, they are completely blacked out. And so I can't see any of the materials. I can see the formatting, but I can't see any

names or anything like that. And so to the extent that they're claiming privilege, I think they have to be able to produce a privilege log, you know, but the authority, as far as I can read in this circuit, says that they need to produce this information.

THE COURT: Response?

MS. TOTTEN: I am not sure, your Honor, which documents Mr. Hill is speaking about. However, my best guess is that he's talking about documents that were redacted based on privacy, not privilege. You ordered us to produce various categories of documents related to his compensation. That order does not allow him to see unredacted private information for, you know, potentially hundreds of other individuals. So on the board resolution, for example, where the board approves RSUs for many, many employees all at the same time, we redacted the information for every employee other than Mr. Hill. He gets to see the board minutes that show the RSU award for him.

Separately, you did also require that we provide comparator information for attorneys at the P4 through P6 level, and we did that in other documentation. So he does have comparator information from those individuals at those levels that you specified.

MR. HILL: So -- respectfully, I disagree. So the Court's November 14th, 2025 -- I'm sorry, November -- yeah,

14th, 2025, discovery order, and then the December 3rd directives require production of deliberative and decision-making materials, not merely final outcomes. And so that was internal recommendations and evaluations concerning my compensation bonus and RSUs, comparative analysis for similarly situated attorneys, so that's P4 to P6 attorneys, and then formulas, percentages, denominators used to calculate that -- you know, those -- that equity, the bonus, the RSU refreshes, communications among relevant decision makers. So what they produced -- they've not produced any of the comparator information, not that -- any of -- so it's all blacked out. So there's no -- when she says that there's -- it's in other places, I don't know where that would be. There literally isn't. There's -- for fiscal year 2023, there's information about my RSUs, as she said. So I understand the recommendation. They recommended that I get 50-percent of my initial grant. I ended up getting 21.5-percent. I don't understand the discrepancy. They recommended other employees on Ms. Hauck's team to receive between 100 and 125-percent of their initial grants. Their names aren't provided, so I can't quite compare. I don't know, you know, what went into that deliberative process. I don't know why -- I don't know why I was recommended for less, and I don't know why I got substantially less. And that was just for fiscal year '23. For '24, '25, the rest

of the period that's contemplated in my offer letter, there's no deliberative materials for me or for anyone else as far as I can see. And so that's obviously a big gap or a big chasm.

THE COURT: Have you raised these specifics with them?

MR. HILL: Yes. I -- well, in the initial document that I sent -- and I can -- I do plan to meet and confer, your Honor --

THE COURT: Okay.

MR. HILL: -- just to -- but I wanted to at least raise it here. But in the initial joint statement two weeks ago, I named specific documents that I wasn't able to get. They produced those documents, but, like I said, completely blacked out, so they substantively are withheld. I mean, it's not -- if I say, you know, "Produce your driver's license" and you give me a copy of the driver's license, but I can't see any of the information, you know, what effect have you -- you know, it has no effect.

THE COURT: Okay. Did you redact all the information or just names? I mean, if you're redacting for privacy, you don't need to redact anything but the names.

MS. TOTTEN: Your Honor, we redacted names for privacy. We provided -- it depends on the document, your Honor. On the board resolution, there's huge swathes of

redaction. There's no reason for him to know --

MR. HILL: Well, there is. I'm sorry.

THE COURT: Let her -- go one at a time.

MS. TOTTEN: So that's on the board resolution.

There's a separate document regarding comparator information, your Honor, and it's an Excel spreadsheet. He has it. It is -- it's a native spreadsheet. And it's -- is slightly redacted, but it does provide, I believe, employee ID numbers, and so he can compare individual to individual over time, if that makes sense, and see what their compensation was. We did not redact the substantive information that relates to compensation because that's the whole point.

I understand that he wants documents that show deliberative process. We re-searched for and provided all of those documents that we were able to find, your Honor. What he really wants is a deposition, but he didn't notice any deposition, your Honor. And so we are not in the business of making documents, right? We're not going to go create documents that reflect the deliberative process that occurred years ago.

