UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ANTHONY C. HILL,

Plaintiff,

v.

WORKDAY, INC., et al.,

Defendants.

Case No.  23-cv-06558-PHK

**ORDER RE: RESPONSE TO ORDER TO SHOW CAUSE BY ATTORNEY WEBB**

Re: Dkts. 178, 228

### INTRODUCTION

Lawyers owe a duty of candor to the Court, a duty that cannot be met without reading and understanding the legal authorities on which their arguments rely. When lawyers fail to check citations in a brief prior to filing, as discussed at length previously, [Dkt. 161], or when they materially misrepresent the facts or holdings in a case, they breach their professional and ethical obligations. Moreover, managerial and senior lawyers have professional and ethical duties to the Court, their clients, and their employees to appropriately supervise the work performed. *See* Cal. Rules of Prof. Conduct r. 5.1. At minimum, a supervising lawyer should read and understand the content of all pleadings and check citations to ensure their accuracy. Managers in law firms have an obligation to take reasonable steps to ensure all lawyers in the firm make ethical representations to the Court.

As previously discussed in the Order sanctioning Attorney Katherine Cervantes, [Dkt. 161], courts have long admonished lawyers for their willful or reckless citations to nonexistent or improper case law and fictitious statutes in briefs. *See, e.g., Willy v. Coastal Corp.*, 855 F.2d 1160, 1172 (5th Cir. 1988) (affirming Rule 11 sanctions for, among other things, "citing to nonexistent rules of law"). When submitting filings to a court, one of a lawyer's basic professional and ethical

duties is not to "present a claim or defense in litigation that is not warranted under existing law" regardless of the source of the alleged existing law (whether from a computerized source, a generative AI, a traditional legal research tool such as Westlaw, or a treatise). *See* Cal. Rules of Prof. Conduct r. 3.1(a)(2). Otherwise, "pleadings that cite fake legal authority undermine[] the rule of law and a judicial system based on reason. Such fakery also erodes public trust in the legal profession." *In re Kenney*, 422 So. 3d 905, 924 (La. Ct. App. 2025). Supervisors who do not draft or sign submissions to the court, but who remain counsel of record and fail to question the accuracy of defective pleadings, fail in their duty of supervision. *Mattox v. Prod. Innovations Rsch., LLC*, 807 F. Supp. 3d 1341, 1351 (E.D. Okla. Oct. 22, 2025).

Here, there is no dispute that the lawyers at issue submitted a brief which included a fake citation to nonexistent law, caused in part by use of AI and ultimately from a lack of care and lack of supervision.

Now before the Court is the response by Attorney Webb, [Dkts. 178, 228], to multiple Orders to Show Cause regarding the brief containing fake citation to nonexistent law, his failure to supervise, and his failure to respond to Court Orders or appear. [Dkts. 129, 161, 177]. After carefully reviewing the submitted declarations and holding a hearing on the Order to Show Cause, the Court **ADMONISHES** and **SANCTIONS** Attorney Lenden Webb.

### RELEVANT BACKGROUND

As previously described in the Court's Order sanctioning Attorney Cervantes, [Dkt. 161], in this lawsuit between a former employee and his former employer, Plaintiff Anthony Hill and Defendant Workday filed a Joint Discovery Letter Brief on July 21, 2025. [Dkt. 117]. In the signature block for that brief, both Lenden Webb and Katherine Cervantes are identified as attorneys of record for Plaintiff Hill. *Id.* Attorney Cervantes signed the discovery letter. *Id.*

On July 30, 2025, the Court issued an Order resolving the dispute and issued an Order to Show Cause directed to Plaintiff Hill's counsel. [Dkt. 129]. The gravamen of the Order to Show Cause is that Plaintiff Hill's counsel submitted briefing in the letter brief that: (1) cited at least one nonexistent case, *South Pointe Wholesale, Inc. v. Vilardi*, No. 16-CV-6758, 2017 WL 11570668, at *2 (E.D.N.Y. May 2, 2017); and (2) misrepresented the holdings of another cited case, *Mir v. L–3*

United States District Court
Northern District of California

*Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 227 (N.D. Tex. 2016). *Id.* at 9–12. The Court's core concerns centered around the inclusion of false or misleading citations, the source of the citations, how and why they were included in the brief, and potential violations of this Court's Standing Order, which specifically addresses AI and fictitious or unverified legal citations. *Id.*

Attorney Cervantes filed a declaration responding to the Order to Show Cause the same day, but Attorney Webb did not file a separate response or declaration. [Dkt. 131].