MR. HILL: May I, your Honor?

So, with respect to the board resolution, my understanding is what she's talking about is there's an initial grant that's in my offer letter of $200,000. That's

the only board activity that has been produced that I can see. That's -- there -- there's, you know, about let's say 50 or 60 pages where it's a -- sort of a standard document where they go through and they show, "Okay. Anthony Hill has been awarded $200,000 in RSUs. He makes this salary starting" -- and so that's for, I think, fiscal -- that's for 2021 when I -- you know, when I started. I see that document. What I don't see are, for instance, what other people who came in at that same -- at the P4 to P6 level, what they were getting, and one of the main arguments that I've made in every complaint and I continue to make -- it's in the operative complaint -- is that I got paid less than similarly situated --

THE COURT: Okay. All right.

MR. HILL: -- people for coming in. And that does relate to --

THE COURT: But what about this Excel spreadsheet that has the comparator information?

MR. HILL: We will talk about it. I have not seen it. I've seen Excel spreadsheets that are completely blacked out, so that none of the -- none or most of the material, I can't see. It has nothing to do with a deposition.

THE COURT: Do you have the Bates number --

MR. HILL: I haven't raised a deposition.

THE COURT: -- or identifier for that Excel spreadsheet handy?

MR. HILL: Yeah, please.

MS. TOTTEN: 964.

MR. HILL: Okay. We'll talk in-depth about it, but, your Honor, I just really wanted to flag those issues in terms of withholding substantial portions of documents.

But it seems like what they -- they're trying to do is they're trying to read as narrowly as possible the Court's order on November 14.

THE COURT: Okay.

MR. HILL: And --

THE COURT: So if you're redacting anything other than names, all right, that -- you can't be doing that on privacy grounds, right? The sole reason for redacting information is because you're concerned about the privacy of these other individuals. You can redact the names, but you can't redact the substantive information about them, right? So to the extent -- I don't know what the documents are, but, you know, you need to go back and check with your team and look at the documents to make sure there wasn't some over-exuberant redactions, okay?

MS. TOTTEN: We will definitely --

MR. HILL: Thank you, your Honor. There's a protective order in place, I -- I'll note, that governs use,

and so I've not violated it, and I have no intention to do that.

THE COURT: Yeah. And I don't think you need exact names of people if you've got the comparator document with employee IDs, but, you know, I'm not -- if you -- if for some reason there's some extraordinary need for you to see one person's name here or there, you know, you can raise it with them and see if you can work that out.

MR. HILL: Yes, your Honor.

THE COURT: But you don't -- I don't think you need to see every employee's --

MR. HILL: No.

THE COURT: -- name, what every employee got.

MR. HILL: Just the folks on the -- my team, which is my --

THE COURT: Look at the comparator data that they say they provided. Do you know if the Excel spreadsheet covers more than 2021? I mean, part of the complaint here is --

MS. TOTTEN: I believe it does, your Honor.

THE COURT: Okay. So again --

MS. TOTTEN: 2021 to the present, your Honor.

THE COURT: Okay. So look at the spreadsheet --

MR. HILL: Yeah.

THE COURT: -- all right. And maybe there really

isn't a dispute here, okay?

MR. HILL: I hope not.

THE COURT: Okay. All right. Did you -- did Workday provide a privilege log by now?

MS. TOTTEN: Your Honor, we didn't withhold anything based on privilege.

THE COURT: Oh, you didn't? Well, what about the redacted --

MS. TOTTEN: We redacted for privacy, your Honor.

THE COURT: No, no, the four I'm doing in-camera reviews on, the documents --

MS. TOTTEN: Right, we provided a privilege log, yes.

THE COURT: Okay. But what -- are you -- there's no other privileged documents except for those --

MS. TOTTEN: Correct.

THE COURT: -- specific in-camera documents?

MS. TOTTEN: That is correct, your Honor.

THE COURT: Oh, okay.