The Court held a hearing on the Order to Show Cause on August 12, 2025, at which Attorney Cervantes appeared, but Attorney Webb did not. [Dkt. 148]. On September 5, 2025 the Court issued an Order regarding the response to the Order to Show Cause by Attorneys Webb and Cervantes. [Dkt. 161]. Specifically, the Court admonished Attorney Webb and ordered him to file a declaration "addressing all of the issues raised in the original Order to Show Cause and further addressing the following: (1) explaining his nonappearance at the Order to Show Cause hearing; (2) explaining the failure to provide advance notice to court staff as to his apparent scheduling conflict; (3) describing his role and responsibilities as counsel of record with regard to the supervision of Attorney Cervantes and other members of his law firm with regard to the filing of the brief containing the fake citation; and (4) identifying what steps he personally and his firm have taken, or plan to take, to mitigate and prevent similar issues from occurring in the future." *Id.* at 14. Attorney Webb did not respond to the September 5 Order.

On October 22, 2025, the Court issued a Further Order to Show Cause directing Attorney Webb to show cause as to why he should not be sanctioned for failure to obey Court Orders and for filing a brief under his name containing fake citations per the July 30 Order to Show Cause. [Dkt. 177]. The Court explicitly warned Attorney Webb that "[c]ontinued failure to obey the previous September 5 Order [Dkt. 161] may result in sanctions. With regard to the failure to obey the September 5 Order [Dkt. 161] and this Further OSC, the Court may consider the full range of appropriate sanctions, including but not limited to monetary sanctions, ordering Attorney Webb to undertake continuing legal education, requiring Attorney Webb to self-report to the Northern District's Committee on Professional Conduct and the California State Bar (and any other court or bar of which he is a member), or any other sanctions the Court deems appropriate in the

circumstances." *Id.* at 2. Court staff emailed the September 5 and October 22 Orders directly to Attorney Webb. [Dkt. 178 at 23].

Finally, Attorney Webb filed a response on October 23, 2025. [Dkt. 178]. Attorney Webb appeared at a hearing on November 4, 2025 and was afforded a full opportunity to be heard. [Dkt. 190]. On April 3, 2026, Attorney Webb filed a further response to the OSC. [Dkt. 228].

## LEGAL STANDARD

In language familiar to lawyers appearing in federal courts, Rule 11(b) states that "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]" Fed. R. Civ. P. 11(b)(2).

A lawyer whose name appears on a court filing therefore "certifies to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive." *Bus. Guides, Inc. v. Chromatic Commc'ns. Enters., Inc.*, 498 U.S. 533, 542 (1991). Accordingly, Rule 11 "admits of no exceptions to the requirement that all reasonable attorneys will read a document before filing it in court." *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986), *abrogated on other grounds by Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990). Thus, the lawyer whose name appears on a court filing has "an affirmative duty to conduct a reasonable inquiry into the facts ***and the law*** before filing." *Bus. Guides*, 498 U.S. at 551 (emphasis added). "[T]he applicable standard is one of reasonableness under the circumstances." *Id.* "Courts must apply an objective test in assessing whether the rule has been violated." *Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993). Therefore, a "violation of the rule does not require subjective bad faith." *Id*.

The Court has authority under Rule 11(c) to impose sanctions for violations of the Rule. *See* Fed. R. Civ. P. 11(c). Rule 11 assumes a signer read the document, because "obligations imposed

under subdivision (b) obviously require that a pleading, written motion, or other paper be read before it is filed or submitted to the court." Adv. Comm'ee Notes to 1993 Amendment to Fed. R. Civ. P. 11(a).

Long before the public launch of various AI or large language models such as ChatGPT, the Fifth Circuit affirmed an award of sanctions by noting that "[f]iling mountainous piles of unorganized documents and citing to nonexistent rules of law are precisely the sort of conduct that, under the objective test of Rule 11, could lead a district court to conclude that the attorney had not made reasonable inquiry into the law or was seeking to harass or delay." *Willy*, 855 F.2d at 1172. Sanctioning a party for citing to nonexistent law is, unfortunately, not merely a product of AI-hallucinated citations. *See, e.g.*, *Dobson v. U.S. Bank Trust, N.A.*, 2021 WL 1235248 at *2 (C.D. Cal. Feb. 19, 2021) ("Plaintiff's citation to a nonexistent code section and subsequent failure to address the erroneous citation and the merits of Defendant's Motion for Sanctions indicate that Plaintiff did not conduct a reasonable and competent inquiry into the law before signing and filing his Complaint."). "One specific inquiry for determining whether sanctions are appropriate is 'whether the party or attorney made a reasonable inquiry into the law.'" *Mid Central Operating Engineers Health and Welfare Fund v. HoosierVac LLC*, 2025 WL 574234 at *2 (S.D. Ind. Feb. 21, 2025) (quoting *Brown v. Federation of State Med. Boards of the U.S.*, 830 F.2d 1429, 1435 (7th Cir. 1987), *overruled on other grounds by Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928 (7th Cir. 1989)). The duty to check every paper filed in court for accuracy and veracity is nondelegable to other attorneys or to technology. *See*, *e.g.*, *Unioil, Inc. v. E.F. Hutton & Co.*, 809 F.2d 548, 558 (9th Cir. 1986), *overruled on other grounds by In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 434–35 (9th Cir. 1996) ("An attorney who signs the pleading cannot simply delegate to forwarding co-counsel his duty of reasonable inquiry."); *Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enters., LLC*, 2025 WL 1440351, at *4–5 (S.D. Fla. May 20, 2025).