MR. HILL: Well then I don't understand why so much is being withheld. It's -- so it's not a -- so what they -- they're essentially saying is that, "Mr. Hill, you don't need this information because we're asserting privacy." But there's no -- that -- that's not under Rule 26, under the protective order --

THE COURT: Well, you just heard me tell her, right --

MR. HILL: Yes.

THE COURT: -- that they can't be redacting for privacy --

MR. HILL: I've done it multiple times, your Honor, respectfully.

THE COURT: Well, no, but she -- I've given her a directive to go back and double check --

MR. HILL: Thank you.

THE COURT: -- the redactions to make sure that the only thing being redacted is names, right? And so if she -- if they reproduce the documents with redactions removed, then maybe that'll get rid of the -- what you're calling whole swathes of redactions. I don't have them -- the dispute is not ripe yet, so you need to work this --

MS. TOTTEN: And just for clarity, your Honor, on the board resolutions --

THE COURT: Yeah.

MS. TOTTEN: -- we did redact -- the redactions would be quite tedious. It's 60-ish pages.

MR. HILL: But that's their -- that's their burden.

MS. TOTTEN: We redacted all --

THE COURT: One at a time, Mr. Hill.

MS. TOTTEN: We redacted all the lines except for Mr. Hill's line, because our view is the comparator information -- the information that he needs per comparators, your Honor, is all in the Excel spreadsheets.

THE COURT: No. No. No, no, no. No. It -- you could -- you're -- you can't redact what would otherwise be relevant evidence.

MS. TOTTEN: Okay. But, your Honor, so only P4 through P6, correct?

THE COURT: I forget what -- I don't have the --

MS. TOTTEN: So we'll go through the board --

THE COURT: Look, I don't have the text of the order in front of me, right?

MS. TOTTEN: It says P4 through P6, your Honor.

THE COURT: But whatever I ordered, right, is what you should be -- but you can't be redacting actual substantive information.

MR. HILL: Thank you, your Honor.

THE COURT: I said you can redact names. But privacy doesn't cover actual substantive -- what people got.

MS. TOTTEN: The same substantive information was provided in the spreadsheet, your Honor --

THE COURT: Well --

MS. TOTTEN: -- but we'll go through -- we'll go through the board resolutions --

THE COURT: Yeah.

MS. TOTTEN: -- and we'll find the P4 through P6 individuals, and we'll only redact their names --

THE COURT: Okay.

MS. TOTTEN: -- even though it's duplicative.

THE COURT: Well --

MR. HILL: Thank you, your Honor.

THE COURT: Okay. So I think that should -- I hope -- hopefully resolve that issue.

Okay. And, Mr. Hill, you've heard her say -- she represented to the Court openly that they searched for and produced every single deliberative document they could find, so --

MR. HILL: Right. Well, I -- so, respectfully, I'll give you a -- I'll give you a -- I'll raise this with her certainly, but I'll tee it up for the Court. And that tranche of documents that we just got finished talking about that your Honor is going to review in-camera, I raised that I think in my opposition to the motion for summary judgment. There is an issue -- there's a reference by Chris Fedrow, who is the chief integrity and compliance officer, and she says to Susan Dahm, who is the senior vice president at Workday, she says to Susan, this -- you know, I know this relates -- something to this effect, "I know this relates to an issue you've been working on with EJ Vinchinski." EJ

Vinchinski is a -- was, at the time, a director for human relations -- HR at Workday -- working on with respect to Anthony Hill, right? So Susan -- and we know contemporaneously, in 2022, Susan and EJ were supposedly working on an issue related to me in the background. I've gotten no communications, your Honor, with respect to that, right? That is --

THE COURT: Okay.

MR. HILL: -- relevant information certainly to my case, and that information is supposed to be produced to me.