"Given the rise of artificial intelligence and its use in court proceedings, courts have begun ordering litigants suspected of citing to AI-hallucinated cases to show cause why sanctions or discipline should not issue. Specifically, courts tend to find that Fed. R. Civ. P. 11(b)(2) applies in the context of litigants citing to AI-hallucinated cases in documents submitted to courts." *Marion*

*v. Hollis Cobb Assocs.*, 2025 WL 1275828, at *5 (N.D. Ga. Feb. 14, 2025) (citations omitted).  The nationwide issue of sanctions for filing briefs with fake citations has been addressed by the Northern District of California.  *See, e.g.*, *Coronavirus Reporter Corp. v. Apple Inc.*, 2025 WL 2162947, at *5–6 (N.D. Cal. July 30, 2025).  Upon detection of fabricated or erroneous citations, an attorney has an affirmative, personal, non-delegable duty to review all citations for accuracy and validity and to correct them, rather than relying only on citations pointed out as problematic by opposing counsel or a court. *In re Kenney*, 422 So.3d at 915–16, 920-21.

However, the Court recognizes that the motion at issue here is a discovery motion.  Under Rule 11(d), such motions are exempt from the requirements of Rule 11.  *See* Fed. R. Civ. P. 11(d) ("This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37.").  "This appears to be an unintended anomaly in Rule 11: the advisory committee's note indicates that discovery motions were excepted from Rule 11 because the committee expected Rules 26 and 37 to allow courts to address sanctionable misconduct in such motions, but Rules 26 and 37 furnish no basis for the court to address the false statements of law these attorneys made in discovery motions.  Regardless, Rule 11 says what it says, it does not apply here, and this court has no authority to change that." *Johnson v. Dunn*, 792 F. Supp. 3d 1241, 1259–60 (N.D. Ala. 2025) (citations omitted).

Separate from Rule 11, "[w]ithin the federal system, each district court is authorized to govern and discipline its own bar." *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1198 (9th Cir. 1999).  A district court may issue sanctions for violating its local rules or under its inherent authority. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) ("[T]he inherent power extends to a full range of litigation abuses."); *Fink v. Gomez*, 239 F.3d 989, 991–92 (9th Cir. 2001); *Zambrano v. City of Tustin*, 885 F.2d 1473, 1480 (9th Cir. 1989).

Before imposing sanctions on an attorney, the Court must provide the attorney with notice and an opportunity to be heard. *Weissman*, 179 F.3d at 1198.  A separate sanctions hearing is not required when the attorney is given the opportunity to respond in writing. *Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000).  "The opportunity to brief the issue fully satisfies due process requirements." *Id.* (citing *Resolution Trust Corp. v. Dabney*, 73 F.3d 262,

United States District Court
Northern District of California

6

268 (10th Cir. 1995); *Toombs v. Leone*, 777 F.2d 465, 472 (9th Cir. 1985)).

"Broad deference is given to a district court's interpretation of its local rules." *Bias v. Moynihan*, 508 F.3d 1212, 1223 (9th Cir. 2007) (citing *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002)). This Court's Civil Local Rule 11-4 provides in relevant part that all attorneys permitted to practice in the Northern District must: "Be familiar and comply with the standards of professional conduct required of members of the State Bar of California;" "Comply with the Local Rules of this Court;" "Maintain respect due to courts of justice and judicial officers;" and "Practice with the honesty, care, and decorum required for the fair and efficient administration of justice[.]" "Failure by counsel or a party to comply with any duly promulgated local rule or any Federal Rule may be a ground for imposition of any authorized sanction." Civil L.R. 1-4. The Local Rules specify citation formats for legal authorities "in any paper" filed with the Court. Civil L.R. 3-4(d).