THE COURT: Have you discussed this with --

MR. HILL: And I said -- I just wanted to tee it up for you -- the Court because I've run into a lot of buzz calls where, respectfully, what Ms. Totten has essentially said is, "Even though the information is relevant, I'm not going to produce it to you because I think that you don't need it." But that's not how Rule 26 works. That's not how the Federal Rules work. Relevant information has to be produced. And they're not producing it based on privilege. They're producing it based on some sort of new privilege that they've created, which is, "You don't need it." But they don't know what I need, and they need to produce it to me. There's a protective order in place that limits how I can use the material, so -- and I've complied with the protective order in this case, and I don't know why the

information hasn't been produced. So I will certainly talk -- raise this in our meet and confer, but I did want to tee it up for the Court because I feel at a disadvantage where -- bless you, where I have to sort of constantly fight to get relevant information, and I just think that that's an issue.

THE COURT: That's part of the litigation process, Mr. Hill.

MR. HILL: I don't like it.

THE COURT: And discovery -- there's plenty of case law that says discovery is never perfect --

MR. HILL: No.

THE COURT: -- okay? Right.

MR. HILL: But it should at least be -- it should at --

THE COURT: All I'm saying is --

MR. HILL: -- least be good faith, you know.

THE COURT: -- you need to meet and confer, right?

MR. HILL: Yeah.

THE COURT: If you've got documents that refer to other documents but they haven't produced the other documents -- I mean, that's what lawyers talk about and try to resolve without needing to burden the Court on that, right?

MR. HILL: Yes, your Honor.

THE COURT: So, Ms. Totten, if you produce

documents that reference other documents or other investigations and nothing was produced on that other stuff, I mean -- right, you got to look into that, okay?

MS. TOTTEN: And, your Honor, I have no idea what he's talking about. So it's really impossible --

MR. HILL: Well, it's in my -- it's in my opposition.

MS. TOTTEN: -- for me to be able to have this discussion in a vacuum. And discovery closed on August 22nd, your Honor. And we have entertained issue after issue after issue and have produced more documents. We've provided everything that we were able to locate after a diligent search pursuant to your court order, your Honor. And I just don't think that we should be forced to come in here every single time and talk about loads more discovery issues.

MR. HILL: Well, most of the information was produced after discovery. So, for instance, those key documents that, your Honor, you're reviewing in-camera, those were produced on the last evening of discovery. And then subsequently important documents, most of the documents that are referenced in my opposition to the summary judgment motion, most of those key documents were produced by them after the close of discovery. So, you know, it's -- you know, there's no, I think, reason to argue here. Basic --

you know, sort of basic discovery law, as Ms. Totten knows, you have to produce relevant materials and you have a continuing obligation even after the close of discovery, which they understand because they produced documents after the close of discovery. So I just think that that's sort of basic fairness.

THE COURT: So --

MR. HILL: Right.

THE COURT: -- this is not ripe. You need to work it out amongst yourselves, at least meet and confer before --

MR. HILL: Absolutely, your Honor.

THE COURT: -- all right. But just to give you some guidance, if you have produced documents that reference other documents, other investigations, and -- but you haven't produced the other stuff referenced, I -- you need to at least look into it and see whether it's relevant and should be produced, okay?

MS. TOTTEN: If it falls within the scope of your orders, your Honor, we already looked for it. But we will go back and we will check. Anything that falls within the scope of your orders, your Honor, we will produce.

MR. HILL: So that's the point. That's the nugget. So what she's doing is she's very narrowly saying, "Okay. Your order says we only have to produce X, and we're

not going to produce anything beyond that," but they have a -- they have a general relevance. So, for instance, if a document references a document, obviously your November 14th order said nothing about a document that references another document, but, obviously, under Rule 26, they have to produce that. What Ms. Totten essentially is saying is that, "We're not going to produce anything that would be required under Rule 26. We're going to construe our discovery obligations to -- as narrowly as possible, only related to the Court's November 14, 2025, order." That's not how discovery works. That's not how litigation works.

THE COURT: Is that what you're doing?

MR. HILL: Yes.

MS. TOTTEN: No, your Honor.

MR. HILL: Okay. Well, we'll meet and confer, and hopefully --

THE COURT: So that's why you need to -- A, she said she doesn't know exactly what documents --

MR. HILL: Yes --

THE COURT: -- you're talking about --

MR. HILL: -- fair.