The undersigned's Civil Standing Order, which is applicable to this case, states that: "in the course of preparing filings with the Court or other documents for submission in an action, counsel and Parties choosing to use an AI *or other automated tools* shall fully comply with any applicable protective order and all applicable ethical/legal obligations (including issues relating to privilege) in their use, disclosure to, submission to, or other interaction with any such AI tools. Such counsel and parties using any AI tool shall maintain records sufficient to establish and corroborate their compliance with this Standing Order, if asked by the Court, such as by keeping records of all prompts or inquiries submitted to any such third-party AI tools." Civil Standing Order at § VII(C), available at https://cand.uscourts.gov/sites/default/files/standing-orders/PHK-Civil-Standing-Order_2025.7.16.pdf (last accessed Apr. 27, 2026) (emphasis added).

The Standing Order requires that "*all counsel who have appeared*, as well as all others responsible for making representations to the Court or opposing counsel (whether or not they make an appearance) . . . , shall competently and responsibly use automated, computer-based software or hardware applications in drafting briefs, pleadings, or other documents to be submitted to the Court, whether such tools are labelled as AI, generative AI, language model, natural language processing tool, machine learning tool, artificial neural network, deep learning neural network, *or any other automated generator of text*. Counsel and pro se parties shall make use of such tools with competent

United States District Court
Northern District of California

7

United States District Court
Northern District of California

training, knowledge, and understanding of the limitations and risks of such automated tools." *Id.* (emphasis added).

As noted, the Local Rules require attorneys to comply with the standards of professional conduct of the State Bar of California. Under the California Rules of Professional Conduct "[a] lawyer shall not intentionally, recklessly, with gross negligence, or repeatedly fail to perform legal services with competence." Cal. Rules of Prof. Conduct r. 1.1(a). And, as noted above, a lawyer "shall not . . . present a claim or defense in litigation that is not warranted under existing law[.]" Cal. Rules of Prof. Conduct r. 3.1(a)(2). Regarding candor toward a tribunal, the Rules state that a "lawyer shall not . . . knowingly[] make a false statement of fact or law to a tribunal[.]" Cal. Rules of Prof. Conduct r. 3.3(a)(1). Further, a lawyer shall not "knowingly[] misquote to a tribunal[] the language of a book, statute, decision, or other authority[.]" Cal. Rules of Prof. Conduct r. 3.3(a)(2).

With respect to the responsibilities of managerial and supervisory attorneys, the Rules require such attorneys to "make reasonable[] efforts to ensure that the firm[] has in effect measures giving reasonable[] assurance that all lawyers in the firm[] comply with these rules and the State Bar Act." Cal. Rules of Prof. Conduct r. 5.1(a).  A direct supervisor of another lawyer is required to "make reasonable[] efforts to ensure that the other lawyer complies with these rules and the State Bar Act." Cal. Rules of Prof. Conduct r. 5.1(b). "A lawyer shall be responsible for another lawyer's violation" if the lawyer "possesses managerial authority in the law firm[] in which the other lawyer practices, or has direct supervisory authority over the other lawyer . . . and knows[] of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable[] remedial action." Cal. Rules of Prof. Conduct r. 5.1(c)(2). The State Bar states in comments for Rule 5.1(c) that "[a] supervisory lawyer violates paragraph (b) by failing to make the efforts required under that paragraph, even if the lawyer does not violate paragraph (c) by knowingly[] directing or ratifying the conduct, or where feasible, failing to take reasonable[] remedial action." Cal. Rules of Prof. Conduct r. 5.1 cmt. 7.

The supervisory duty is not new. "An attorney is responsible for the work product of his employees which is performed pursuant to his direction and authority." *Crane v. State Bar of Cal.*, 30 Cal. 3d 117, 120 (1981). This supervisory duty is "separate and distinct from the underlying

duties of a novice attorney to act competently[.]" *Gadda v. State Bar*, 50 Cal. 3d 344, 353–54 (1990).

In evaluating the issue of sanctioning attorneys responsible for AI-generated hallucinations, the *Mattox* court articulated a three-part analytical framework which includes consideration of factors such as "accountability and supervision," or the conduct of the supervising attorneys and safeguards at the firm level to prevent recurrence. *Mattox*, 807 F. Supp. 3d at 1348. In *Mattox*, the issues to be resolved included whether three supervising attorneys complied with the American Bar Association Model Rules of Professional Conduct. *Id.* In this analysis, a court's "inquiry extends beyond the drafter to the institutional culture that permitted unverified authority to reach the docket. A firm's silence or absence of policy does not immunize it; it implicates it." *Id.*

In *Mattox*, ultimately the court sanctioned the three supervising attorneys for failure of oversight, failing to read pleadings, and lacking firm policy for AI use by associated counsel. *Id.* at 1351. The *Mattox* court further admonished one of the supervising lawyers (serving as local counsel) by noting that an attorney's "name on the docket gave those pleadings a presumption of legitimacy that they did not deserve . . . [which] eroded the safeguard that local representation is meant to provide." *Id.* at 1351-52. The *Mattox* court considered "candid acknowledgement of responsibility and corrective action" in mitigating its sanctions. *Id.* at 1351.