THE COURT: -- right? B, you heard her say she's not narrowly construing and limiting --

MR. HILL: Okay.

THE COURT: -- it only to the scope of my order.

MR. HILL: Absolutely. And I'll just refer -- like, again, in my opposition to their summary judgment motion --

THE COURT: Yeah.

MR. HILL: -- I clearly -- I mean, in, you know, block -- two block quotes on a couple of pages, I point out that they have -- they've referenced, for instance, this meeting. There are no communications virtually with Susan Dahm, right? So she's the decision maker. She's the person who Katie Hauck is going to and saying, "Hey, I recommend X, Y, and Z for fiscal year 2023, none for successive years," right, the, you know, years after that. There's no communications. But then Chris Fedrow is saying that she's talking to this HR director about me for a month. Well, okay, where -- how were they talking? I mean, is it in Morse code? I mean, it -- the common practice at Workday, at least when I was there, was you spoke either via e-mail or Slack, but there are no communications. And so to the extent that there's -- obviously, we know that there's an HR director who's speaking about me. We know that there is a senior vice president who's speaking about me. And then we know on that tranche of e-mails that your Honor is reviewing in-camera, that there are a whole other group of people, including the highest lawyer at Workday and a member of the C-suite, speaking about me. None of this was ever disclosed

to me. Those communications and the communications that they reference should be produced to me. They absolutely are relevant to my case.

THE COURT: Okay. But, again, she doesn't know exactly what documents you're talking about --

MR. HILL: Okay. That's fine, your Honor.

THE COURT: -- what people you're talking about --

MR. HILL: I will point it out and --

THE COURT: Right. And you -- I mean, it is incumbent on you to raise specifically what you're -- what you're looking for --

MR. HILL: Yes. Yes.

THE COURT: -- at this point. And, again --

MR. HILL: Yes, Judge.

THE COURT: -- you know, this is not an opportunity for you to try to reopen all discovery, right?

MR. HILL: No. No. No.

THE COURT: So this is just -- I see this as just follow up and to try to clean up the discovery that was done. And -- again, if you legitimately find things that should have been produced, then -- and -- from what has been produced, then you can raise it with them and try to work that out.

MR. HILL: Yes, your Honor.

THE COURT: That's what the whole -- that's what

the whole meet and confer process is about.

MR. HILL: Right. I will re-raise it with them. I just wanted to at least sort of give you the broad outline because we've had some issues in terms of how narrow -- you know, discovery is supposed to obviously be broadly construed. Relevance is broad. It should be giving me documents, not withholding things.

THE COURT: Well --

MR. HILL: But okay. Yes, your Honor.

THE COURT: Again, this is not a ripe dispute, Mr. Hill, so you need to try to work things out with them, okay?

MR. HILL: Absolutely.

THE COURT: Okay.

MS. TOTTEN: Your Honor, Mr. Hill mentioned summary judgment a moment ago.

THE COURT: Yeah.

MS. TOTTEN: I just wanted to check to see if there's any timeline that we might have in mind.

THE COURT: No. I'm the Court, and I make my own -- I work on my own cases on my own time. And so you will get the order, but I won't -- out of deference to my staff, I won't commit to a date certain, but, you know, we're working on it, I'll just say that, okay?

MS. TOTTEN: Thank you, your Honor.

THE COURT: And I already previously hinted, Mr.

Hill, that, you know, on your motion for leave, you should probably --

MR. HILL: Yes, your Honor, I have the other case in Maryland --

THE COURT: Yeah. Right.

MR. HILL: -- so I understand the federal claims will probably be litigated.

THE COURT: Okay. I mean, do you want to withdraw the motion for leave since you've got the other case pending?

MR. HILL: It would be cleaner, and I think I'll do that. I can do that. I'll file something within the week. I know that they're going to produce.

THE COURT: Okay.

MR. HILL: So within the week, I'll file something.

THE COURT: I know at least one person who would be happy about that.

MR. HILL: I know, yes.