Other caselaw is illustrative of the duties of supervisory attorneys (and the consequences of their failures to properly supervise). In *Johnson*, a defendant submitted two motions with five citations that were either admitted hallucinations originating from ChatGPT or referred to a case that did not support the proposition for which it was cited. 792 F. Supp. 3d at 1246-48. A supervising attorney in *Johnson*, William Lunsford, whose name (among others) appeared on the signature block and who was also a practice group leader and firm partner, did not check that the citations were true, and further attempted to avoid appearing at an Order to Show Cause hearing. *Id.* at 1247–48, 1251-52. After being ordered to appear, the supervising attorney "paired his apology with an explanation in greater fullness of how very little work he personally puts in to be sure that his team's motions tell the truth." *Id.* at 1265. Given that the false citations appeared despite the firm's large size and reputation, the attorney's experience, and firm-level controls in the form of training and AI policies, the *Johnson* court found imposing a fine insufficient. *Id* at 1266-67. Instead, the court publicly

United States District Court
Northern District of California

reprimanded the attorneys, ordered them to provide their clients, opposing counsel, and presiding judges in all matters a copy of the order, disqualified them, and ordered them to send the sanctions order to the state bar. *Id.* at 1267–68.

**DISCUSSION**

In his declaration filed in response to the second Order to Show Cause, Attorney Webb attests as follows: "Because I did not conduct the research nor contribute to the drafting of the filed Joint [L]etter Brief Regarding Discovery Disputes (Docket #117)[,] I did not believe the Order to Show Cause issued on July 30, 2025 (Docket #129) was directed to me." [Dkt. 178 at ¶ 7]. "I sincerely apologize to the Court for the misunderstanding and mean no disrespect." *Id.* "I do recognize I am listed as an attorney of record and listed on the signature block of the submitted Joint Letter Brief Regarding Discovery Disputes (Docket #117)." *Id.* "I did not personally appear because I had an advance scheduling conflict to conduct an in-person deposition . . . . If I had believed this Court was needing my input . . . I would have rescheduled the deposition to appear in-person, again, I apologize for my misunderstanding." *Id.* at ¶ 10.

With respect to his supervisory authority over Attorney Cervantes and the firm, Attorney Webb attests: "[a]s I understand, I am the namesake for Webb Law Group, APC and the senior attorney who supervises Ms. Cervantes, however, I did not collaborate nor contribute to drafting of the Joint Letter Brief Regarding Discovery Dispute filed with the Court on July 21, 2025 (Docket #117), therefore, I could not competently and truthfully respond to the [Court's detailed inquiries.]" *Id.* at ¶ 8. "However, the [C]ourt is 100% accurate in that I do possess managerial authority over Webb Law Group, APC that requires me to make reasonable efforts to ensure that the firm has in effect measures that all attorneys in the firm comply with local rules of the [C]ourt, including, the Court's Standing Orders and the State Bar Act." *Id.* at ¶ 9. "I am deeply concerned and cognizant about ensuring that my obligations entrusting the delegation of drafting competent pleadings by associate attorneys at Webb Law Group, APC complies with my professional responsibilities as the senior supervising attorney." *Id.* at ¶ 19. "The misuse of AI tools and the accountability of associate attorneys to check the citations to the case law cited has been thoroughly addressed since this single and isolated event by implementing mandatory case staffer trainings that especially emphasize the

professional and ethical duty to check and read all cited case law." *Id.* "I flew ten (10) of our staff to ClioCon in Boston last week to work on improving our firm's efforts to serve clients." *Id.* at ¶ 21. "Ms. Cervantes attended multiple seminars along with me on AI issues and we had an evening private room dinner meeting in Boston to go through notes as each staffer was assigned to separate sessions to learn as much as they could." *Id.* "Ms. Cervantes diligently sent me at least three (3) emails with notes from her training." *Id.* "We also had an 'all hands' meeting at our home office in San Diego after the conference to address tools to ensure we are doing the best to continue to improve." *Id.* "A large push from this conference is to ethically use AI appropriately." *Id.*

With respect to his non-appearance for the August 12, 2025 Show Cause hearing, Attorney Webb attests that "I did not personally appear because I had an advance scheduling conflict to conduct an in-person deposition set in Fresno, California on August 12, 2025 at 9:00 AM." *Id.* at ¶ 10. "Moreover, Plaintiff had moved to substitute Webb Law Group, APC out to self-represent himself, which was granted by this Court's Order on August 7, 2025 (Docket # 144)." *Id.* at ¶ 11. "I believed I was doing our firm best by flying Ms. Cervantes to appear in-person on a case where we were no longer counsel of record." *Id.* at ¶ 12. "I now acknowledge and understand that I should have provided advance notice to the Court of my scheduling conflict due to a noticed deposition making me unavailable to personally appear at the held hearing on the July 30th Order to Show Cause on August 12, 2025 (Docket #148)." *Id.* at ¶ 13.