THE COURT: Okay. All right.

MR. HILL: I've been on your side. I understand.

THE COURT: Okay. Good. Okay. Then -- all right. So -- right, so if we're coming back -- yeah, so in your pre-trial readiness statement that'll be due April 10th, you can update me -- treat that as an -- also an

opportunity to do an updated case management statement as well. And then we'll be back on April 30th.

MR. HILL: April 30th, back in this courtroom?

THE COURT: Yes.

MR. HILL: Okay.

THE COURT: Okay. And I shall have your final pre-trial statement before that, so we can talk about anything that pops out at me, and then we'll issue an order with more details on what I'll expect to see in there as well, okay? But it would be the normal stuff, you know, witness list, proposed voir dire, proposed jury instructions, all that stuff, okay?

MS. TOTTEN: That's for the final pre-trial, your Honor, or the --

THE COURT: Yeah, final pre-trial.

MS. TOTTEN: Final pre-trial.

THE COURT: Final pre-trial.

MS. TOTTEN: That's what I thought. Thank you.

MR. HILL: Not at the pre-trial readiness on the 30th? Right, yes --

THE COURT: See, the way it -- because the date -- so your final pre-trial is due March 27th. So it's actually going to -- we're going to get that before the pre-trial readiness conference and before the pre-trial readiness statement. The readiness statement is really just a way for

you to tell me you've -- I mean, it may be redundant, but that -- we're going to treat it more as a case management statement --

MR. HILL: Okay.

THE COURT: -- that -- you know, that you've reserved the trial date, so you're all ready to go. And the preliminary pre-trial conference -- readiness conference on the April 30th, we'll talk about trial in more detail.

MR. HILL: Yeah.

THE COURT: But it won't be the final pre-trial conference. But if anything pops out at me in your final pre-trial statement, that'll be an opportunity to at least address that before we get to the final pre-trial, right?

MR. HILL: Okay.

THE COURT: Okay.

MS. TOTTEN: Your Honor, I think I might have some dates confused.

THE COURT: Yeah.

MS. TOTTEN: Would you mind walking through --

THE COURT: Sure. Okay.

MS. TOTTEN: -- them one more time?

THE COURT: Yeah. Okay. So they're a little bit out of order, so I'm just going -- I'm just -- so bear with me. Joint preliminary pre-trial readiness statement due April 10th. Preliminary pre-trial readiness conference due

April 30th.

MS. TOTTEN: The conference is on --

THE COURT: Yeah.

MS. TOTTEN: -- April 30th.

THE COURT: April 30th, which we had previously set as the final pre-trial conference, so we're just keeping that, and we're converting it to the preliminary pre-trial readiness conference. And it would also be a case management conference. Okay.

MS. TOTTEN: Yes.

THE COURT: And that pre-trial readiness statement will also be a case management statement.

Again, all the expert deadlines and Daubert deadlines go away. I'll take the Daubert hearing off calendar. Final pre-trial statement due March 27th. Okay. Last date to file motions in limine, April 6. Last date to file oppositions to motions in limine, April 24th. I think I've said this before, I don't typically do reply briefs on in limines because it should be short. Final pre-trial conference, 1:00 p.m. on June 4th. Then trial starts June 22nd.

MS. TOTTEN: I did have it. Thank you so much.

THE COURT: Okay. All right. Again, just double checking, all those dates, you can all make it here on the dates, and you have to make it here, and all those dates

work.

MR. HILL: Yes.

THE COURT: Okay.

MS. TOTTEN: Yes, your Honor.

THE COURT: Okay.

MS. TOTTEN: Thank you.

THE COURT: Good. All right. Anything else before we adjourn this case?

MR. HILL: No, thank you, your Honor.

MS. TOTTEN: No, your Honor. Thank you.

THE COURT: Okay.

MR. HILL: Very helpful today.

THE COURT: Thank you.

THE CLERK: We're off the record in this matter.

(Proceedings adjourned at 11:40 a.m.)

CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

Echo Reporting, Inc., Transcriber

Monday, January 26, 2026