With respect to why he did not file a response to the September 5, 2025 Order to Show Cause, Attorney Webb attests that "Unfortunately, [neither] Ms. Cervantes, Esq. nor I received a CM/EFC electronic file notification of the Court's September 5, 2025, ORDER . . . ." *Id.* at ¶ 16. "It was not until very recently on Wednesday, October 22, 2025 at 9:08 PM that I received the email correspondence [from court staff] . . . that provides notice of the Court's earlier ORDER RE: RESPONSE TO ORDER TO SHOW CAUSE BY ATTORNEYS WEBB AND CERVANTES (Docket #161) and FURTHER ORDER TO SHOW CAUSE (Docket #177)." *Id.* at ¶ 17. "I drafted a brief response this morning and quickly apologized that we internally closed out this case on August 14, 2025 and no longer monitored the case docket." *Id.* at ¶ 18.

At the Order to Show Cause hearing, Attorney Webb averred that his namesake law firm

11

had conducted training about the problems with misuse of AI prior to the firm's use of Westlaw's CoCounsel AI tool. [Dkt. 197 at 4]. He averred that his firm's staff have daily ongoing didactic trainings and again referenced sending staff to the ClioCon conference. *Id.* at 4–5. Attorney Webb acknowledged reading the Thompson Reuters disclaimer about the accuracy of the CoCounsel AI tool, but emphasized that the sales representative stated there was "no way" the program could produce hallucinations. *Id.* at 6–7.

Significantly, Attorney Webb averred there are two specific measures the firm has employed to reduce AI-related errors going forward.  First, the firm uses software called Clearbrief to check citations. *Id.* at 7. Second, firm staff "read [any cited] case and make sure that it's right." *Id.* Attorney Webb also shared that the sanction order for Attorney Cervantes was distributed "to every attorney and every law clerk in [the] firm." *Id.*

Attorney Webb acknowledged at the hearing that "[i]f my name's on the pleading, even if I didn't do the research, I should be more familiar with it, and I apologize." *Id.* He acknowledged he did not read Attorney Cervantes' brief, check it himself, or supervise her use of the AI tool which led to the errors here. *Id.* at 8. He expressed confidence in Attorney Cervantes, stating she worked with him for seven years through trials and arbitrations, and that he trained her. *Id.* at 9.

The Court appreciates Attorney Webb's taking responsibility for his lack of supervision and the averred steps taken to date to prevent further recurrence at the firm level. However, Attorney Webb attempted to minimize the impact of the false citation in the record, calling it a "single occurrence and isolated event of a 'Frankensteinian legal citation'" and a "single and isolated event." [Dkt. 178 at ⁋⁋ 9, 19].  This argument misses the point:  if an attorney engages in multiple instances of submitting fake or hallucinated citations to a court, that may be evidence of pervasive misconduct (or a pattern and practice of misconduct), but that does not logically lead to the conclusion that a single instance of submitting a fake citation is somehow exempt from sanctions.  Many bad acts are worse than a single bad act, but that does not mean that a single bad act is somehow irreproachable. "Even a single fabricated citation would be serious. Indeed, other courts have imposed Rule 11 sanctions in such an instance. This Court is not minimizing the use of a single fake case." *Mavy v. Comm'r of Soc. Sec. Admin.*, 2025 WL 2355222 at *8 n.5 (D. Ariz. Aug. 14, 2025) (citation

United States District Court
Northern District of California

omitted), *vacated in part on other grounds*, 2026 WL 91483 (D. Ariz. Jan. 13, 2026).  When confronted with errors such as those at issue here, courts must expend significant resources to address the errors, and there is an increased risk of undermining the court's authority, the rule of law, and public trust.  *See In re Kenney*, 422 So. 3d at 924.  Further, while this may appear to be a singular event from the point of view of Attorney Webb, the Court is tasked with supervising a number of civil cases and would be further pressed to manage this caseload effectively and efficiently if submissions with even a single fake citation became widespread among multiple cases.  "In a system of precedents that is designed to achieve consistency, predictability, and adherence to the rule of law, the judiciary cannot function properly unless judges and lawyers confirm the authenticity of cited authorities and review them to evaluate their holdings and reasoning. When the participants fail to perform this basic function, it compromises these institutional values and diminishes faith in the judicial process."  *In re Domestic P'ship of Campos and Munoz*, 342 Cal. Rptr. 3d 227, 231 (Ct. App. 2026).  Indeed, one inference from the continuing failures of counsel nationwide to responsibly use AI tools in researching and drafting submissions to courts (resulting in sanctions and publicized orders) is that Orders to Show Cause (such as here) and sanctions orders remain necessary tools to foster the advancement and education of the bar on these AI-related risks.  *See Noland v. Land of the Free, L.P.*, 336 Cal. Rptr. 3d 897, 901 (Ct. App. 2025) ("Although the generation of fake legal authority by AI sources has been widely commented on by federal and out-of-state courts and reported by many media sources, no California court has addressed this issue. We therefore publish this opinion as a warning. Simply stated, no brief, pleading, motion, or any other paper filed in any court should contain *any* citations—whether provided by generative AI or any other source—that the attorney responsible for submitting the pleading has not personally read and verified.") (emphasis in original).

At the November 4 hearing, Attorney Webb took responsibility for his failure to supervise Attorney Cervantes here.  In his April 3, 2026 further response to the OSC, Attorney Webb specifically acknowledged that he "bear[s] responsibility to make reasonable efforts to ensure that I and the attorneys and staff working under my supervision comply with applicable professional obligations, local rules, standing orders, and appropriate filing-review procedures."  [Dkt. 228 at

13

¶ 5]. Attorney Webb identifies remedial steps taken by his firm to address the underlying issues which led to the errors here. In addition to taking CLE courses himself on ethical uses of AI, Attorney Webb avers that he has instituted "weekly cross-training sessions . . . so that workflows, research methods, drafting practices, and file-handling protocols can be reviewed collectively." [Dkt. 228 at ¶¶ 8, 13]. He further attests "that verification of cited authority is a necessary part of pre-filing review. My expectation within the office is that authorities relied upon in briefing **must be checked** against the underlying source before submission and that summaries, parentheticals, or characterizations of authority <u>must fairly reflect what the source actually says.</u>" *Id.* at ¶ 21 (emphasis in original). Finally, Attorney Webb states that his firm pays for CLE time for attorneys and paralegals, that his firm encourages that CLE efforts should include responsible use of AI tools, and that his firm has paid for and intends to continue to pay for staff members to attend an annual legal technology conference. *Id.* at ¶¶ 16-19; *see also* Dkt. 178 at ¶ 21 ("A large push from this conference is to ethically use AI appropriately"). Unlike the supervising lawyer in the *Johnson* case, Attorney Webb's actions here compare favorably in demonstrating a better understanding of a supervisor's professional responsibility to implement corrective policies and procedures. *Compare* 792 F. Supp. 3d at 1263–64. The remedial steps taken by Attorney Webb at his law firm are conceptually similar to the remedial steps taken by a large national law firm after a similar AI-fake citations Order to Show Cause issued in another case. *See Ringer v. Bank of Am., N.A.*, Civil Action No. 1:25-cv-03959-SEG-JSA, Dkt. 19-1 (N.D. Ga. Dec. 23, 2025) (declaration of Managing Partner of McGuire Woods law firm describing remedial steps taken by that firm following issuance of OSC).

However, the Court notes that Attorney Webb's description of remedial steps does not contain many specifics as to the duties of supervisory lawyers and lawyers who are counsel of record to check citations in briefs and other court filings. The only concrete descriptions of his personal efforts to address these situations going forward are in regard to his taking CLE classes himself, his expenditure of his small firm's resources on CLE and the legal technology conference, and the fact that he "continue[s] to oversee the implementation of these remedial measures and the supervision of work performed under [his] authority." [Dkt. 228 at ¶ 23]. The Court notes that, while delegation may be appropriate in many circumstances, counsel bears ultimate responsibility for filings

14

submitted to the Court. *See Davis v. Marion Cnty. Super. Ct. Juv. Det. Ctr.*, 2025 WL 2502308 at *1, *4 (S.D. Ind. Sept. 2, 2025) (sanctioning attorney for filing brief with fake citations, where attorney averred that paralegal drafted the brief and attorney alleged he "did not have time to carefully review the paralegal's draft before filing it."); *Unioil, Inc.*, 809 F.2d at 558; *Versant Funding LLC*, 2025 WL 1440351 at *4–5. Thus, while Attorney Webb has stressed training and education of himself and his staff, the Court notes with some lingering concern that Attorney Webb's declarations do not describe new or specific procedures for he himself to check citations in briefs which are filed under his name as counsel of record.

With regard to Attorney Webb's failure to attend the previous OSC hearing held on August 12, 2025 and his failures to respond to the previous OSC (and the followup Further OSC), Attorney Webb states that he assumed the Court did not need to hear from him at the August 12 hearing because the Court "did not request briefing on the responsibility of supervision of associate attorneys, instead the Court expressly requested '*include declarations under oath from all persons responsible for the briefing and citation*[.]'" [Dkt. 178 at ¶ 7] (emphasis in original). Attorney Webb further attests that his failure to appear was based on a misunderstanding and that his failure to respond to the subsequent OSC was based on a failure to receive a CM/ECF docket notice after his firm had been substituted by successor counsel. *Id.* at ¶¶ 13, 16-18. Attorney Webb now avers that he continues to monitor the Court's docket and indicates that he "understand[s] that compliance extends beyond the content of a filing and includes responsiveness to the Court and proper monitoring of the Court's docket." [Dkt. 228 at ¶ 22]. Accordingly, the Court accepts Attorney Webb's explanation as to the delays in his responding to the original OSC and the further OSC, and his failure to attend the original OSC hearing on August 12. Finally, Attorney Webb's demeanor at the November 4 hearing indicates that he took the Court's concerns seriously. The Court appreciates Attorney Webb's candor and acknowledgment of responsibility.

## CONCLUSION

Accordingly, for the reasons explained herein, and as an exercise of the Court's authority to enforce the Local Rules (which incorporate the California Rules of Professional Conduct) and its inherent authority, the Court **ADMONISHES** and **SANCTIONS** Attorney Webb as detailed

United States District Court
Northern District of California

herein.

The Court **ORDERS** the following sanctions:

>**Circulation Requirement:** Attorney Webb shall circulate this Order, together with the Court's original Order to Show Cause [Dkt. 129], the Further Order to Show Cause [Dkt. 177], and Attorney Webb's original response and further response [Dkts. 178 and 228], to all attorneys and paralegals in his firm. The Court highly encourages that all recipients read these documents to reinforce the importance of diligence, candor, and compliance with the Court's Standing Order regarding the use of AI tools, the California Rules of Professional Conduct, and the duty of supervision by managing and supervisory attorneys. Attorney Webb **SHALL** file a certification with the Court that he has complied with this circulation requirement within **ten (10) days** of completion.

>**Continuing Legal Education Requirement:** Within six months of the date of this Order, Attorney Webb shall complete at least four hours of live, in-person continuing legal education from providers approved by the California State Bar. At least two hours shall be in the area of supervision of junior attorneys/staff, and at least two hours shall be in the area of ethical/professional use of artificial intelligence/large language models in legal practice. Upon completion of this CLE requirement, Attorney Webb **SHALL** file a declaration under oath certifying completion of the CLE within **ten (10) days** of completion, attaching copies of certificates of attendance.

As noted, the record indicates that the conduct at issue here resulted from practices or policies of the Webb law firm with regard to improper use of AI tools and failure to perform basic legal brief writing tasks such as checking citations for accuracy before filing. Therefore, the Court further **ORDERS** Mr. Webb to provide all attorneys, paralegals, and law clerks of the Webb law firm copies of all educational materials received in connected with the CLE courses ordered above. The required distribution of CLE educational materials within the Webb firm **SHALL** be completed within ten (10) business days of the completion of each of the CLE courses ordered herein. Attorney Webb **SHALL** file a certification under oath with the Court that he has complied with this circulation requirement for all of the CLE courses ordered herein within ten (10) days of the circulation of the final set of materials.

Finally, because Attorney Webb has admitted his ultimate responsibility as counsel of record, as supervisor of attorney Cervantes, and as owner/principal of his namesake firm for the issues, policies, and practices that gave rise to the conduct at issue here, the Court exercises its discretion and **PERSONALLY SANCTIONS** Attorney Lenden Webb $1,001 (one thousand and one dollars), for his conduct herein and to deter him (and others) from such conduct in future. Attorney Webb **SHALL** pay this amount directly and personally (and this amount shall not

16

be paid by the Webb law firm) by no later than May 22, 2026, to the Clerk of the United States District Court for the Northern District of California. Attorney Webb **SHALL** attach a copy of this Order to his payment

The Court **SHALL** retain jurisdiction over Attorney Webb, pending completion of the payment, CLEs, and certifications required by this Order, and to ensure proper compliance with this Order and the Court's directives.

After the Court reviews the certifications required above, the Court will take any further appropriate action, if any is needed at that time. No further sanctions will issue at this time.

**IT IS SO ORDERED.**

Dated: April 28, 2026

PETER H. KANG
United States Magistrate Judge

United States District Court
Northern District of California

17